Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Karen L. Wallace (SBN 272309)
Karen.Wallace@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:      (310) 556-4811
Facsimile:      (310) 943-0396

*Attorneys for Plaintiff Huu Nguyen*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUU NGUYEN, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br>v.<br><br>NISSAN NORTH AMERICA, INC., a California corporation,<br><br>Defendant. | REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED<br><br>Case No.:  5:16-cv-05591-LHK (NCx)<br><br>Hearing Date:      March 22, 2018<br>Hearing Time:      1:30 p.m.<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; AND DECLARATIONS IN SUPPORT OF PLAINTIFF'S MOTION**<br><br>**[Plaintiff's Administrative Motion to File Under Seal Filed Concurrently]**<br><br>District Judge:      Hon. Lucy H. Koh<br>Location:            280 South 1st Street<br>                     Courtroom 8, 4th Fl.<br><br>Action Filed:      September 30, 2016<br>Trial Date:        October 5, 2018 |

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on March 22, 2018, at 1:30 p.m., before the Honorable Lucy H. Koh, District Judge of the United States District Court for the Northern District of California, in Courtroom 8 – 4th Floor, 280 South 1st Street, San Jose, CA 95113, Plaintiff Huu Nguyen ("Plaintiff") will and hereby does move for entry of an Order certifying his claims under the California Consumers Legal Remedies Act (CLRA), Cal. Civ. Code §§ 1750, *et seq.*, and the California Song-Beverly Consumer Warranty Act (Song Beverly), Cal. Civ. Code §§ 1790, *et seq.*, pursuant to Federal Rule of Civil Procedure 23; appointing Plaintiff as Class representative; appointing Plaintiff's attorney, Capstone Law, APC, to serve as class counsel under Rule 23(g); and directing notice to class members under Rule 23(c)..

Plaintiff proposes to serve as class representative for the following two classes pursuant to Rule 23(b)(3) for damages or, in the alternative, Rule 23(c)(4) for liability only:

    1) <u>Class</u>: All individuals in California who purchased or leased, from an authorized Nissan dealer, a new Nissan vehicle equipped with a FS6R31A manual transmission.

    2) <u>CLRA Class</u>: All members of the Class who are "consumers" within the meaning of California Civil Code § 1761(d).

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and the Declarations of Karen L. Wallace, Michael Stapleford, Steven B. Boyles, and Huu Nguyen in Support of Plaintiff's Motion and exhibits thereto.

Dated:  December 15, 2017

Respectfully submitted,

Capstone Law APC


By: /s/ Karen L. Wallace
    Jordan L. Lurie
    Tarek H. Wallace
    Cody R. Padgett
    Karen L. Wallace

    Attorneys for Plaintiff Huu Nguyen

**TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT ................................. 1

II.     PLAINTIFF'S COMMON PROOF ................................................................ 3

        A.      Overview of the Clutch System and Nature of the Defect ............................ 3

        B.      The Defective Clutch System is Inherent and Present in Every

                Class Vehicle ....................................................................................... 5

        C.      Nissan Knew the Clutch System Was Defective but Failed to Tell

                Consumers............................................................................................. 6

        D.      Plaintiff's Damages Model........................................................................ 11

III.    PROPOSED CLASS.................................................................................. 13

IV.     THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED .................................. 13

        A.      Numerosity................................................................................................ 13

        B.      Commonality............................................................................................. 13

        C.      Typicality .................................................................................................. 14

        D.      Adequacy .................................................................................................. 16

        E.      Ascertainability ........................................................................................ 17

V.      THE PREDOMINANCE REQUIREMENT OF RULE 23(b)(3) IS

        SATISFIED ............................................................................................ 17

        A.      Plaintiff's Common Proof Can Establish Every Claim................................. 18

        B.      Superiority ................................................................................................ 20

VI.     CERTIFICATION UNDER RULE 23(c)(4) ..................................................... 21

        A.      A Liability-Only Class Can Be Certified..................................................... 21

VII.    CONCLUSION....................................................................................... 22

1

**TABLE OF AUTHORITIES**

2

3    *FEDERAL CASES*

4    *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) ..............................21

5    *Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550 (S.D. Cal. 2013) ...........................................13

6    *Blain v. Smithkline Beecham Corp.*, 240 F.R.D. 179 (E.D. Pa. 2007) ....................................21

7    *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013) .................................................21

8    *Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005) ...........................................14, 17

9    *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) ................................................................12

10   *Daniel v. Ford Motor Co.*, 2016 WL 2899026 (E.D. Cal. May 18, 2016) .............................11

11   *Daniels v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015) .....................................................19

12   *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980) ......................................................20

13   *Edwards v. Ford Motor Co.*, 603 F. App'x 538 (9th Cir. 2015) .........................................14, 17

14   *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ........................................14, 15

15   *Falco v. Nissan North America, Inc.*, 2016 WL 1327474

16       (C.D. Cal. Apr. 5, 2016) ..........................................................................................11, 18, 21

17   *Hanlon v. Chrysler Corporation*, 150 F.3d 1011 (9th Cir. 1998) ....................................15, 16

18   *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ....................................................15

19   *Houser v. Pritzker*, 28 F. Supp. 3d 222 (S.D.N.Y. 2014) .........................................................22

20   *In re Myford Touch Consumer Litig.*, 2016 WL 7734558

21       (N.D. Cal. Sept. 14, 2017) ..................................................................................................18

22   *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &*

23       *Prods Liab. Litig.*, 2012 WL 7802852 (C.D. Cal. Dec. 28, 2012) .......................................15

24   *In re Yahoo Mail Litig.*, 308 F.R.D. 577 (N.D. Cal. 2015) ......................................................15

25   *Kearney v. Hyundai Motor Co.*, 2010 WL 9093204 (C.D. Cal. June 4, 2010).......................11

26   *Keegan v. American Honda Co., Inc.*, 284 F.R.D. 530 (C.D. Cal. 2012)................................19

27   *Leyva v. Medline Indus., Inc.*, 716 F.3d 510 (9th Cir. 2013) ...................................................12

28   *Lindell v. Synthes USA*, 2014 WL 841738 (E.D. Cal. Mar. 4, 2014) .......................................12

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482

    (7th Cir. 2012) .................................................................................................... 21

*Ornates-Hernandez v. Smith*, 541 F. Supp. 351 (C.D. Cal. 1982) ........................................... 13

*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580 (C.D. Cal. 2008) ................................ 14, 17

*Pecover v. Elec. Arts Inc.*, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) .............................. 20

*Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2016 WL 7428810

    (N.D. Cal. Dec. 22, 2016) ..................................................................................... *passim*

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d at 979 (9th Cir. 2014) ........................ 12

*Rahman v. Mott's LLP*, 693 F. App'x 578 (9th Cir. 2017) ...................................................... 21

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ................................................................ 14

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) ............................................... 19

*Taragan v. Nissan N. Am., Inc.*, 2013 WL 3157918 (N.D. Cal. June 20, 2013) ...................... 10

*Vaccarino v. Midland Nat'l Life Ins. Co.*, 2014 WL 572365

    (C.D. Cal. Feb. 3, 2014) ....................................................................................... 12

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) ................................ 21

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ......................................................... 13

*Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168

    (9th Cir. 2010) .................................................................................. 2, 14, 15, 17


***FEDERAL STATUTES***

Fed. R. Civ. P. 23 ...................................................................................................... 17

Fed. R. Civ. P. 23(a) ............................................................................................. 13, 16

Fed. R. Civ. P. 23(b) .............................................................................................. 1, 3

Fed. R. Civ. P. 23(b)(3) ............................................................................................ 20


***STATE STATUTES***

Cal. Civ. Code § 1761(d) ........................................................................................... 13

Cal. Civ. Code §§ 1790 *et seq*. (Song-Beverly Consumer Warranty Act

(Song-Beverly))...................................................................................................18

*SECONDARY AUTHORITIES*

"Complaints for 2007 Nissan 350Z,"

https://www.nhtsa.gov/vehicle/2007/NISSAN/350Z/2%252520DR/RWD#co

mplaints (last visited Dec. 12, 2016) ...................................................................6

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION -5:16-cv-05591-LHK (NCx)

## I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiff is cognizant of this Court's class certification ruling in *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2016 WL 7428810 (N.D. Cal. Dec. 22, 2016), and Plaintiff's motion tracks this Court's analysis. All of the Rule 23(a) requirements are satisfied in this case for the same reasons as in *Philips*. However, unlike in *Philips*, the predominance requirement under Rule 23(b) is satisfied, and Plaintiff's damages theory matches his theory of liability.

Plaintiff's certification argument is straightforward. The Class consists of all Nissan vehicles equipped with the FS6R31A manual transmission ("Class Vehicles"). The Class Vehicles are high performance sports cars.[1] Plaintiff alleges, and can prove through common evidence, that Nissan North America, Inc. ("Nissan," "NNA," or "Defendant") knew and failed to disclose that the concentric slave cylinder ("CSC") in the Class Vehicles' clutch system is defectively designed and unable to withstand the heat generated during normal operation. As set forth in detail in the report of Plaintiff's expert, Michael Stapleford, the subject CSC is comprised of a thin aluminum cylinder attached to a plastic base that does not transfer heat effectively, which causes clutch malfunctions and damage consistent with those Plaintiff experienced (the "Clutch Defect"). (Declaration of Michael Stapleford In Support of Plaintiff's Motion for Class Certification ("Stapleford Decl.") ¶¶ 43-48.) This in turn causes the "clutch pedal to go to the floor" or "feel soft," which is a serious safety hazard that prevents drivers from shifting to regulate speed. (*See, e.g.*, *Id.* ¶ 51 ("the pedal will go to the floor, the CSC will cease to function, and the clutch cannot be disengaged with the clutch pedal.")) All the Class Vehicles have the same clutch system and the same defectively designed CSC. Nissan's own 30(b)(6) designee testified that ███████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████ (Declaration of Karen L. Wallace in support of Plaintiff's Motion for Class Certification ("Wallace Decl.") ¶ 3, Ex. 1 (J. Blenkarn Depo.) at 69:19-70:13; 74:18-

---

[1] The Class Vehicles include the 2007-2009 Nissan 350Z, the 2009-2015 Nissan 370Z, the 2007-2008 Infiniti G35, and the 2008-2014 Infiniti G37, which was renamed the Infiniti Q60 in 2014.

1 | 24.)

2 |     Plaintiff's common proof shows that Nissan knew the defective nature of the clutch

3 | system's design made the Class Vehicles susceptible to these clutch pedal malfunctions. In

4 | fact, Nissan sought to address the problem of the clutch system's overheating by changing the

5 | hydraulic fluid to one with a higher boiling point. That change did not fix the problem, which

6 | is a defectively designed CSC.

7 |     While Nissan may contend that there is no common defect because clutch systems can

8 | fail for a variety of reasons or factors, Plaintiff has alleged, and can prove through common

9 | evidence, that the Class Vehicles were sold with defective CSCs. (*See, e.g.,* Stapleford Decl. ¶

10 | 56 ("a single episode of overheating is likely to cause damage to the CSC that will require its

11 | replacement…and is not related to wear and tear or the driver's normal habits.")) That

12 | allegation is susceptible to common proof regarding the design of the CSC, which is

13 | substantially the same for all Class Vehicles, and individual factors do not affect whether the

14 | Class vehicles were sold with a defective CSC. As this Court noted in *Philips,* "in order to

15 | determine whether Rule 23(b)(3)'s predominance requirement is met, the Court needs only to

16 | consider Plaintiffs' theory of the case and the type of evidence that Plaintiffs will use to prove

17 | this theory. Plaintiffs' allegations are that Class Vehicles suffered from a single design defect,

18 | and, as in *Wolin [v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168 (9th Cir. 2010)],

19 | whether this allegation is true can be proven on a common basis." *Philips*, 2016 WL 7428810,

20 | at *14.

21 |     Further, Plaintiff has alleged and can establish by common proof that the CSC's

22 | defective design can be remedied by replacing the composite CSC with a solid cast-aluminum

23 | CSC. (Stapleford Decl. ¶ 57.) Aftermarket CSCs are already available from third-party

24 | manufacturers specifically to address the clutch defect identified by Plaintiff. Nissan

25 | confirmed that ███████████████████████████████ (Wallace Decl. 3,

26 | Ex. 1 at 83:3-17.) Accordingly, Plaintiff's damages theory – the cost to cure the defect is the

27 | amount by which every Class Member overpaid at the time of purchase or lease – matches his

28 | theory of liability and can measure uniformly the economic harm suffered by Class Members

1  as a result of Nissan's failure to disclose the Clutch Defect at the time of purchase or lease.

2  (*See* Declaration of Steven B. Boyles in support of Plaintiff's Motion for Class Certification

3  ("Boyles Decl.") ¶ 20.)

4      For these reasons, Plaintiff's Motion for Class Certification should be granted. If the

5  Court finds that the predominance requirement under Rule 23(b) is not satisfied with respect

6  to damages, or for any other reason, Plaintiff seeks, in the alternative, to certify a liability-only

7  class under Rule 23(c)(4).

8  **II.    PLAINTIFF'S COMMON PROOF[2]**

9          **A.    Overview of the Clutch System and Nature of the Defect**

10     Every transmission has a clutch, which engages and disengages the drive shaft's

11  moving parts, interrupting the power flow between the engine and the transmission to move

12  between gears. In a manual transmission, the driver manipulates a pedal to shift gears. The

13  clutch in the Class Vehicles is a hydraulic system, which uses pressure from the fluid

14  circulating throughout to shift gears. The basic components of a hydraulic clutch typically

15  include a fluid reservoir, a clutch master cylinder ("CMC"), and the CSC (also referred to as

16  the release bearing). The subject clutch system, which uses brake fluid in a discrete clutch

17  reservoir, is a dry friction system, which transfers heat from the clutch components to the

18  atmosphere and to the transmission front cover, including through the base of the CSC to

19  which it is attached. (Stapleford Decl. ¶¶ 26, 39.) Such clutch systems routinely generate heat

20  at temperatures ranging from 200 to 300℃. Temperatures can range as high as 400℃ with

21  hard use. (*Id.* ¶ 5.)

22     The clutch converts the force and travel the driver applies to the clutch pedal into fluid

23  pressure and volume; when the driver depresses the clutch pedal, a piston in the CMC pushes

24  fluid through the steel hydraulic line to the CSC, pressure from which pushes the CSC's

25  piston against the integrated release bearing (also called a "throw-out" bearing or "TO"

26  bearing) that causes the clutch kit (pressure plate, clutch disc, and flywheel) to disengage the

27

28  ———————————
   [2] Plaintiff's factual allegations are based on evidence adduced to date. The parties'
   discovery continues until April 30, 2018.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION - 5:16-CV-05591-LHK (NCx)

1   engine from the transmission. Releasing the clutch pedal releases the fluid pressure, which

2   should allow the gears to engage smoothly and efficiently. (Stapleford Decl. ¶¶ 1-4, 18;

3   Wallace Decl. ¶ 3, Ex. 1 at 86:4-10.)

4         Plaintiff alleges a design defect common to the Class Vehicles, designed,

5   manufactured, marketed, distributed, sold, warranted, and serviced by Nissan. Plaintiff

6   proffers evidence, specifically, that the defective design of the CSC can result in, among other

7   problems, catastrophic failure of the clutch pedal, such that it sticks to the floor and prevents

8   the driver from shifting gears and controlling the vehicle's speed. (Stapleford Decl. ¶¶ 13, 51;

9   *see also* Wallace Decl. ¶ 3, Ex. 1 at 91:2-20.) In short, Plaintiff's expert concluded that the

10  CSC is composed of materials, including plastic, that do not transfer heat effectively.

11  (Stapleford Decl. ¶¶ 11, 55; *see also* Wallace Decl. ¶ 3, Ex. 1 at 77:9-19 ███████████

12  ████████████████████████████████████ As a result, the system's hydraulic fluid may

13  get hot enough to boil as it circulates through the CSC. (Stapleford Decl. ¶¶ 9, 11, 50).) As the

14  fluid boils, vapor is released as air bubbles that form then collapse, which causes the fluid

15  pressure to drop suddenly and prevents the CSC from operating properly. (Stapleford Decl.

16  ¶ 12; Wallace Decl. ¶ 3, Ex. 1 at 65:15-66:3 ████████████████████████████████████

17  ████████████████████████████████████████████████████████████████████████

18  ██████████████████████████████████████████████████████████

19  ██████) For example, if the clutch pedal sticks because ████████████████████████

20  ████████████████████████████████████████████████████████████████████████

21  ███████████████████████████████████████████████

22  ████████████████████ (Wallace Decl. ¶ 3, Ex. 1 at 91:2-10.) In addition, the air bubbles

23  deform and pit the rubber surface as they collapse and implode, which has the potential to

24  compromise and erode the seals and releases debris that contaminates the fluid throughout the

25  system. (Stapleford Decl. ¶ 12.)

26        Mr. Stapleford observed that the CSC installed in the Class Vehicles is a "two-piece"

27  assembly of a plastic base clipped to a wrought aluminum cylinder. (Stapleford Decl. ¶ 30.)

28  He determined that the base is made of Nylon 6/6, a 50% chopped glass fiber plastic with

significantly less thermal conductivity than an aluminum base. (*Id*. ¶ 36.) He determined further that, while the cylinder/body is made of an aluminum alloy with adequate thermal conductivity, the cylinder lacks sufficient mass to transfer heat effectively. (*Id*. ¶ 37.) Simulations of heat transfer showed that the CSC in the Class Vehicles is far more susceptible to overheating, which allows the fluid inside to boil. (*Id*. ¶ 38-42.) Mr. Stapleford concluded that the clutch system in the Class Vehicles is thus unreasonably susceptible to premature wear and failure as a result of the CSC's exposure to high temperatures and repeated boiling. (Stapleford Decl. ¶¶ 9, 11-13, 50-52.)

None of the information Nissan provided to consumers reveals these problems or the likelihood of premature repairs. (*See* Sec.II.C, *infra*.) Similarly, Nissan's own service bulletins show that Nissan informed authorized *dealers* that the Clutch Assembly was defective: "Nissan [and Infiniti] Bulletins are intended for use by qualified technicians." (Wallace Decl. ¶¶ 4, 5, Exs. 2, 3.) Nissan concedes further that it never informed consumers about the recurring clutch malfunctions and heat-related concerns. (Wallace Decl. ¶ 3, Ex. 1 at 67:8-18; 68:2-17.)

The undisclosed defect impairs drivers' ability to shift gears and thus control their cars, which poses a serious safety risk. (*See* Sec.II.C, *infra*.)

**B.    The Defective Clutch System is Inherent and Present in Every Class Vehicle**

The Class Vehicles all share the same clutch system with the same CSC. ███████ ███████ (Stapleford Decl. ¶¶ 1-7, 17, 19; Wallace Decl. ¶ 3, Ex. 1 at 59:8-13; 62:3-7 ███████████████████████████████ Specifically, the same CSC is used in all the Class Vehicles, and any design changes to the component are made uniformly. (Stapleford Decl. ¶¶ 11, 26, 30, 32, 37; Wallace Decl. ¶ 3, Ex. 1 at 25:4-15 ("████████ ██████████████████"); 98:18-99:3 (██████████████████ ██████████████) For example, according to Nissan, ████████ ███████████████████████████████ . (Wallace Decl. ¶¶ 6, 7, Exs. 4, 5.) Nissan itself

took uniform remedial action with respect to the Class Vehicle's clutch system, as evidenced

by service bulletins released in 2013 and 2015 regarding remediation of heat-related clutch

pedal malfunctions in the 2009-2013 model year Class Vehicles. (Stapleford Decl. ¶¶ 9, 13;

Wallace Decl. ¶ 3, Ex. 1 at 63:11-15 ████████████████████████████████████

████████ )) In addition to these countermeasures to address symptoms of the Clutch Defect,

the ████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ . (Wallace Decl.

¶ [8, Ex. 6.) Despite revising its owner's manuals for the Class Vehicles beginning in 2013 to

reflect the uniform change from DOT 3 to DOT 4 hydraulic fluid, however, Nissans manuals

continue to omit references to problems with the CSC or boiling hydraulic fluid. Nissan's

uniform application to the Class Vehicles of a single repair procedure shows that Nissan

considered the clutch pedal malfunction a problem common to the Class Vehicles and inherent

and present in each at the time of purchase or lease. It demonstrates further that Nissan's

deceptive conduct affected all Class Members in the same way.

### C.    Nissan Knew the Clutch System Was Defective but Failed to Tell Consumers

Nissan's own documents and testimony confirm that Nissan's investigation of clutch

pedal malfunctions in the Class Vehicles, including the "sticky" clutch, ████████████ ,

well before Plaintiff bought his new 370Z in 2012. (*See, e.g.*, Wallace Decl. ¶ 9, Ex. 9; *see*

*also* Stapleford Decl. ¶ 8.) Moreover, ████████████████████████████████████

████████████████████████████████████ (Wallace Decl. ¶ 3, Ex. 1 at

78:25-79:15.) For example,[3] in June 2007, the owner of a 2007 350Z complained of

"CLUTCH STUCK TO THE FLOOR, TERRIBLE RATTLE NOISE COMING FROM

THROW OUT BEARING."[4] On November 19, 2007, another 2007 350Z owner wrote, in

part, "THE 2007 350Z MODEL YEAR HAS SOME FORM OF CLUTCH DEFICIENCY.

---

[3] *See also*, Plaintiff's First Amended Complaint ("FAC") ¶¶ 50-54, which identifies
dozens of consumer complaints regarding the Class Vehicles.
[4] NHTSA, "Complaints for 2007 Nissan 350Z,"
https://www.nhtsa.gov/vehicle/2007/NISSAN/350Z/2%252520DR/RWD#complaints (last
visited Dec. 12, 2016).

THE CLUTCH SOMETIMES DROPS TO THE FLOOR REQUIRING IT TO BE PUMPED UP BUT CAN LEAD TO STALLING THE ENGINE OR BEING STRANDED IN TRAFFIC. MY PROBLEM CAUSED ME TO BE STRANDED ON THE ROAD IN TRAFFIC UNTIL THE CLUTCH REGAINED PRESSURE AND LET ME DRIVE ON." On the same date, another 2007 350Z owner wrote, "I RECENTLY BOUGHT A NISSAN 350Z 2007 BASE MODEL MANUAL TRANSMISSION I NOTICED THAT THERE'S TIME WHEN I PRESS THE CLUTCH THE CLUTCH DOES RETURN BACK AND THAT CAR DOES NOT MOVE. THIS IS A PROBLEM BECAUSE IF IM IN THE MIDDLE OF A INTERSECTION AND THERE'S CAR COMING IF MY CLUTCH PETAL DOES NOT RETURN TO THE NORMAL POSITION I COULD BE IN A SERIOUS CRASH THANK YOU *TR." Nissan's own documents, *infra*, confirm specifically that Nissan considered the CSC's temperature as a root cause of complaints regarding a "sticky clutch."

Nissan was certainly aware that the Class Vehicles suffered from clutch pedal malfunctions that implicated the CSC based on ████████████████████ ██████████████████████████████ including the clutch sticking to the floor, and that these malfunctions adversely affected driving by preventing gears from shifting smoothly or efficiently, if at all. (*See, e.g.*, Wallace Decl. ¶ 9, Ex. 7.) For example, ████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ (Wallace Decl. ¶ 10, Ex. 8.) ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████

In addition, the associated ████████████████████████████ documented ████████████████████████████████████████████████████ An associated ██████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████



In the context of clutch failures in the Class Vehicles, ▉▉▉ ▉

▉▉▉▉ noted specifically that the ▉▉▉▉

▉▉▉▉

▉▉▉

A subsequent ▉ documenting the ▉▉▉▉

▉▉▉▉

▉▉▉▉ The original ▉▉▉ concluded that ▉▉▉

▉▉▉▉ However,

an associated ▉▉▉ documenting ▉▉▉

▉ concluded that ▉▉▉▉

▉▉▉▉ The ▉▉▉ reiterated that consumers were

complaining of ▉▉▉▉

▉▉▉ (Wallace Decl. ¶ 12, Ex. 10.) An associated

▉, citing ▉▉▉▉, also referenced

▉▉▉ that showed

▉▉▉ The ▉▉▉ ▉▉▉▉ indicated ▉

▉▉▉▉

▉

A subsequent ▉, ▉▉▉ ▉▉▉

▉▉▉▉ ▉▉▉

▉▉▉ (Wallace Decl. ¶ 9, Ex. 7 at 7835; *see*

*also* Stapleford Decl. ¶¶ 9, 20.) The ▉▉▉ noted that the ▉▉▉

and ▉▉▉ ▉▉▉



In [REDACTED] that included [REDACTED]

[REDACTED] (Wallace Decl. ¶ 15, Ex. 13 at 12791.) [REDACTED]

[REDACTED] (*See, e.g.*, Wallace Decl. ¶ 14, Ex. 12 at 12692

[REDACTED] In fact, [REDACTED]

[REDACTED] (Wallace Decl. ¶¶ 3, 13, Ex. 1 at 83:2-17; 11 at 12695; *see also* Stapleford Decl. ¶¶ 24-27 (findings regarding heat transfer).)

[REDACTED] (Wallace Decl. ¶ 14, Ex. 12 at 12691.) As this Court has noted, it is "reasonable to infer" that the internal documents dated shortly after Plaintiff's purchase "were preceded by [Nissan's] accretion of knowledge." *See Philips*, 2016 WL 7428810, at *17.

Nissan's response to consumer complaints in 2012 was to remediate the "sticky clutch" by changing the hydraulic fluid at the factory to DOT 4 starting with the 2013 model and implement a repair procedure for previous model years, which it released in April 2013. Nissan published two related service bulletins, NTB13-026a and ITB13-005a regarding 2009-2013 370Z Coupe and Roadster (Z34 series) and 2008-2013 G37 vehicles (V36 series) equipped with the 6-speed manual transmission. (Wallace Decl. ¶¶ 4, 5, Exs. 2, 3.)

Technicians were advised simply to change the factory-fill DOT 3 fluid to Nissan's GT-R R35 Special DOT 4 Brake Fluid, which is formulated for higher temperatures. (*See* Stapleford Decl. ¶ 13; Wallace Decl. ¶ 3, Ex. 1 at 45:9-17; 65:10-14.) Substantially similar bulletins, NTB13-026b and ITB13-005b, were released on February 26, 2015, regarding the same problem and the same remedy for the same vehicles. (Wallace Decl. ¶¶ 16, 17, Ex. 14, 15.) The updated procedure required two technicians to flush the clutch system and remove residual DOT 3 fluid that would lower the boiling point of the mixed fluid. (*See* Stapleford Decl. ¶¶ 21-22.) The service bulletins require technicians first to verify that the CSC is not leaking, confirming that the problem was heat-related, the █████████████████████ (*See* Wallace Decl. ¶ 3, Ex. 1 at 66:8-24.)

Despite its investigations and testing, or even the change to an higher quality hydraulic fluid in the Class Vehicles, Nissan never informed Class Members the clutch system in the Class Vehicles had an inherent defect that made it prone to heat-related problems. In addition, neither Nissan's service bulletins nor Nissan's owner's manuals explain the difference between DOT 3 and DOT 4 brake fluid, why Nissan began using DOT 4 fluid in the Class Vehicles, or the benefits of the fluid's higher boiling point. (*See* Wallace Decl. ¶ 3, Ex. 1 at 65:10-18 (██████████████████████████████████████████████████████████████████ ███████████████████████████████████ Indeed, ████████████████████████ ███████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████" (Wallace Decl. ¶ 20, Ex. 18.)

In short, ████████████████████████████████████████████████ ██████████████████████ demonstrate Nissan's early and continuing awareness of the Clutch Defect. *See Philips*, 2016 WL 7428810, at *17 (finding that allegations regarding the defendant's knowledge need only be "susceptible to generalized proof" at the class certification stage.) Nissan has known about heat-related problems with the subject clutch system ██████████ ████ but did nothing more than change the hydraulic fluid to remediate symptoms, ██████████████████; ████████████████████████████████████████

1  ████████████████████████████████████████████████

2  ████████████████████████████████████ (Wallace Decl. ¶ 19, Ex. 17 at 12759.)

3  Moreover, the only information that Nissan appears to have distributed externally was to

4  Nissan-authorized technicians, not to consumers. Such generalized evidence also demonstrates

5  that Nissan "'sought to suppress information in the public domain or obscure the consumers'

6  ability to discover' it." *Taragan v. Nissan N. Am., Inc*., 2013 WL 3157918, at *7 (N.D. Cal.

7  June 20, 2013) (citation omitted).

8        **D.**     **Plaintiff's Damages Model**

9       Plaintiff's damages model is based on the economic principle of benefit-of-the-bargain

10  and is consistent with Plaintiff's theory of liability. (Boyles Decl. ¶¶ 18-20, 24.) Plaintiff

11  seeks to recover the difference in value between the non-defective vehicles Nissan promised

12  and the defective vehicles that were delivered based on the cost, to replace the composite CSC

13  with one that is solid cast-aluminum. (*Id*. ¶¶ 18, 28.) Plaintiff's damages model can thus

14  measure uniformly the economic harm Nissan's failure to disclose the Clutch Defect at the

15  time of purchase or lease caused the Class without any individual inquiry into consumers'

16  subjective valuation of the defect. (*Id*. ¶¶ 31-35.)

17       Recently, in *Falco v. Nissan*, *North America, Inc*., 2016 WL 1327474 (C.D. Cal.

18  Apr. 5, 2016) the court endorsed a similar damages model that reimbursed class members for

19  injury suffered at point of sale based on "benefit of bargain damages," and "average repair

20  prices," noting that "by receiving restitution in the amount of average repairs, the class would

21  be getting the benefit of their bargain because they would be put in the same position they

22  would have been had the car not been sold with the defective timing chain system – it is the

23  cost necessary to make the vehicles conform to make the value Plaintiffs thought they were

24  getting in the price tendered." *Falco*, 2016 WL 1327474, at *12; *see also Kearney v. Hyundai

25  Motor Co.,* 2010 WL 9093204, *5 (C.D. Cal. June 4, 2010) ("the receipt of a vehicle whose

26  alleged defects reduced the car's value and deprived the consumer of the benefit of the

27  bargain, even when the alleged defects did not later materialize -- i.e., the loss was suffered at

28  the moment of purchase"); *Daniel v. Ford Motor Co.,* 2016 WL 2899026, at *7 (E.D. Cal.

1   May 18, 2016) ("a reasonable jury could conclude that a consumer would demand that the

2   purchase price of a vehicle with a defect be reduced by the cost of remedying the defect.")

3        In this case, the Clutch Defect, common to the Class Vehicles, requires putative Class

4   Members to spend money that they would not have spent had Nissan either disclosed the

5   defect or cured it. Damages in the amount of the average cost to cure the defect puts the Class

6   in the position it would have been had the value of the Class Vehicles been that of the defect-

7   free vehicles they thought they were getting in the price tendered. (Boyles Decl. ¶¶ 18-19.)

8   Plaintiff's damages model is thus capable of measuring only the economic harm the alleged

9   misconduct actually caused Class Members, consistent with the Ninth Circuit's requirement

10  that "plaintiffs must be able to show that their damages stemmed from the defendant's actions

11  that created the legal liability." *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir.

12  2013); *see also Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013). The Ninth Circuit

13  has admonished further that, "[i]n measuring damages, California law requires only that some

14  reasonable basis of computation of damages be used, and the damages may be computed even

15  if the result reached is an approximation . . . [T]he fact that the amount of damage may not be

16  susceptible to exact proof or may be uncertain, contingent or difficult of ascertainment does

17  not bar recovery." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d at 979, 989 (9th Cir.

18  2014). "So long as the damages can be determined and attributed to . . . plaintiff's theory of

19  liability, damage calculations for individual class members do not defeat certification."

20  *Lindell v. Synthes USA*, 2014 WL 841738, at *14 (E.D. Cal. Mar. 4, 2014). Accordingly,

21  Plaintiff need only propose a valid method for calculating class wide damages at the class

22  certification stage. *Leyva*, 716 F.3d at 514.

23       As long as the damages model is "susceptible of class-wide measurement," Plaintiff's

24  damages model need not be perfect, and it need not be "precisely correct." *See Vaccarino v.*

25  *Midland Nat'l Life Ins. Co.*, 2014 WL 572365, at *10-13 (C.D. Cal. Feb. 3, 2014). Here,

26  Plaintiff's proffered damages model calculates the cost, based on objective data regarding

27  parts and labor, to resolve the Clutch Defect. Plaintiff's model applies basic economic

28  principles to common, class-wide evidence, which uniformly measures the economic harm

1  Plaintiff alleges was caused by Nissan's misconduct at point of sale. (Boyles Decl. ¶¶ 25-28.)

2  **III.    PROPOSED CLASS**

3      Plaintiff seeks to certify the following Class and Subclass (collectively, the "Class")

4  under 23(b)(3) for damages and/or under Rule 23(c)(4) (for liability-only):

5          **Class**: All individuals in California who purchased or leased, from an authorized

6          Nissan dealer, a new Nissan vehicle equipped with a FS6R31A manual transmission.

7          **CLRA Sub-Class**: All members of the Class who are "consumers" within the meaning

8          of California Civil Code § 1761(d).[5]

9      Plaintiff reserves the right to amend the Class and Sub-Class definitions if discovery

10 and further investigation reveal that the Class and Sub-Class should be expanded or otherwise

11 modified.

12 **IV.    THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED**

13     **A.    Numerosity**

14     Rule 23(a) provides that numerosity is satisfied when "the class is so numerous that

15 joinder of all members is impracticable." Nissan confirms that ███████████████

16 ████████████████████████████████████. (Wallace Decl. ¶ 18, Ex. 16.)

17 Further, the Court can reasonably infer from Nissan's service bulletins that FCA considers the

18 Class to be sufficiently numerous. *See e.g.*, *Balasanyan v. Nordstrom, Inc*., 294 F.R.D. 550,

19 558 (S.D. Cal. 2013) ("In determining whether numerosity is satisfied, the court may consider

20 reasonable inferences drawn from the facts before it.") (citation omitted); *Ornates-Hernandez*

21 *v. Smith*, 541 F. Supp. 351, 369 (C.D. Cal. 1982) ("Where the exact size of the class is

22 unknown but general knowledge and common sense dictate that it is large, the numerosity

23 requirement is satisfied.").

24     **B.    Commonality**

25     Commonality is satisfied when there are questions of law or fact common to the class.

---

[5] Excluded from the Class and Subclass are: 1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; 2) the Judge to whom this case is assigned and the Judge's staff; and 3) those persons who have suffered personal injuries as a result of the facts alleged herein.

Plaintiffs need show only that there is one common question and that the determination "of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). For purposes of Rule 23(a)(2), even a single common question will do. *Id*. at 2556 (citation omitted). In cases involving defective products, commonality is established when the questions at issue concern the existence of a defect. *See e.g., Edwards v. Ford Motor Co*., 603 F. App'x 538, 540 (9th Cir. 2015) ("[C]ommonality is satisfied when '[t]he claims of all prospective class members involve the same alleged defect, covered by the same warranty, and found in vehicles of the same make and model.'") (quoting *Wolin,* 617 F.3d at 1172); *Chamberlan v. Ford Motor Co*., 402 F.3d 952, 962 (9th Cir. 2005) (common failure to disclose the existence of an engine defect); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 595-96 (C.D. Cal. 2008) (common contention regarding clutch flywheel system defect). Commonality also is established, where as here, defendant provides a uniform notice or repair program. *See e.g., Edwards*, 603 F. App'x at 541 ("[B]y providing classwide relief through its notice and repair program, Ford has acknowledged that a single class defect exists.").

In *Wolin*, the Ninth Circuit held that commonality is satisfied, where, as here, the common questions are 1) whether a defect exists, 2) whether defendant knew about the defect, 3) whether defendant concealed the defect, and 4) whether that conduct violated consumer protection laws. 617 F.3d at 1172; *Edwards*, 603 F. App'x at 540 ("[C]ommonality is satisfied when '[t]he claims of all prospective class members involve the same alleged defect, covered by the same warranty, and found in vehicles of the same make and model.'"). Similarly, in *Philips,* this Court held that "issues such as the existence of a defect and Ford's knowledge of the defect are enough to meet 'the relatively minimal showing required to establish commonality.'" *Philips,* 2016 WL 7428810, at *7 (internal citation omitted).

Accordingly, the commonality requirement is satisfied in this case.

### C.     Typicality

Typicality rests on whether the Class has the same or similar injury, whether the action is based on conduct not unique to the plaintiffs, "and whether other class members have been

1    injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d at 970, 984

2    (9th Cir. 2011); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (citations

3    omitted). Putative class members' interests and claims need not be identical to the plaintiffs'

4    to satisfy typicality, if, as here, their claims are based on the same legal theory. *Id.* Finally, as

5    this court has noted, "[t]ypicality under Rule 23(a)(3) should be determined with reference to

6    the [defendant's] actions, not with respect to particularized defenses it might have against

7    certain class members." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 594 (N.D. Cal. 2015)

8    (citation omitted).

9        Here, as in *Philips*, Plaintiff meets the typicality requirement because "all class

10    members are alleged to have suffered the same injury as a result of the same conduct" by

11    Defendant. *Philips,* 2016 WL 7428810, at *7. In this case, Plaintiff's injury – that the

12    undisclosed design defect in the clutch caused him to overpay for his Class Vehicle when he

13    purchased it – is typical of the Class. Plaintiff's claims, like those of the putative Class, are

14    based on his purchase of a Class Vehicle equipped with a clutch system that Nissan neglected

15    to disclose was defective at the time of sale. *See In re Toyota Motor Corp. Unintended*

16    *Acceleration Mktg., Sales Practices, & Prods Liab. Litig.*, 2012 WL 7802852, at *2-3 (C.D.

17    Cal. Dec. 28, 2012) (claims, including those of the named plaintiffs, arose from a common

18    automobile defect and uniform deceptive conduct). Plaintiff's action is based on Nissan's

19    conduct, which is not unique to him, and alleges that other Class Members have been injured

20    by the same course of conduct. Thus, because they "are reasonably co-extensive with those of

21    absent class members…[who] allegedly suffered the same injury entitling them to relief under

22    the same legal theories," Plaintiff's claims are typical of the class. *Hanon*, 976 F.2d at 508.

23        In addition, Plaintiff's theory is that he was harmed at the point of sale, making his

24    claim valid "regardless of the manifestation of the defect." *Wolin*, 671 F.3d at 1174.

25    Accordingly, differences in how or when the defect manifests in the Class Vehicles are not

26    enough to defeat typicality. *See Id.* at 1173 ("[P]roof of the manifestation of a defect is not a

27    prerequisite to class certification."); *see also Ellis*, 657 F.3d at 984; (relying on *Hanon v.*

28    *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). At the class certification stage,

therefore, "a court need not determine whether class members could actually prevail on the merits of their claims. [citation omitted]. Instead, it is enough to know that [Plaintiffs'] claims are 'reasonably co-extensive with those of the absent class members.'" *See Philips,* 2016 WL 7428810, at *7 (citing *Hanlon*, 150 F.3d at 1020).

Finally, there are no unique defenses or individual issues that would threaten to become the focus of the litigation. *Hanon*, 976 F.2d at 508. Plaintiff purchased his Class Vehicle for his son to drive, and they selected the car together. For example, they reviewed marketing materials for the 370z, including the Nissan webpage, and visited various dealerships, including Stevens Creek Nissan, the Nissan dealership where they ultimately bought the 370z. (Declaration of Huu Nguyen in support of Plaintiff's Motion for Class Certification ("Nguyen Decl.") ¶¶ 4, 6.) Plaintiff also discussed the 370z in Vietnamese, his primary language, with a Nissan salesperson at Stevens Creek. (*Id.* ¶ 6.) However, these facts will not change Plaintiff's damages calculation based on injury at the point of sale. Plaintiff does not recall any disclosures by Nissan of a defect in the 370Z's clutch system or related symptoms, and he would not have bought the Class Vehicle if he had known about the problems. (*Id.* ¶ 8.) Plaintiff thus shares with Class Members a strong interest in proving both that the transmission installed by Nissan in the Class Vehicles was defective and that the proposed Class was damaged by the defect. *See Philips,* 2016 WL 7428810, at *11 (finding that, despite having given her vehicle to her son, Plaintiff Colburn's claims were "reasonably co-extensive with those of absent class members") (citation omitted). Plaintiff alleges that he overpaid for the vehicle that he believed was defect-free and was harmed at the moment he purchased a Class Vehicle that had a latent defect. Because Plaintiff is seeking the same remedies as absent Class Members based on the same core of operative facts, Plaintiff's interests are co-extensive with the interests of the Class.

### D.   Adequacy

The final requirement under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." In the Ninth Circuit, courts use a two-prong test to determine if the adequacy requirement is met: 1) whether plaintiffs and their counsel

1  "have any conflicts of interest with other class members," and 2) whether plaintiffs and their

2  counsel will "prosecute the action vigorously on behalf of the class." *Hanlon v. Chrysler*

3  *Corporation*, 150 F.3d 1011, 1020 (9th Cir. 1998). Both of these requirements are satisfied

4  here. Plaintiff's interests are co-extensive with the interests of absent Class Members. Plaintiff

5  is also familiar with the claims in this matter and has actively participated in this litigation by

6  producing documents, responding in writing to discovery requests, and testifying at

7  deposition. (Nguyen Decl. ¶ 17.)

8      Plaintiff has also retained highly qualified and competent counsel with significant

9  experience litigating consumer protection actions similar to the instant case. (*See* Wallace

10  Decl. ¶ 21 Ex. 19.)

11      **E.    Ascertainability**

12      Although not strictly a part of the requirements of Rule 23, an "implied prerequisite"

13  for certification is that the class be ascertainable. *Philips,* 2016 WL 7428810, at *12 (the

14  description of the class must be "definite enough so that is administratively feasible for the

15  court to ascertain whether an individual is a member…[and] to [determine that] class members

16  are included or excluded from the class by reference to objective criteria").

17      Here, the Class is ascertainable, as it consists of current owners and lessees of Nissan

18  vehicles equipped with a FS6R31A manual transmission, purchased or leased from an

19  authorized Nissan dealer, who can be identified through Nissan's own records. Further,

20  ascertainability can be satisfied where, as here, a defendant's own databases would provide

21  sufficient information, and information regarding current owners and lessees can also be

22  obtained through third-party administrators. *Philips*, 2016 WL 7428810, at *12.

23  **V.    THE PREDOMINANCE REQUIREMENT OF RULE 23(b)(3) IS SATISFIED**

24      Under Rule 23(b)(3), plaintiffs must show that "the questions of law or fact common to

25  class members predominate over any questions affecting only individual class members." In

26  *Philips*, this Court set forth the principles governing the predominance analysis. *Philips,* 2016

27  WL 7428810*,* at *13. In particular, the Court requires a determination "whether common

28  evidence and common methodology could be used to prove the elements of the underlying

1    cause of action." *Id*. (citation omitted).

2        District courts in the Ninth Circuit have found that the predominance requirement is

3    satisfied in car cases involving failures to disclose where, as here, the plaintiffs argue that

4    uniformly designed cars contained a defect, that the defendant knew about the defect and

5    failed to disclose it, and that the defect presented a common unreasonable safety risk, all of

6    which are susceptible to proof by "generalized" evidence. *See Wolin*, 617 F.3d at 1173;

7    *Edwards,* 603 F. App'x at 540; *Chamberlan*, 402 F.3d at 962; *Parkinson,* 258 F.R.D. at 588-

8    589; *Falco*, 2016 WL 1327474, at *4.

9        Indeed, even in *Philips*, the only issues that prevented a finding of predominance were

10   a presumption of reliance based on alleged misrepresentations and deficiencies in the

11   plaintiffs' damages model and analysis. Neither problem applies here. Plaintiff does not allege

12   any misrepresentations and therefore, as described below, Plaintiff and the Class are entitled

13   to a presumption of reliance based on material omissions, and Plaintiff's damages model

14   matches his theory of liability, as Plaintiff's expert's analysis confirms. Because the Court

15   need only decide whether Plaintiff's allegations are susceptible to common, class-wide proof

16   at the class certification stage, any issues that Nissan may raise are not likely to "swamp" the

17   common issues. *See, e.g.*, *In re Myford Touch Consumer Litig.*, 2016 WL 7734558, at *13

18   (N.D. Cal. Sept. 14, 2017).

19       **A.    Plaintiff's Common Proof Can Establish Every Claim**

20       Plaintiff alleges claims on behalf of a proposed class and subclasses for violations of

21   the CLRA and for breach of implied warranty under the Song-Beverly Consumer Warranty

22   Act ("Song-Beverly") (Cal. Civ. Code §§ 1790, *et seq*.). "Plaintiffs are not required to show

23   that each element of the underlying cause of action is susceptible to class wide proof. (citation

24   omitted). Rather, they need only show that common questions will predominate with respect

25   to their case as a whole." *Philips*, 2016 WL 7428810, at *13. Plaintiff demonstrates that

26   common questions predominate under this analysis. Generalized evidence, including evidence

27   demonstrating that the clutch systems installed in the Class Vehicles were the same, will

28   answer all questions raised by Plaintiff's claims: 1) whether Nissan knew about the defective

design of the CSC; 2) whether Nissan had a duty to disclose the defect, 3) whether Nissan deliberately did not disclose the defect, 4) whether the defect created an unreasonable safety risk, 5) whether Nissan concealed the defect to encourage purchase of the Class Vehicles, as well as to shift repair costs to Class Members, and 6) whether the Class Vehicles were unmerchantable at the time of sale. Accordingly, materiality, causation, and reliance are all susceptible to proof by common evidence.

Under the CLRA, the standard for materiality and reliance is an objective one, susceptible to generalized proof on a class basis. An "inference of reliance" for the Class "can be shown as to the entire class by proving materiality." *Keegan v. American Honda Co., Inc.*, 284 F.R.D. 530, 531 (C.D. Cal. 2012). Under the CLRA, "[a]n omission is material if a reasonable consumer 'would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.'" *Philips*, 2016 WL 7428810, at *15 (citation omitted). In this case, the Clutch Defect is clearly material, as Nissan has determined that heat-related problems in the Class Vehicles' clutch system were significant enough to warrant sustained investigation and testing for nearly a decade. The persistence of such problems and attempts to remediate them by controlling the clutch system's temperature supports the inference that the CSC is not designed to transfer heat adequately for its intended use. Yet none of the materials published by Nissan, including its relevant service bulletins, address directly the significance of boiling hydraulic fluid, let alone the defective nature of the CSC. Consequently, Plaintiff alleges that Nissan uniformly omitted the defect in breach of its duty to do so such. Plaintiff and all putative Class Members purchased their vehicles from authorized Nissan dealerships. And because there are no individual questions regarding Class Members' exposure to disclosures about the defect, reliance can be inferred. *See Philips*, 2016 WL 7428810, at *15 (citing *Daniels v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015)). There are also no individual issues that predominate regarding Nissan's knowledge because, as Plaintiff's evidence shows, Defendant knew about the alleged defect before the beginning of the Class period. Accordingly, the Class' common injury is established by the materiality of the omission, giving rise to a presumption of reliance, and relief is available "without

individualized proof of deception, reliance and injury." *Stearns v. Ticketmaster Corp*., 655 F.3d 1013, 1022-23 (9th Cir. 2011) (citations omitted).

Determining whether the Clutch Defect rendered the Class Vehicles unmerchantable under Song Beverly can also be answered through common proof showing that the alleged defect is "substantially certain to result in malfunction during the useful life of the product." *See Philips*, 2016 WL 7428810, at *18; *see also Keegan*, 284 F.R.D. at 537. As in *Philips*, Plaintiff has adduced evidence showing that "substantial certainty" will be a common question. As discussed above, at the time of sale, every Class Vehicle had an identical or substantially similar clutch system with the same defective CSC subject to the same premature wear and catastrophic failure. *See* Sec. V.A, *supra*. Plaintiff's implied warranty claims thus rest on all the Class Vehicles being defective in the same way, and the same defect was inherent and present in all the Class Vehicles when they left Nissan's factory. The evidence suggests that the clutch systems in the Class Vehicles are likely to function and fail in the same way, making the "substantial certainty" of manifestation an issue susceptible to common proof. *Philips*, 2016 WL 7428810, at *18. Indeed, ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████ (Wallace Decl. ¶ 3, Ex. 1 at 74:18-25.)

## B.    Superiority

Rule 23(b)(3) also requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule provides four factors the Court must consider in Rule 23(b)(3)(A) through (D).[6] This case meets all the factors, and the class action is the superior litigation choice based on the size of the class and the potentially small individual damages, especially relative to the costs of litigating on an individual basis. *See Pecover v. Elec. Arts Inc*., 2010 WL 8742757, at *25

---

[6] The factors are: class members' interests in individually controlling the prosecution or defense; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of the claims in the particular forum; and the difficulties of managing a class action.

1   (N.D. Cal. Dec. 21, 2010) ("[T]he modest amount at stake for each purchaser renders

2   individual prosecution impractical. Thus, class treatment likely represents plaintiffs' only

3   chance for adjudication."); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339

4   (1980) ("Where it is not economically feasible to obtain relief within the traditional

5   framework of a multiplicity of small individual suits for damages, aggrieved persons may be

6   without any effective redress unless they may employ the class action device."). Furthermore,

7   concentrating class-wide claims in one forum also resolves common legal and factual issues,

8   thus reducing inefficiencies in the use of judicial resources. *See Vinole v. Countrywide Home*

9   *Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) ("The overarching focus remains whether trial

10  by class representation would further the goals of efficiency and judicial economy"). Finally,

11  vehicle defect cases are prosecuted fairly regularly as class actions by consumers,

12  demonstrating that "there are no particular difficulties in managing [them] when appropriate."

13  *Falco*, 2016 WL 1327474, at *13.

14  **VI.    CERTIFICATION UNDER RULE 23(c)(4)**

15      **A.    A Liability-Only Class Can Be Certified**

16        If, for any reason, the Court finds that the Rule 23(b)(3) requirements are not satisfied,

17  Plaintiff seeks to certify a liability-only class under Rule 23(c)(4). Rule 23(c)(4) provides that

18  "[w]hen appropriate, an action may be brought or maintained as a class action with respect to

19  particular issues."

20        This case is particularly suitable for Rule 23(c)(4) treatment, particularly if Plaintiff's

21  class-wide damages model is not sustained, because Class claims turn on uniform resolution

22  of Nissan's liability. *See, e.g., Rahman v. Mott's LLP*, 693 F. App'x 578, 579 (9th Cir. 2017)

23  ("Rule 23(c)(4) provides that "*[w]hen appropriate*, an action may be brought or maintained as

24  a class action with respect to particular issues."); *see also Butler v. Sears, Roebuck & Co.,* 727

25  F.3d 796, 801 (7th Cir. 2013) (finding that "common issues need only predominate, not

26  outnumber individual issues."); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,

27  672 F.3d 482, 491 (7th Cir. 2012) (finding a Rule 23(c)(4) class appropriate on the issue of

28  liability); *cf. Blain v. Smithkline Beecham Corp.*, 240 F.R.D. 179, 190 (E.D. Pa. 2007)

1  (finding that "Rule 23(c)(4)(A) does not obviate the need to evaluate predominance" as to a

2  claim for relief in its entirety.) Moreover, a finding of class-wide liability based on Plaintiff's

3  generalized evidence will establish predominance as to the rest of Plaintiff's claims, which

4  turn on the question of Nissan's omissions. *See, e.g.*, *Amgen Inc. v. Connecticut Ret. Plans &*

5  *Tr. Funds*, 568 U.S. 455, 460 (2013) (finding that "a failure of proof on the issue of

6  materiality would end the case, given that materiality is an essential element of the class

7  members' securities-fraud claims.")

8      Once liability has been adjudicated as to the Class, a procedure can be crafted to

9  resolve individual damages. *See, e.g.*, *Houser v. Pritzker*, 28 F. Supp. 3d 222, 254 (S.D.N.Y.

10  2014) (after finding that if the defendant's misconduct "caused a uniform injury to all

11  members of the liability class… the Court has the tools to handle any management difficulties

12  that may arise at the remedial phase of this litigation."). Certification of an issues class is thus

13  appropriate because the adjudication of liability first would significantly advance resolution of

14  the case as a whole.

15  **VII.   CONCLUSION**

16      For the foregoing reasons, Plaintiff respectfully requests that the Court certify this

17  action for class treatment, appoint Plaintiff as class representative, and appoint Plaintiff's

18  counsel as Class Counsel.

19

20  Dated:  December 15, 2017               Respectfully submitted,

21                             Capstone Law APC

22

23                   By: /s/ Karen L. Wallace

24                      Jordan L. Lurie
                    Tarek H. Zohdy

25                      Cody R. Padgett
                    Karen L. Wallace

26                      Attorneys for Plaintiff Huu Nguyen

27

28