MICHAEL J. STORTZ (SBN 139386)
michael.stortz@dbr.com
MARSHALL L. BAKER (SBN 300987)
marshall.baker@dbr.com
Drinker Biddle & Reath LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

E. PAUL CAULEY, JR. (admitted *pro hac vice*)
paul.cauley@dbr.com
VANCE WITTIE (*pro hac vice* to be filed)
vance.wittie@dbr.com
Drinker Biddle & Reath LLP
1717 Main Street, Suite 5400
Dallas, TX 75201
Telephone: (469) 357-2500
Facsimile: (469) 327-0860

Attorneys for Defendant
NISSAN NORTH AMERICA, INC.

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| HUU NGUYEN, individually, and on behalf of a class of similarly situated individuals,<br><br>                              Plaintiffs,<br><br>        v.<br><br>NISSAN NORTH AMERICA, INC., a California corporation,<br><br>                              Defendant. | Case No.: 5:16-cv-05591-LHK (SVKx)<br><br>**DEFENDANT NISSAN NORTH AMERICA, INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION**<br><br>Date:         March 22, 2018<br>Time:         1:30 p.m.<br>Location:   280 South 1st Street<br>                  Courtroom 8, 4th Floor<br>                  San Jose, California |

### REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION. .................................................................................................... 1

II.     FACTUAL BACKGROUND. ................................................................................... 2

    A.    Plaintiff's Experience. ................................................................................... 2

    B.    Plaintiff's Defect Theory. .............................................................................. 3

    C.    The Vehicles and NNA's Role. ..................................................................... 4

    D.    The Clutch System and Field Experience including Manufacturing Changes and Service Improvements. .......................................................................... 5

III.    STANDARDS GOVERNING CLASS CERTIFICATION. ...................................... 6

IV.     PLAINTIFF MIS-IDENTIFIES COMMON ISSUES ............................................. 7

    A.    Defect Is Not a Common Issue. ..................................................................... 7

    B.    NNA's Knowledge is Not a Common Issue. .................................................. 8

V.      PLAINTIFF'S CERTIFICATION PROPOSAL REQUIRES IMPERMISSIBLE CLAIM SPLITTING. .......................................................................................... 10

VI.     INDIVIDUAL ISSUES PREDOMINATE OVER ANY COMMON ISSUES ..................... 11

    A.    Individual Issues Related to the Implied Warranty Claim Overwhelm Any Common Issues. ......................................................................................... 11

        1.    Merchantability is a Predominant Individual Issue. ....................................... 11

        2.    Duration of the Warranty is a Predominant Individual Issue ........................ 14

    B.    Individual Issues Related to the CLRA Claim Overwhelm Any Common Issues. ........................................................................................................ 14

        1.    Defectiveness and Nissan's Knowledge Are Predominant Individual Issues. ......................................................................................................... 14

        2.    Causation and Materiality Are Predominant Individual Issues. .................... 15

    C.    The Limitations Defense Undermines Predominance. ................................. 16

    D.    Lack of Common Damages Undermines Predominance. .............................. 18

        1.    Requirement of a Viable Damages Model ..................................................... 18

        2.    The Average Cost of Repair Formula Does Not Match Plaintiff's Liability Theory ........................................................................................... 19

3.    The Average Cost of Repair Formula is Contrary to Economic Theory. ........................................................................ 22

VII.    A CLASS ACTION IS NOT A SUPERIOR FORM OF ADJUDICATION. ...................... 23

A.    Individual Determinations Render Class Litigation Inefficient. ................................. 23

B.    Individual Actions Represent a Viable Alternative. .................................................... 24

VIII.    THE COURT SHOULD NOT CERTIFY AN ISSUES CLASS. ......................................... 25

IX.    CONCLUSION. .............................................................................................................. 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT NNA'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION
- ii -
CASE NO.: 5:16-cv-05591-LHK (SVKx)

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Honda Motor Co., Inc. v. Super, Ct.*,
199 Cal. App. 4th 1367 (2011)........................................................12, 15

*Am. Suzuki Motor Corp. v. Super Ct.*,
37 Cal. App. 4th 1291 (1995)................................................................12

*Ambassador Hotel Co. Ltd. v. Wei-Chuan Investment*,
189 F.3d 1017 (9th Cir. 1999)..............................................................19

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..............................................................................11

*Asghari v. Volkswagen Group of Am., Inc.*,
42 F. Supp. 3d 1306 (C.D. Cal. 2013)...................................................17

*Atkinson v. Elk Corp. of Texas*,
142 Cal. App. 4th 212 (2006)................................................................14

*Bardin v. DaimlerChrysler Corp.*,
136 Cal. App. 4th 1255 (2006)................................................................8

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009)............................................................13, 16

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
155 F.3d 331 (4th Cir. 1998)................................................................18

*Bussian v. DaimlerChrysler Corp.*,
411 F. Supp. 2d 614 (M.D.N.C. 2006)..................................................14

*Butler v. Porsche Cars N.A.*,
No. 16-CV-2042-LHK, 2017 WL 1398316 (N.D. Cal. April 19, 2017) ....................7, 8, 9, 10

*Cardinal Health 301, Inc. v. Tyco Elec. Corp.*,
169 Cal. App. 4th 116 (2008)...........................................................19, 20

*Carlson v. Gen. Motors Corp.*,
883 F.2d 287 (4th Cir. 1989)................................................................12

*City of San Jose v. Sup. Ct.*,
3 Cal.3d 447 (1974) .............................................................................10

*Colgan v. Leatherman Tool Grp., Inc.*,
135 Cal. App. 4th 663 (2006)................................................................20

*Comcast Corp. v. Behrend*,
　　569 U.S. 27 (2013) ........................................................................................... *passim*

*In re Conseco Life Ins. Co. Sales and Marketing Litig.*,
　　270 F.R.D. 521 (N.D. Cal. 2010) ...............................................................................10

*Cortez v. Purolator Air Filtration Prods.*,
　　23 Cal. 4th 163 (2000) ...............................................................................................20

*Daugherty v. Am. Honda Motor Co., Inc.*,
　　144 Cal. App. 4th 824 (2006)......................................................................................12

*Eisen v. Carlisle & Jac.*,
　　417 U.S. 156 (1974) ...................................................................................................23

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
　　2001 WL 1266317 (D.N.J. Sep. 30, 1997)..................................................................11

*Gonzales v. Comcast Corp.*,
　　2012 WL 10621 (E.D. Cal. Jan. 3, 2012) ...................................................................19

*Hicks v. Kaufman and Broad Home Corp.*,
　　89 Cal. App. 4th 908 (2001)........................................................................................21

*In re High-Tech Empl. Antitrust Litig.*,
　　985 F. Supp. 2d 1167 (N.D. Cal. 2013) ......................................................................11

*In re Hyundai and Kia Fuel Economy Litig.*,
　　2018 WL 565343 (9th Cir. Jan. 23, 2018) ..................................................................15

*In Williams v. Yamaha Motor Co. Ltd.*,
　　851 F.3d 1015 (9th Cir. 2017).....................................................................................16

*IV Solutions, Inc. v. Connecticut Gen. Life Ins. Co.*,
　　2015 WL 12516742 (C.D. Cal. April 9, 2015) ...........................................................18

*Jarman v. United Indus. Corp.*,
　　98 F. Supp. 2d 757 (S.D. Miss. 2000)........................................................................20

*Johnson v. Harley-Davidson Motor Co., Grp. LLC*,
　　285 F.R.D. 573 (E.D. Cal. 2012) ......................................................................7, 15, 16

*Jolly v. Eli Lilly & Co.*,
　　44 Cal.3d 1103 (1988) ................................................................................................17

*Kenly v. Ukegawe*,
　　16 Cal. App. 4th 49 (1993)..........................................................................................19

*Leyva v. Medline Indus. Inc.*,
　　716 F.3d 510 (9th Cir. 2013).......................................................................................19

DEFENDANT NNA'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION                                    - iv -                  CASE NO.: 5:16-CV-05591-LHK (SVKx)

*In re LifeUSA Holding Inc.*,
   242 F.3d 136 (3d Cir. 2001)................................................................................................24

*Lincoln Nat'l Life Ins. Co. v. McClendon*,
   230 F. Supp. 3d 1180 (C.D. Cal. 2017)..............................................................................18

*Lucas v. Berg Inc.*,
   212 F. Supp. 3d 950 (S.D. Cal. 2012) ....................................................................17, 18, 19

*Marcus v. BMW of N. Am.*,
   687 F.3d 583 (3d Cir. 2012)..................................................................................................6

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012)..........................................................................................15, 16

*Mirkin v. Wasserman*,
   5 Cal.4th 1082 (1993) ........................................................................................................15

*Murillo v. Fleetwood Enters. Inc.*,
   17 Cal.4th 985 (1998) ........................................................................................................25

*Nelson v. Pearson Ford Co.*,
   186 Cal. App. 4th 983 (2010)..............................................................................................15

*Newton v. Merrill Lynch, Pierce Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001)..........................................................................................23, 24

*Nitsch v. Dreamworks Animation SKG Inc.*,
   315 F.R.D. 270 (N.D. Cal. 2016)........................................................................................18

*O'Connor v. Boeing N. Am. Inc.*,
   157 F.R.D. 404 (C.D. Cal. 2000) ........................................................................................17

*O'Neill v. Simplicity, Inc.*,
   574 F.3d 501 (8th Cir. 2009)...............................................................................................14

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................................................21

*Philips v. Ford Motor*,
   2016 WL 7428810 (N.D. Cal. Dec. 22, 2016) ..............................................................16, 22

*Philips v. Ford Motor Co.*,
   2015 WL 4111448 (N.D. Cal. July 7, 2015)........................................................................17

*Plumlee v. Pfizer, Inc.*,
   2014 WL 4275519 (N.D. Cal. Aug. 29, 2014)......................................................................17

*Pulaski & Middleton, LLC v. Google, Inc.*,
   803 F.3d 979 (9th Cir. 2015)...............................................................................................20

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT NNA'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION                    - v -                    CASE NO.: 5:16-cv-05591-LHK (SVKx)

*Punian v. Gillete Co.*,
  2016 WL 1029607 (N.D. Cal. March 15, 2016) ...................................................................9

*Rahman v. Mott's LLP*,
  693 Fed. Appx. 578 (9th Cir. 2017) ...................................................................................25

*Ries v. Arizona Beverages USA, LLC.*,
  287 F.R.D. 523 (N.D. Cal. 2012) .......................................................................................17

*Sanbrook v. Office Depot, Inc.*,
  2008 WL 1994884 (N.D. Cal. May 5, 2008) .......................................................................20

*Seely v. White Motor Co.*,
  63 Cal.2d 9 (1965) ...........................................................................................................21

*Sheris v. Nissan N. Am., Inc.*,
  No. 07-2516, 2008 WL 2354908 (D.N.J. June 3, 2008) ......................................................12

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) .....................................................................................15, 16

*Taragan v. Nissan N. Am. Inc.*,
  2013 WL 3157918 (N.D. Cal. June 20, 2013) ....................................................................14

*Tietsworth v. Sears Roebuck & Co.*,
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) .............................................................................13

*Torres v. Nissan N. Am. Inc.*,
  2015 WL 5170539 ..............................................................................................................12

*Troup v. Toyota Motor Corp.*,
  540 Fed. Appx. 686 (9th Cir. 2013) ..................................................................................12

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ......................................................................................................11

*In re Universal Serv. Fund Tel. Billing Prac. Litig.*,
  21 F.R.D. 661 (D. Kan. 2004) ...........................................................................................10

*Vicar v. Goodman Global, Inc.*,
  2015 WL 4945730 (C.D. Cal. Aug. 20, 2015) ....................................................................15

*In re Vioxx Class Cases*,
  180 Cal. App. 4th 116 (2010)......................................................................................15, 16

*W. States Wholesale v. Synthetic Indus.*,
  206 F.R.D. 271 (C.D. Cal. 2002) .......................................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...........................................................................................6, 7, 8, 24

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT NNA'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION

- vi -

CASE NO.: 5:16-CV-05591-LHK (SVKx)

*Webb v. Carter's Inc.*,
  272 F.R.D. 489 (C.D. Cal. 2011) ................................................................13, 16

*Wilson v. Hewlett-Packard Co.*,
  668 F. 3d 1136 (9th Cir. 2012) ...........................................................8, 21, 22

*Wolin v. Jaguar Land Rover Co.*,
  617 F.3d 1168 (9th Cir. 2010) ................................................................12, 13

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ..........................................................6, 11, 23

**STATUTES, RULES & REGULATIONS**

15 U.S.C. § 2308(b) (Magnuson-Moss Warranty Act) .......................................14

Cal. Civ. Code § 1780(a) ...................................................................................24

Cal. Civ. Code § 1780(a)(1) ...............................................................................11

Cal. Civ. Code § 1783 ........................................................................................17

Cal. Civ. Code § 1793.2(d)(2)(B) .......................................................................25

Cal. Civ. Code § 1794(d) ...................................................................................25

Cal. Comm. Code § 2714 ...................................................................................19

Cal. Comm. Code § 2715 ...................................................................................11

Cal. Comm. Code § 2725 ...................................................................................17

Fed. R. Civ. P. 23 .............................................................................................1, 6

Fed. R. Civ. P. 23(a) ....................................................................................6, 7, 11

Fed. R. Civ. P. 23(b) ......................................................................................7, 24

Fed. R. Civ. P. 23(b)(3)......................................................................7, 11, 18, 23

Fed. R. Civ. P. 23(c)(4) .....................................................................................25

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT NNA'S OPPOSITION TO MOTION FOR
CLASS CERTIFICATION                - vii -                CASE NO.: 5:16-cv-05591-LHK (SVKx)

## I.     INTRODUCTION.

Huu Nguyen ("Nguyen") seeks to certify a class of California original owners and lessees of new Nissan 350Z and 370Z vehicles, Infiniti G35 and G37 model sedans and coupes, and Infiniti Q60 vehicles that are equipped with manual transmissions.  He argues that drivers can, under certain conditions, experience a clutch pedal that "feels soft" or "sticks to the floor" because a clutch system component—the Concentric Slave Cylinder ("CSC")—is made of materials that do not conduct heat as well as alternative materials.  During the three year period that his vehicle was under warranty, Nguyen's son experienced a stuck clutch pedal on one occasion, and Nguyen received a warranty repair at no charge.  Two years later, after his car was out of warranty, he paid approximately $700 to have his clutch repaired.  Whether either repair was caused by the alleged defect asserted in his motion or something else is unknown.  Nevertheless, he seeks to certify classes under his theories that (1) none of the putative class vehicles comply with the implied warranty of merchantability and (2) Defendant Nissan North America, Inc. ("NNA") violated the Consumer Legal Remedies Act ("CLRA") by failing to inform a consumer subclass of the asserted defect.

The case does not satisfy the fundamental requirements of Rule 23.  Individual issues predominate over any issue that Plaintiff claims is common to the class.  The implied warranty claim is dominated by individual issues, because it depends entirely upon how each class vehicle performed.  Since most class vehicles have not and will not manifest clutch pedal overheating issues during the warranty period, most class members have no implied warranty claim as a matter of law.  Even vehicles that *have* manifested a clutch issue will likely have provided adequate transportation, and thus comply with the implied warranty.

The CLRA claim is inappropriate for certification for several reasons.  The question of "defectiveness" is not a common issue.  Plaintiff's motion does not demonstrate that all class vehicles suffer from some common defect.  In fact, his complaint is with the choice of material that was used in the CSC, which is not a complaint that can support a CLRA non-disclosure claim as a matter of law.  Plaintiff does not show that all class members received that same product, or that the probability of encountering clutch overheating is substantially the same for all vehicles.  Nor does Plaintiff show that the question of NNA's knowledge of the alleged defect is a common question, given the differences in

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NISSAN NORTH AMERICA, INC.'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION          -1-          CASE NO.: 5:16-cv-05591-LHK (SVKx)

1    NNA's knowledge of reported clutch issues over the years when the putative class vehicles were sold.

2    Causation will also have to be determined individually.  This is not a case where causation can

3    be inferred from the materiality of the alleged omission.  The Court cannot presume that all consumers

4    would deem it material that a wear item like a clutch could experience an issue that manifests in only

5    in a fraction of vehicles under certain aggressive driving conditions.  As such, it will be necessary to

6    litigate class members' reliance, if any, on the alleged omission on an individual basis.

7    Further, Plaintiff have not shown that all current and former owners or lessees of the class

8    vehicles in California have sustained the same injury—or any injury at all.  They have advanced

9    "average cost of repair" as a one-size-fits-all "remedy" for every class member.  But this theory lacks

10   any legal support or empirical justification.  Moreover, Plaintiff has committed a classic *Comcast* error,

11   presenting a damages theory that does not match his legal claims.

12   Nor is class litigation necessary or desirable to resolve the alleged claims.  The fee-shifting

13   provisions of the CLRA and other statutory remedies make individual litigation plausible—and indeed

14   preferable for those purchasers and lessees who might seek recovery for out-of-pocket repair costs that

15   Nguyen's class proposal will otherwise cause them to forfeit.  Nguyen seeks to recover only theoretical

16   point-of-sale economic damages and ignores consequential damages, which would then be lost to the

17   class members who have sustained them.  This tactic casts grave doubt on his adequacy as a class

18   representative, and provides a further basis on which his motion should be denied.

19   **II.      FACTUAL BACKGROUND.**

20          **A.      Plaintiff's Experience.**

21   Nguyen purchased a new 2012 model Nissan 370Z from Stevens Creek Nissan in January 2012.

22   *See* First Amended Complaint ("FAC"), Dkt. No. 35 ¶ 28.  The vehicle was a college graduation present

23   for his son, Michael Nguyen ("Michael"), who has been the primary driver of the vehicle.  *See* Ex. A

24   to the accompanying declaration of Michael J. Stortz ("Stortz Decl."), Huu Nguyen Deposition

25   Transcript ("H. Nguyen Dep. Tr.") at 20:7-21:22; *see also* Ex. B to Stortz Decl., Deposition Transcript

26   of Michael Nguyen ("M. Nguyen Dep. Tr.") at 33:19-22.  The Nguyens were attracted to the vehicle

27   by its appearance and powerful engine.  *Id.* at 23:23-24:11; 27:8-21; *see also* Ex. B at 14:17-15:2 They

28   conducted research online, and compared the 370Z with several competitor vehicles before making

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NISSAN NORTH AMERICA, INC.'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION        - 2 -        CASE NO.: 5:16-cv-05591-LHK (SVKx)

1   their selection.  *Ex. A* at 22:6-19; 24:20-25:10; *Ex. B* at 11:20-12:24.

2        In early 2014, when the car had approximately 30,000 miles, Michael was driving the 370Z,

3   attempting to merge on a freeway.  *See Ex. B* at 28:2-4; 28:20-29:11.  He reports that the clutch pedal

4   "no longer had pressure" and did not return from the depressed position.  *Id.* at 29:5-14.  He pulled the

5   vehicle over to the shoulder and, after a few minutes, the clutch regained pressure and Michael was

6   able to drive the vehicle to the dealership.  *Id.* at 29:22-30:2. [1]  The dealership replaced clutch

7   components, including the CSC, at no charge under the warranty.  *Id.* at 35:22-36:7.  About two years

8   later, in February 2016 when the vehicle had about 50,000 miles and was out of warranty, Michael

9   reports he experienced a similar issue.  *See FAC* ¶ 33; *see also* M. Nguyen Dep. Tr. at 43:24-45:10.

10  He took the vehicle to Imperial Motor Sports and the CSC was replaced for approximately $700.  *Id.*

11  *see also FAC* ¶ 33.  Although he indicates that the clutch has a different "feel" following the repair by

12  the third party repair shop, Michael continues to drive the car.  *Ex. B* at 47:7-14; 49:3-9.  He has not

13  experienced the issue again.  *Id. see also id.* at 48:21-49:9.

14        Nguyen sued NNA on September 30, 2016.  *See* Dkt. No. 1.  Currently, the suit asserts claims

15  for breach of implied warranty and violations of the CLRA, among others.  *See FAC.*  Nguyen asks

16  the court to certify a class of purchasers and lessees of new class vehicles in California as to his claim

17  of breach of implied warranty.  *See generally* Plf.'s Mot. for Class Cert., Dkt. No. 62-3.  He also seeks

18  certification of a subclass of consumers as to the alleged CLRA claim.  *Id.*

19        **B.   Plaintiff's Defect Theory.**

20        Plaintiff retained a "forensic expert," Michael Stapleford, who opines that the CSC used in the

21  class vehicles is defective in design.  However, Stapleford never inspected or drove Nguyen's vehicle

22  or any other class vehicle. [2]  *See* Ex. C to Stortz Decl., Deposition Transcript of Michael Stapleford

23  ("Stapleford Dep. Tr.") at pp. 13, 36, 80-83.  He has merely determined that the CSC in the Nissan and

24  Infiniti vehicles, like the CSC in vehicles made by other automakers, uses a two-piece construction

25  with an aluminum cylinder and a plastic base, and notes that another manufacturer (Hyundai) has

---

27   [1] Michael does not report that the vehicle had any prior clutch problems.  Ex. B at p. 31:7-32:18.

28   [2] He has also never examined a CSC removed from a putative class vehicle.  Stapleford Dep. Tr. at p. 115.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NISSAN NORTH AMERICA, INC.'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION           - 3 -           CASE NO.: 5:16-cv-05591-LHK (SVKx)

vehicles that use a CSC with an all-aluminum construction. *Id.* at pp. 10-13, 15-17. He then had a company do computer modeling to support his unremarkable[3] conclusion that an all-aluminum part conducts more heat than an aluminum and plastic part. *Id.* at pp. 40-43. Using "analytical methods and standards of *automotive repair*,"[4] he concludes that the CSC *design* is defective because, under more aggressive driving conditions, the CSC is unable to adequately transfer heat, allowing overheating of the clutch fluid and a resulting loss of pressure in the clutch pedal. *Id.* at p. 74.[5] Stapleford offers no opinion regarding how many CSC failures or pedal sticking issues have been caused by excessive heat, or the degree to which his preferred design would prevent same. *Id.* at p. 108.

Stapleford concedes that all clutches will experience wear and tear in normal use. *Id.* at pp. 43-45. He also concedes there are multiple potential causes for a clutch pedal sticking to the floor, or for a soft feel to a clutch pedal, that have nothing to do with overheating or with the CSC. *Id.* at pp. 46-54, 58, 67-68. He also concedes that there are multiple potential causes for excessive heat in a clutch system, and that driving behaviors and driving environment can affect both clutch system wear and overheating. *Id.* at pp. 57, 60, 62-66, 69.

## C. The Vehicles and NNA's Role.

Each of the models of vehicles referenced in this suit was manufactured in Japan by Nissan Motor Co., Ltd. ("NML"). *See* accompanying Declaration of James W. Blenkarn ("Blenkarn Decl.") ¶ 9. NML had overall design responsibility for the vehicles. *Id.* The CSC was designed and manufactured by a supplier to NML, Valeo, Inc. *Id.*

NNA was not involved in design and development for any of these vehicles, or for the clutch

---

[3] *See* https://www.ck12.org/c/physics/thermal-conductors-and-insulators/lesson/Thermal-Conductors-and-Insulators-MS-PS/?referrer=concept_details; https://www.online-sciences.com/the-matter/the-importance-of-good-and-bad-conductors-of-heat/

[4] *See* Report of Michael Stapleford ISO Plf.'s Mot. for Class Cert., Dkt. No. 62-11, ¶ 15 (emphasis added). While he is an admitted car enthusiast and has a number of certifications for automotive repair, the only time in his career that he was involved in design of an automobile component was a three-month stint as a contract engineer at BMW in 1990 working on a rear suspension support. *See* Stapleford Dep. Tr. at 133. He has never had any responsibility for transmissions or clutches. *Id.* Although he purports to render "design" opinions here, he conceded that "all of his work is really forensic work." *Id.* at 94.

[5] The purpose of a CSC is not to serve as a heat conductor, but to transfer hydraulic pressure into mechanical pressure to engage or disengage the clutch assembly to either prevent or allow torque flow from the engine to the vehicle drivetrain. Blenkarn Decl. ¶¶ 8, 12-11.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NISSAN NORTH AMERICA, INC.'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION          - 4 -          CASE NO.: 5:16-cv-05591-LHK (SVKx)

1   actuation system. *Id.* After the vehicles were manufactured by NML, they were distributed to NNA

2   for sale and distribution in the U.S. *Id.* With each Nissan vehicle, NNA provided a New Vehicle

3   Limited Warranty under which NNA agreed to repair or replace components containing a defect in

4   materials and workmanship for three years or 36,000 miles whichever comes first. Infiniti vehicles

5   have a four year/60,000 mile warranty. The express warranty limits the duration of any implied

6   warranty to the duration of the express warranty. *See* NNA's accompanying Request for Judicial

7   Notice, Exs. 1(a)-(i); 2(j)-(q).

8       **D.    The Clutch System and Field Experience including Manufacturing Changes and
            Service Improvements.**

9       The clutch actuation system has numerous components. While the overall clutch actuation

10  system in the vehicles is the same, there are vehicle-specific differences. *See* Blenkarn Decl. ¶ 11.

11  Some vehicles have 3.5 liter engines, and others have 3.7 liter engines. Some vehicles are coupes and

12  others are sedans. *Id.* ████████████████████████████ *See* Blenkarn Decl. ¶¶ 18-

13  19. The part number for the CSC has changed over time, reflecting, at least in part, different versions

14  of the CSC produced with different manufacturing process improvements. *See* Ex. D to Stortz Decl.,

15  Deposition Transcript of James Blenkarn ("Blenkarn Dep. Tr.") at pp. 24-25. These undisputed facts

16  belie Plaintiff's claim that all putative class vehicles have an identical clutch system.

17      While NNA did not design or manufacture the vehicles, it monitors the North American field

18  performance of Nissan and Infiniti vehicles built in Japan (as well as those built in the U.S.) and works

19  with the relevant groups and suppliers to develop countermeasures. Blenkarn Decl. ¶ 10. The Blenkarn

20  Declaration details investigations by NNA into driver reports of clutch pedals becoming stuck in the

21  down/depressed position. Many had nothing to do with the CSC. *Id.* ¶ 13. ████████████

22  ████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████ *Id.* ¶¶ 15-17.

25  ████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████ *Id.* ¶ 18.

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NISSAN NORTH AMERICA, INC.'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION               - 5 -               CASE NO.: 5:16-cv-05591-LHK (SVKx)

1

2

3          *Id.*  To address these limited circumstances, NNA

4 issued a Technical Service Bulletin advising dealers to change the hydraulic fluid to a higher grade

5 racing fluid when customers reported the issue, and there was no detectible leak in the hydraulic

6 system.  *Id.* ¶¶ 18-19.[6]  No investigation by NNA, and no information provided to NNA by NML or

7 Valeo, has attributed any clutch actuation complaints to the material used in the CSC, or to heat

8 conduction properties of the CSC.  *Id.* ¶ 8.

9 **III.**      **STANDARDS GOVERNING CLASS CERTIFICATION.**

10          "The class action is an exception to the usual rule that litigation is conducted by and on behalf

11 of the individual named parties only."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  "To come

12 within the exception, a party seeking to maintain a class action must affirmatively demonstrate his

13 compliance with Rule 23."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  "Before certifying a

14 class, the trial court must conduct a rigorous analysis to determine whether the party seeking

15 certification has met the prerequisites of Rule 23."  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d

16 1180, 1186 (9th Cir. 2001).  When performing this rigorous analysis, "the court cannot be bashful."  It

17 "must" resolve all factual or legal disputes relevant to class certification, even if they overlap with the

18 merits—including disputes touching on elements of the cause of action."  *Marcus v. BMW of N. Am.*,

19 687 F.3d 583, 591 (3d Cir. 2012).

20          Rule 23(a) provides that class certification is proper only if:  (1) the class is so numerous that

21 joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3)

22 the claims or defenses of the representative parties are typical of the claims or defenses of the class;

23 and (4) the representative parties will fairly and adequately protect the interests of the class."  *Comcast*,

24 569 U.S. at 33.

25          After carrying its burden of satisfying Rule 23(a)'s prerequisites, the plaintiff must establish

26

---

[6]

27                        and issued a Technical Service Bulletin in

28 2015 giving enhanced instructions on how to properly bleed air from the clutch system to avoid this issue.  Blenkarn Decl. ¶ 20.

1   that the class meets the prerequisites of at least one of the three types of class actions set forth in Rule

2   23(b).  *Comcast*, 569 U.S. at 33.  Plaintiff relies exclusively upon Rule 23(b)(3) permitting certification

3   where common issues predominate over individual issues and class litigation represents the "superior

4   form of adjudication."  Plaintiff bears the burden of satisfying the requirements of Rules 23(a) and

5   (b)(3) "through evidentiary proof[.]" *Id.*

6   **IV.      PLAINTIFF MIS-IDENTIFIES COMMON ISSUES.**

7          The Supreme Court has stressed that commonality under Rule 23(a) is not merely a matter of

8   identifying and enumerating matters common to the claims of all class members.  *Dukes*, 131 S. Ct. at

9   2551.  Rather, commonality requires identification of a "common contention . . . of such nature that it

10  is capable of classwide resolution—which means that determination of its truth or falsity will resolve

11  an issue that is central to the validity of each one of the claims in one stroke." *Id.*  "What matters to

12  class certification . . . is not raising common 'questions'—even in droves—but rather the capacity of a

13  classwide proceeding to generate common answers apt to drive the resolution of the litigation."  *Id.*

14  Here, the proposed common issues that Plaintiff has identified are, in fact, individual issues.

15         **A.      Defect Is Not a Common Issue.**

16         Plaintiff urges that the Court should consider only their liability theory and evidence in

17  considering whether an issue is a common one.  But the Court could hardly evaluate the capacity of

18  the defect question to generate a common answer, as *Dukes* requires, without considering whether it is

19  possible that the trier of fact could find that some, but not all, of the putative class vehicles had a defect.

20  That Plaintiff has procured an expert with a defect theory that he claims is common to all vehicles is

21  not enough to satisfy the commonality requirement.  It is elementary that where the proposed class did

22  not receive the same product and different design configurations must be evaluated, no common issue

23  of defect is presented.

24         Thus, in *Johnson v. Harley-Davidson Motor Co., Grp. LLC*, 285 F.R.D. 573, 579 (E.D. Cal.

25  2012), the court rejected certification where multiple design configurations among the class vehicles

26  precluded a common determination of the design defect claim, even though plaintiffs' experts offered

27  the opinion that all of the motorcycles designs exposed the operators to excessive heat.  Similarly, in

28  *Butler v. Porsche Cars N.A.*, No. 16-CV-2042-LHK, 2017 WL 1398316 (N.D. Cal. April 19, 2017),

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NISSAN NORTH AMERICA, INC.'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION          - 7 -          CASE NO.: 5:16-cv-05591-LHK (SVKx)

1   this Court rejected certification in a case where plaintiffs alleged that all class vehicles had a wiring

2   harness defect. Porsche submitted evidence indicating that the wiring harness issues were the result of

3   manufacturing anomalies and that Porsche had made changes in the product to ameliorate the issues.

4   When plaintiffs failed to rebut this evidence, the Court concluded that he had failed to "affirmatively

5   demonstrate" that common issues predominated. *Id.* at *9 (citing *Dukes*, 564 U.S. at 350). The Court

6   did not confine itself to the claimant's evidence, as Plaintiff demands here.

7        The existence of a "defect" is a relevant question only to the extent that NNA was obligated to

8   disclose it under the CLRA. In an almost identical case, the California Court of Appeals found that

9   the manufacturer had no duty to disclose an alleged "defect" that, like here, is nothing more than an

10   argument that product would have been more durable if made of another material. *Bardin v.*

11   *DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (2006) (no duty under CLRA to disclose that

12   use of tubular steel rather than cast iron in exhaust manifold would lead to a higher failure rate than

13   cast iron). As in *Bardin*, the facts allegedly not disclosed pertain to a technical issue—the material

14   used to construct the CSC, which Plaintiff says allows overheating when driven by more aggressive

15   drivers. *See* Stapleford Dep. Tr. at 74. For purposes of the CLRA, there is no "defect" requiring

16   disclosure, much less a common classwide one.

17        And even if the alleged defect could serve as a basis for a CLRA claim, given the evidence

18   before the Court, the trier of fact need not conclude that all class vehicles are defective or non-defective.

19   For example, a jury could conclude that a vehicle equipped with the GTR racing fluid is not defective.

20   A jury could conclude that vehicles with 3.5 liter engines are not defective. A jury could decide that

21   Infiniti models are not defective. This issue is not a common one.[7]

22        **B.**    **NNA's Knowledge is Not a Common Issue.**

23        Plaintiff posits that whether NNA violated the CLRA presents a common issue. This

24   contention assumes that NNA's knowledge of the alleged defect was the same during the entire class

25   period. *See Wilson v. Hewlett-Packard Co*., 668 F. 3d 1136, 1145-46 (9th Cir. 2012) (claimant must

26

27

28

---

[7] Plaintiff's expert concedes that the experience of drivers within the class could well be different. Sedan owners may drive their vehicles "more sedately" and Infiniti drivers may be less likely to be driving enthusiasts than Nissan Z owners. *See* Stapleford Dep. Tr. at 128.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NISSAN NORTH AMERICA, INC.'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION    - 8 -    CASE NO.: 5:16-CV-05591-LHK (SVKx)

1   establish defendant's knowledge of the allegedly omitted fact).  Plaintiff does not establish this vital

2   fact.

3   For knowledge to be a common issue, Nguyen would have to present evidence that NNA was

4   aware of the "defect" his expert describes before NNA sold the first class vehicle in the 2007 model

5   year.  He does not do so.  Indeed, Plaintiff's expert acknowledges that over the years, NNA engineers

6   opened investigations into various issues with the clutch system, identified manufacturing anomalies,

7   and properly addressed them.  *See* Stapleford Dep. Tr. at pp. 108-09; Stapleford Report, Dkt. No. 62-

8   11, ¶ 8.  Further, many documents Plaintiff cites as showing knowledge from reports of pedal-sticking

9   were related to something *other* than the CSC or its materials.[8]  All documents post-date the start of

10  sale of the class vehicles.  *See* Plf.'s Mot. For Class Cert. at 7:13-11:7.

11  Stapleford also concedes that there is no evidence that NNA ever attributed any clutch actuation

12  complaints to the material used in the CSC, or its heat conduction properties.  *See* Stapleford Dep. Tr.

13  at p. 75; *see also* Blenkarn Decl. ¶ 8.  At most, Plaintiff's expert advocates that NNA engineers were

14  only beginning to "converge" towards his theory around 2012 or so, a date far into the production run

15  of the vehicles.  Stapleford Dep. Tr. at pp. 77-80.

16  To avoid this glaring problem, Plaintiff relies upon a subtle shift.  The supposed design defect

17  is the composition of the CSC, an element his expert says is the same in every class vehicle.  But when

18  arguing that NNA's *knowledge* is a common question, Plaintiff does not to try to prove that NNA knew

19  the design of the CSC had this specific flaw.  Instead, he tries to transform the definition of the defect

20  into a more general allegation that NNA was aware that the clutch system as a whole was prone to soft

21  pedal or pedal sticking complaints.  *See* Motion [Dkt. 63] at 6:18-11:17.  Of course, such a generic

22  allegation of mere failure-proneness would fail without a specific identified defect, as this Court has

23  held.  *See Punian v. Gillete Co*., 2016 WL 1029607 at *13-14 (N.D. Cal. March 15, 2016); *Butler*,

24  2017 WL 1398316 at *7.  In any event, if Plaintiff could legitimately base a claim on general failure-

25  proneness, commonality would be defeated because the trier of fact would have to consider the extent

26

27  ────────────

    [8] *See* Plf.'s Mot. for Class Cert. at 7:13-8:22; *see also* Exs. 7, 8 and 10 filed ISO of Plf.'s Mot.
28  For Class Cert., Dkt. No. 62-6 (Ex. 8, clutch master cylinder; Ex. 7, clutch master cylinder; Ex. 10, air in the system from fluid leaks).

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NISSAN NORTH AMERICA, INC.'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION          - 9 -          CASE NO.: 5:16-cv-05591-LHK (SVKx)

1   to which the numerous manufacturing process changes impacted the risk of the clutch pedal sticking

2   to the floor.  *See Butler*, 2017 WL 1398316 at *6   Plaintiff cannot have it both ways.

3   ## V.    PLAINTIFF'S CERTIFICATION PROPOSAL REQUIRES IMPERMISSIBLE CLAIM SPLITTING.

4

5          Plaintiff's class certification strategy is contrary to the interests of many class members.

6   Plaintiff proposes to limit the proposed class and subclass to a point-of-sale remedial theory that is not

7   only dubious in itself, but also precludes recovery of actual out-of-pocket loss.

8          Evaluating adequacy of representation ordinarily examines whether conflicts of interest exist

9   among the class member and whether the named plaintiff and class counsel will vigorously prosecute

10  the action on behalf of the class.  *See*, *e.g.*, *W. States Wholesale v. Synthetic Indus.*, 206 F.R.D. 271,

11  277 (C.D. Cal. 2002).   "A class representative is not an adequate representative when the class

12  representative abandons particular remedies to the detriment of the class."  *Id*. (citing cases).   State

13  laws against claim-splitting may cause valuable rights to be lost.  *See e.g. City of San Jose v. Sup. Ct*.,

14  3 Cal.3d 447, 463-64 (1974) (plaintiff pursuing only one form of damages held to be inadequate

15  representative because of risk of waiver of other forms of damages).

16         To bolster their certification case, Plaintiff advances only a point-of-sale economic loss theory.

17  Under his theory, every purchaser or lessee sustained a loss of exactly the cost of the average cost of

18  repair, as calculated by their expert, when the vehicle was purchased.   Plaintiff does not propose to

19  recover the "natural" measure of damages attendant to his factual theory—the actual out of pocket

20  expenses of purchasers who had to pay for repairs to their vehicles.   Nguyen testified that his very

21  purpose in bringing the suit was to require Nissan to fix the vehicles and for class members to recover

22  their repair costs.  *See* H. Nguyen Dep. Tr. at 60:21-61-8.

23         Yet, once the Court enters judgment, whether favorable or unfavorable to the class, res judicata

24  will preclude class members from seeking their actual consequential damages.   "Claim splitting is

25  generally prohibited by the doctrine of res judicata…[and] class certification should be denied on the

26  basis that class representatives are inadequate when they opt to pursue certain claims on a class-wide

27  basis while jeopardizing the class members' ability to subsequently pursue other claims."  *In re*

28  *Conseco Life Ins. Co. Sales and Marketing Litig.*, 270 F.R.D. 521, 531 (N.D. Cal. 2010) (*quoting In re*

1  *Universal Serv. Fund Tel. Billing Prac. Litig.,* 21 F.R.D. 661, 668 (D. Kan. 2004)).

2       While there may be occasions where the surrender of a particular remedy is justified in the

3  context of the overall case strategy, this is not such an occasion.  Plaintiff has chosen to pursue a

4  remedial theory that is dubious at best.  See section VI D, *infra*.  By contrast, there is little doubt that

5  an individual litigant who succeeded in establishing liability on the implied warranty or CLRA theories

6  advanced would be able, upon proof at trial, to recover the repair costs incurred because of the alleged

7  defect.  *See* Cal. Comm. Code § 2715; Civil Code § 1780(a)(1).  This necessarily introduces an element

8  of intra-class conflict and counsels against certification.

9  **VI.     INDIVIDUAL ISSUES PREDOMINATE OVER ANY COMMON ISSUES.**

10      The Rule 23(b)(3) predominance inquiry is "far more demanding" than Rule 23(a)'s

11  commonality requirement.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997).  In assessing

12  predominance, the court characterizes the issues in a case as common or individual, and then carefully

13  scrutinizes the relationship between them.  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045

14  (2016).  The court has a "duty to take a close look at whether common questions predominate over

15  individual ones," and ensure that individual questions do not "overwhelm questions common to the

16  class."  *Comcast*, 569 U.S. at 34. The overarching focus of the inquiry is whether a class action would

17  further the goals of efficiency and judicial economy.  *Zinser*, 253 F.3d at 1190 (9th Cir. 2001).[9]

18       **A.     Individual Issues Related to the Implied Warranty Claim Overwhelm Any
19              Common Issues.**

20              **1.     Merchantability is a Predominant Individual Issue.**

21       The implied warranty of merchantability does not assure that the product will fulfill the buyer's

22  expectations; but rather, provides for a minimum level of quality.  *In re Ford Motor Co. Ignition Switch*

23  *Prods. Liab. Litig.*, 2001 WL 1266317, at *22 (D.N.J. Sep. 30, 1997) (dismissing plaintiffs' claims for

24  breach of implied warranty of merchantability under New Jersey and California law because they drove

25       [9] This court has referred to five principles guiding the predominance inquiry:  (1) determining
26  whether common evidence and methodology could be used to prove the elements of the underlying
    cause of action; (2) applying a "rigorous analysis" that may overlap with the merits; (3) determining
27  the admissibility and persuasiveness of expert testimony; (4) conducting a qualitative assessment of
    the common and individual questions; (5) determining whether common questions will predominate
28  with respect to the class as a whole.  *In re High-Tech Empl. Antitrust Litig.*, 985 F. Supp. 2d 1167,
    1186-87 (N.D. Cal. 2013) (citations omitted).

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NISSAN NORTH AMERICA, INC.'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION           - 11 -        CASE NO.: 5:16-cv-05591-LHK (SVKx)

their vehicles for years before experiencing the ignition switch issue).  The warranty requires only that the good be fit for the ordinary purposes for which such goods are used.  *Am. Suzuki Motor Corp. v. Super Ct.*, 37 Cal. App. 4th 1291, 1295-96 (1995).

Fundamentally, merchantability is a test of functionality.  "[W]here a car can provide safe, reliable transportation, it is generally considered merchantable."  *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989).  The implied warranty is breached only when the defect renders the vehicle unfit for its ordinary purpose of providing transportation.  *Sheris v. Nissan N. Am., Inc.*, No. 07-2516, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008).  *See Troup v. Toyota Motor Corp.*, 540 Fed. Appx. 686 (9th Cir. 2013) (no claim stated where alleged defect did not compromise the vehicle's safety, render it inoperable, or drastically reduce its mileage range).

Inevitably, determining whether there has been breach of the warranty requires an examination of how a particular vehicle has actually performed.  The first issue that must be determined is whether the alleged defect manifested. "A breach of warranty cannot result if the product operates as it was intended to and does not malfunction during its useful life."  *Am. Honda Motor Co., Inc. v. Super, Ct.*, 199 Cal. App. 4th 1367, 1375 (2011) (*citing Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 831-32 (2006)).[10]

Nguyen relies upon a statement in *Wolin v. Jaguar Land Rover Co.*, 617 F.3d 1168, 1175 (9th Cir. 2010) that manifestation is not a prerequisite for certification.  But *Wolin* did not hold that the issue was irrelevant to certification of a class seeking to recover under an implied warranty theory.[11] As the court in *Torres v. Nissan N. Am. Inc.*, 2015 WL 5170539 at *4-5 observed, *Wolin* addressed manifestation only as a potential requirement for certification under federal procedural law.  But *Am. Honda* and similar cases establish manifestation as a requirement of California *substantive* law.  The claimant must establish that the alleged defect has manifested or is substantially certain to manifest

---

[10] In some instances, where the vehicle has performed adequately for a sufficient time and mileage, it may be judged merchantable as a matter of law.  For instance, in *Sheris*, plaintiff complained of a brake defect that did not appear until after the vehicle had been driven approximately 20,000 miles.  The court found that 20,000 miles of trouble-free service established that the vehicle had been merchantable when sold.  *See Sheris*, 2008 WL 2354908 at *5-6.

[11] *Wolin* did not involve claims arising under California law.  *See Am. Honda*, 144 Cal. App. 4th at 1375 ("*Wolin* does not address California law").

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NISSAN NORTH AMERICA, INC.'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION                     - 12 -                CASE NO.: 5:16-cv-05591-LHK (SVKx)

1   during the product's useful life.  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009).  Because

2   predominance must be evaluated with reference to the substantive requirements of each claim, the court

3   had to consider the manifestation issue to assess predominance.  This issue can only be determined on

4   an individual basis.[12]

5        Clutch issues—and certainly CSC issues—do not affect every vehicle.  In performing his

6   damages calculations, Plaintiff's accounting expert examined the database for Nissan warranty repairs

7   and determined 1,348 instances where the CSC was listed as the primary failed part.  *See* Boyles

8   Report, Dkt. No. 62-13, ¶¶ 33-34.[13]  Considering the total vehicle population of approximately 34,000,

9   as estimated by Plaintiff's expert, this equates to a repair rate of approximately 3.97%.  *See* Ex. E to

10  Stortz Decl., Deposition Transcript of Steven Boyles ("Boyles Dep. Tr.") at 15:8-10.  The repair figures

11  includes repairs for all causes, not merely the failure mode that Stapleford has described.  *Id.* at 117:3-

12  119:12.  Hence, most purchasers will never encounter the issue and cannot assert a breach of implied

13  warranty claim, as a matter of law.

14       Plaintiff asserts that manifestation is a mere merits argument and that substantial-certainty-to-

15  fail is a common issue that can be determined on a class-wide basis. But if the trier of fact determined,

16  as it must, that the class vehicles are not substantially certain to manifest the defect during their useful

17  lies, the finding would bar the claims of all class members including those whose vehicles actually did

18  manifest the defect. Any individual question can be rendered common by asking if it is true as to all

19  class members. But doing so could wipe out what nay otherwise be valid claims.  Indeed, doing so

20  could wipe out what may otherwise be valid claims.

21       And even if manifestation could be litigated on a classwide basis, an affirmative finding would

22  not establish an implied warranty claim.  It must still be determined whether the defect prevented the

23  vehicle from adequately serving its ordinary purpose of transportation. *See Tietsworth v. Sears*

24  *Roebuck & Co.*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010) (mere manifestation does not constitute

25

---

26     [12] The defect in alignment geometry considered in *Wolin* inevitably caused excessive tire wear.
    *See Webb v. Carter's Inc.*, 272 F.R.D. 489, 498 (C.D. Cal. 2011) (distinguishing *Wolin* because

27  plaintiff in *Wolin* identified a specific defect that would inevitably manifest).

      [13] The expert made no effort to distinguish between repairs for manufacturing defects or any

28  other non-heat related cause. Boyles Dep. Tr. at 18:24-19:2.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NISSAN NORTH AMERICA, INC.'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION                    - 13 -            CASE NO.: 5:16-cv-05591-LHK (SVKx)

breach of implied warranty; there must be a defect that renders product unfit for its ordinary purpose). For example, Nguyen's clutch system worked without problems for two years and almost 30,000 miles before he needed any repairs.  He received a free warranty repair and continued to drive his vehicle beyond the duration of the warranty before needing another repair.  He still drives the vehicle.  A fact-finder certainly could determine that his vehicle was merchantable. Indeed, it is questionable whether the facts even state a claim for breach of implied warranty.  *See Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 624 (M.D.N.C. 2006) (vehicle that performed for several years and had only one significant repair merchantable as a matter of law).

Plaintiff assumes that he can show that a vehicle is not merchantable, even if it has actually provided safe transportation for its owner, just because he asserts a theoretical defect somehow linked to a safety risk.  An allegation of an elevated risk of harm, even a safety risk, does not suffice to show that a product is not merchantable.  *Taragan v. Nissan N. Am. Inc.*, 2013 WL 3157918 at *4 (N.D. Cal. June 20, 2013) (*citing O'Neill v. Simplicity, Inc.*, 574 F.3d 501, 513 (8th Cir. 2009)).  Answering the merchantability question would require a further individualized inquiry, even as to the small minority of class members who experienced an issue due to the alleged defect.

### 2. Duration of the Warranty is a Predominant Individual Issue.

NNA contractually limited the duration of any implied warranty to that of the express warranty. Such limitations are expressly authorized by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2308(b). *See Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212, 227 (2006).  Where manifestation has occurred, it will be necessary to determine whether the implied warranty had expired by the end of the warranty period.  This is, of course, an individual issue.

### B. Individual Issues Related to the CLRA Claim Overwhelm Any Common Issues.

#### 1. Defectiveness and Nissan's Knowledge Are Predominant Individual Issues.

As set forth in Section IV(B), there is no common answer to whether Nissan had adequate knowledge to sustain a claim based upon an omission to disclose the alleged "defect."  The issues are individual and weigh against certification.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NISSAN NORTH AMERICA, INC.'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION         - 14 -        CASE NO.: 5:16-cv-05591-LHK (SVKx)

### 2.   Causation and Materiality Are Predominant Individual Issues.

Proof of a CLRA violation requires proof of causation which in, turn, requires proof of reliance. *Mazza*, 666 F.3d at 595-96; *Johnson*, 285 F.R.D. at 584 (E.D. Cal. 2012) (*citing Nelson v. Pearson Ford Co.*, 186 Cal. App. 4th 983, 1022 (2010)). Where an omission is asserted, each claimant must prove that, had the information been disclosed, he or she would have been aware of it and acted differently. *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1093 (1993).

In determining liability, the court would have to inquire about the circumstances of each sale and lease transaction. If the class did not have the same information, no common question exists. *Am. Honda*, 199 Cal. App. 4th at 1379. And, indeed, there is evidence that the existence of clutch issues in some consumer's vehicles was known and available to the public through internet sources. *See, e.g.*, M. Nguyen Dep. Tr. at 36:8-21; 58:1-59:16; H. Nguyen Dep. Tr. at 81:8-17; FAC at ¶¶ 51, 52. *See also* accompanying Declaration of Stephen Prowse, attaching Prowse Expert Report ("Prowse Report"), ¶¶ 19-21. For any particular purchaser, it would be necessary to establish the extent of that person's pre-purchase knowledge. Such analysis is highly individualized.

Plaintiff cannot escape these difficulties by asserting that their claim is based on omissions common to all class members. "For everyone in the class to have been exposed to the omissions, as the dissent claims, it is necessary for everyone in the class to have viewed the allegedly misleading advertising." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012). Plaintiff here does not point to any circumstances indicating that the class were exposed to a single communication, much less a disclosure that could be judged deceptive on a classwide basis.[14]

That one would have behaved differently may be inferred in some cases where the omission is material. However, where the alleged misrepresentation or omission is not material to all class members, the issue of reliance varies from consumer to consumer, and certification is not appropriate. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022-23 (9th Cir. 2011). *See also In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2010); *Vicar v. Goodman Global, Inc.*, 2015 WL 4945730, at *12-13 (C.D. Cal. Aug. 20, 2015) (rejecting certification of CLRA claims because materiality of the

---

[14] The Ninth Circuit has recently held the presumption has been applied sparingly by California courts and appears to be limited to cases of extensive advertising campaigns. *See In re Hyundai and Kia Fuel Economy Litig.*, 2018 WL 565343, (9th Cir. Jan. 23, 2018).

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NISSAN NORTH AMERICA, INC.'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION                    - 15 -                    CASE NO.: 5:16-cv-05591-LHK (SVKx)

1    alleged defect would vary from customer to customer).

2           This Court found that the predominance requirement was not met in as similar case.  *Philips v.*

3    *Ford Motor*, 2016 WL 7428810 at *15-16 (N.D. Cal. Dec. 22, 2016).  It noted that presumption of

4    reliance is not applied where the class is not exposed to the same challenged representations.  *Id.* at

5    *15 (*citing Mazza*, 666 F.3d at 596).  The same principle analysis applies to claims of fraudulent

6    omissions as well, as the presumption of reliance is not justified where the class has received "quite

7    disparate information."  *Id.* (*quoting Stearns*, 655 F.3d at 1020). The evidence in *Philips* showed that

8    some class members had received information about the alleged defect before they purchased their

9    vehicles.  Hence, it was inappropriate to presume that all class members would have acted differently

10   in the face of a disclosure.  *Id.*

11          Here, the alleged omission is not necessarily material to every prospective consumer.  The vast

12   majority never experience the clutch-to-the-floor issue.  And, although Plaintiff and his expert speculate

13   as to how the clutch-to-the-floor issue might prove a safety risk, they can point to no actual accidents

14   that have been attributed to the clutch in the eleven years since the class vehicles were introduced.[15]

15   Not every safety risk is necessarily material to every consumer.  *See In re Vioxx*, 180 Cal. App. 4th at

16   129 (materiality not subject to classwide proof where some physicians would have prescribed, and

17   some patients would have chosen, to take medication even if omitted information disclosed); *Johnson*,

18   285 F.R.D. at 580-81 (alleged burn risk not uniformly material where showed brand loyalty would

19   cause many consumers to purchase defendant's motorcycles despite risk); *Webb*, 272 F.R.D. at 504

20   (presumption could not be applied where expert testimony indicated that some consumers would have

21   still purchased children's clothing with tagless labels that created risk of skin rash).  Hence, causation

22   remains a critical individual issue for all statutory claims.  The need to determine how each class

23   member would have acted precludes a finding that common issues predominate.

24          **C.    The Limitations Defense Undermines Predominance.**

25          Where a statute of limitations defense "raises" substantial individual questions that vary among

26   _____
     [15] *In Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1029 (9th Cir. 2017), the Ninth Court
27   emphasized that the alleged safety risk must be "unreasonable."  While in some cases a close
     connection between the alleged defect and a safety issue dispenses with the need to show the risk has
28   actually occurred, the claim must rest on more than "conjectural and hypothetical injuries."  *Id.* at 1028
     (*quoting Birdsong*, 590 F.3d at 961)).

Drinker Biddle &
Reath LLP
Attorneys At Law
San Francisco

Nissan North America, Inc.'s Opposition to
Motion for Class Certification          - 16 -          Case No.: 5:16-cv-05591-LHK (SVKx)

1    class members," such questions may defeat predominance.  *Lucas*, 212 F. Supp. 3d at 971, (quoting

2    *O'Connor v. Boeing N. Am. Inc.*, 157 F.R.D. 404, 414 (C.D. Cal. 2000).

3         A claim for breach of warranty is subject to a four year limitations period, which accrues when

4    tender of delivery is made.  Cal. Comm. Code § 2725.  The delayed discovery doctrine does not apply

5    to a warranty claim.  *Lucas v. Berg Inc.*, 212 F. Supp. 3d 950, 961 (S.D. Cal. 2012).  Nguyen bought

6    his vehicle more than four years before this suit was filed.  His implied warranty claim is time-barred.

7    Many other putative class members' claims are similarly precluded.

8         The statute of limitations for a CLRA claim is three years.  Cal. Civ. Code § 1783.  Limitations

9    begin to run from the date of the commission of the alleged unlawful act or practice.  *Asghari v.*

10   *Volkswagen Group of Am., Inc.*, 42 F. Supp. 3d 1306, 1319 (C.D. Cal. 2013).  The delayed discovery

11   doctrine may apply in a CLRA case but the plaintiff must establish (1) the time and manner of

12   discovery; (2) the inability to have made earlier discovery despite reasonable diligence.  *Id.*  "The statue

13   beings to run once [plaintiff] is put on inquiry notice, when the circumstances would lead a reasonable

14   person to suspect wrongdoing."  *Ries v. Arizona Beverages USA, LLC.*, 287 F.R.D. 523, 534 (N.D.

15   Cal. 2012) (*citing Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1110 (1988)).  *See also Plumlee v. Pfizer,*

16   *Inc.*, 2014 WL 4275519 (N.D. Cal. Aug. 29, 2014).  This Court has held that an automobile purchaser

17   is placed on inquiry notice when the alleged defect manifests.  *Philips v. Ford Motor Co*., 2015 WL

18   4111448 at *& 7-8 (N.D. Cal. July 7, 2015).

19        Class members purchased their vehicles as long ago as the 2007 model year—over nine years

20   before the suit was filed.  Many putative class members' CLRA claims are likely time-barred.  The

21   Nguyen's own situation illustrates the kind of individual evidence that will have to be examined in

22   determining whether the limitations defense bars each claim.  Michael Nguyen testified that when he

23   first brought his vehicle to the dealership for a clutch repair in March 2014, dealership personnel told

24   him he had problem related to the slave cylinder and that the issue had occurred in other vehicles.

25   Michael went online and visited a 370Z owner's forum and a Facebook group and noted that other

26   owners had had a similar experience.  *See* M. Nguyen Dep. Tr. at 36:8-21;58:1-59:16.  Consequently,

27   no later than March, 2014, the Nguyens were on inquiry notice of the potential for a defect related to

28   the slave cylinder in the 370Z.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NISSAN NORTH AMERICA, INC.'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION          - 17 -          CASE NO.: 5:16-cv-05591-LHK (SVKx)

The Nguyens managed to file their lawsuit less than three years after the date of inquiry notice, but many other class members on inquiry notice as of that date probably did not. The simple fact that the issue was being discussed on the internet and complaints were being posted on NHTSA website indicate that many class members may well have been on inquiry notice long before three years prior to the filing of the suit. And if any putative class member experienced a soft pedal or pedal sticking issue before September 30, 2016, their claims are likely time-barred.

Inquiry notice issues are inherently individual, especially where some class members may have had information regarding the alleged defect condition. *Lucas*, 212 F. Supp. 3d at 971. *See also Broussard v. Meineke Disc. Muffler Shops, Inc.,* 155 F.3d 331, 342 (4th Cir. 1998). NNA does not contend that the existence of a statute of limitations issue mandates the denial of certification per se. *See Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 309 (N.D. Cal. 2016). However, the Court must conduct a "pragmatic inquiry" into the types of proof the parties will use to prove or disprove their tolling theory. *Id.* 310.

Unlike *Nitsch*, where plaintiffs could point to substantial documentary evidence showing the defendants' scheme to conceal their agreement not to "poach" employees in violation of the antitrust laws, Plaintiff does not show that limitations-tolling conduct can be determined on a classwide basis. Indeed, they rely upon the same non-disclosure of the alleged defect to support their tolling argument. This is impermissible. *See Lincoln Nat'l Life Ins. Co. v. McClendon*, 230 F. Supp. 3d 1180, 1189 (C.D. Cal. 2017) (fraudulent concealment tolling requires affirmative deceptive conduct; mere nondisclosure will not suffice); *IV Solutions, Inc. v. Connecticut Gen. Life Ins. Co.*, 2015 WL 12516742 at *4 (C.D. Cal. April 9, 2015) (statute of limitations cannot be tolled by the same substantive conduct upon which claim is based). Moreover, limitation tolling stops when the claimant is on inquiry notice of the alleged unlawful conduct. *Id.* Obviously, what any particular class member knew and when he or she knew it will be a vital – and individualized – inquiry governing the limitations defense.

## D.   Lack of Common Damages Undermines Predominance.

### 1.   Requirement of a Viable Damages Model.

Rule 23(b)(3) requires the court to evaluate *all* individual issues in comparison with any common issues. If "questions of damages calculations will inevitably overwhelm questions common

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NISSAN NORTH AMERICA, INC.'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION          - 18 -          CASE NO.: 5:16-CV-05591-LHK (SVKx)

1   to the class[,]" certification is inappropriate.  *Comcast*, 133 S. Ct. at 1433.

2          While differences in the amount of damages among class members cannot, standing alone,

3   defeat class certification, a class cannot be certified without some assurance that damages can be fairly

4   and efficiently calculated once common liability issues are determined.  *Leyva v. Medline Indus. Inc.*,

5   716 F.3d 510, 514 (9th Cir. 2013).  Moreover, where there is also a question of the *fact* of damages

6   that varies among the class members, certification is not warranted.  *Lucas*, 212 F. Supp. 3d at 970;

7   *Gonzales v. Comcast Corp.*, 2012 WL 10621 (E.D. Cal. Jan. 3, 2012).  The essential requirement for

8   any damage theory is one of "fit"—the damages methodology must match the theory of liability.  *See*

9   *Comcast Corp.,* 133 S. Ct. at 1432-33 (2013).

10                 **2.      The Average Cost of Repair Formula Does Not Match Plaintiff's Liability
                             Theory.**

11          Nguyen's simplistic damages formula is little more than arithmetic.  He proposes to compensate

12  all class members by giving them the average cost to replace the CSC with a replacement CSC.  *See*

13  Prowse Report ¶¶ 14-15.  This sum is supposedly appropriate regardless of whether the class member

14  bought or leased the vehicle, whether vehicle actually required repair, the amount of any such repairs,

15  or the age of the vehicle.  There are a number of serious methodological objections to the approach

16  used by Plaintiff's proffered expert, accountant Stephen Boyles.  *See* Prowse Report ¶¶ 17-18, 21-23,

17  26-32.  However, the truly damning error in Plaintiff's remedial theory is that it does not match the

18  recovery permitted under the substantive causes of action.

19          Section 2714 of the California Uniform Commercial Code provides that the measure of

20  damages for breach of the implied warranty of merchantability is "the difference at the time and place

21  of acceptance between the value of the goods accepted and the value they would have had if they had

22  been as warranted, unless special circumstances show proximate damages of a different amount." *See*

23  *Cardinal Health 301, Inc. v. Tyco Elec. Corp.*, 169 Cal. App. 4th 116, 149-50 (2008).  Nguyen does

24  not explain how average cost to repair relates to this differential in product value.  *See Ambassador*

25  *Hotel Co. Ltd. v. Wei-Chuan Investment*, 189 F.3d 1017, 1032 (9th Cir. 1999) ("The benefit of the

26  bargain [measure] awards the difference between the actual value of the property received and the

27  value it would have had in the state represented.") (quoting *Kenly v. Ukegawe*, 16 Cal. App. 4th 49,

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NISSAN NORTH AMERICA, INC.'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION          - 19 -          CASE NO.: 5:16-cv-05591-LHK (SVKx)

1  53, n.2 (1993)).

2      Moreover, for the implied warranty claim there are no recoverable damages where the defect

3  has not manifested.  Because most class members will not experience clutch pedal issues during the

4  useful life of the vehicles, they have received the full benefit of the bargain and compensation by

5  average cost-of-repair would constitute a windfall.  Compensating these class members by that method

6  would upend the law governing implied warranties, for it is fundamental that "unless a product actually

7  manifests an alleged defect, the plaintiff has not suffered damages with respect to an implied warranty

8  claim." *Cardinal 301*, 169 Cal. App. 4th at 152 (*citing Jarman v. United Indus. Corp.*, 98 F. Supp. 2d

9  757, 768 (S.D. Miss. 2000)).

10     The CLRA allows recovery of damages and restitution, as a result of the allegedly deceptive

11 transaction.  While Plaintiff proposes that average cost of repair is a proper measure of restitution under

12 the CLRA, that is incorrect as a matter of law.  Restitution is only available where the sum at issue can

13 "clearly be traced to particular funds or property in the defendant's possession."  *Colgan v. Leatherman*

14 *Tool Grp., Inc.*, 135 Cal. App. 4th 663, 699 (2006).  The class members did not pay the Nissan

15 Defendants for their repairs.  Accordingly, an order directing them to pay an amount representing the

16 cost of repair does not amount to a *return* of money or property and is not, by definition, restitution.

17 *See, e.g., Sanbrook v. Office Depot, Inc.*, 2008 WL 1994884, at *5 (N.D. Cal. May 5, 2008) ("The

18 money [plaintiff] paid for third party repair is not money that [defendant] obtained through any alleged

19 unfair business practice.")

20     Perhaps more fundamentally, as the Ninth Circuit recently held, restitution is "the return of

21 what the plaintiff gave the defendant over the value of what the plaintiff received."  *Pulaski &*

22 *Middleton, LLC v. Google, Inc.*, 803 F.3d 979, 988 (9th Cir. 2015) (quoting *Cortez v. Purolator Air*

23 *Filtration Prods.*, 23 Cal. 4th 163, 174 (2000)).  For alleged fraudulent omissions, the restitution award

24 requires determining the economic impact of the missing information:  "Restitution is based on what a

25 purchaser would have paid at the time of purchase had the purchaser received all the information."  *Id.*

26 at 989.

27     Standing alone, average cost of repair simply does not answer the critical "would have paid"

28 question.  While it is possible that a consumer would expected factor cost of repair into his economic

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NISSAN NORTH AMERICA, INC.'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION          - 20 -          CASE NO.: 5:16-cv-05591-LHK (SVKx)

1    calculations, no evidence suggests that it would form the sole, or even the predominant, factor.

2    Certainly, Boyles does not offer any such opinion, and any such opinion is contrary to basic economic

3    analysis.  *See* Prowse Report ¶ 23.

4         Plaintiff alleges that the average-cost–to-repair method provides class members with the benefit

5    of their bargain—a vehicle without defects.  *See* Plf.'s Mot. for Class Cert. at 11-12.  But Plaintiff

6    never made such a bargain, and NNA never promised the class members their vehicle would be free of

7    defects.  On the contrary, it issued an express warranty in which it undertook to repair or replace parts

8    defective in materials and workmanship during a period limited by time and mileage.  The purpose of

9    such a warranty is to "mark the point in time during the useful life of a product when the risk of paying

10   for repairs shifts from the manufacturer to the consumer."  *Oestreicher v. Alienware Corp.*, 544 F.

11   Supp. 2d 964, 972 (N.D. Cal. 2008).  Plaintiff does not even attempt to show that consumers expect

12   that vehicles will be defect-free.  They would not be entitled to make such an assumption since it is

13   elementary that a product seller does not affirm that the product will meet the buyer's economic

14   expectations unless the seller affirmatively represents that it will.  *Seely v. White Motor Co.*, 63 Cal.2d

15   9, 18 (1965).

16        Even if the warranty did not exist, the bargain of the parties would have incorporated the

17   expected useful life of the vehicle, for it is axiomatic that "[c]ars and tires have a limited useful life.

18   At the end of their lives they and whatever defect that may have contained, wind up on a scrap heap.

19   *If the defect has not manifested itself in that time span, the buyer has received what he bargained for.*"

20   *Hicks v. Kaufman and Broad Home Corp.*, 89 Cal. App. 4th 908, 923 (2001) (emphasis added).  The

21   bargain, therefore, can only be evaluated after the product has proved itself.  Granting average-cost-of-

22   repair damages to all class members does not restore a bargain, it invents one.

23        Average cost of repair is also a legally improper measure of damages because it is not linked

24   to the defendants' allegedly unlawful conduct.  In a case predicated on a manufacturer's failure to

25   inform its customers of a product's likelihood of failing outside the warranty period, the risk posed by

26   such asserted defect cannot be "merely" the cost of the product's repair.  *Wilson v. Hewlett-Packard*

27   *Co.*, 668 F.3d at 1141.  The plaintiff must show that "the design defect caused an unreasonable safety

28   hazard."  *Id.* at 1143.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NISSAN NORTH AMERICA, INC.'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION            - 21 -            CASE NO.: 5:16-cv-05591-LHK (SVKx)

1      Plaintiff's' expert Boyles did not attempt to calculate the increment of economic loss caused

2  by the alleged failure to disclose a supposed safety risk.  He merely calculated the average cost of repair

3  and assumed that this amount would restore to the class members the benefit of their bargain.  *See*

4  Boyles Report, Dkt. No. 62-13.  But compensating by average cost of repair is primarily a means of

5  insulating the class members from the expense of repairs not covered by the warranty—an

6  impermissible measure of recovery under *Wilson*.

7          **3.**      **The Average Cost of Repair Formula is Contrary to Economic Theory.**

8      The average cost of repair formula assumes that all consumers would discount the amount they

9  would be willing to pay for the vehicle by the average repair cost.  No evidence supports this

10  assumption, and not even Boyles defends it.  In reality, consumers differ greatly in their expectations

11  concerning repair expenses.  Even if the alleged issues had been disclosed, some consumers would not

12  have discounted the vehicles at all and would not have suffered damages.  The extent to which

13  consumers affected by the information would discount their purchase price depends upon numerous

14  individual factors, including the degree of knowledge possessed by the consumer, the sales channel by

15  which the vehicle was acquired, and negotiating skill.  *See* Prowse Report ¶ 23.  Some prospective

16  purchasers likely had information about the clutch issues, and would have incorporated such

17  information into the price they paid for the vehicles.  Some purchasers who lacked such information

18  had expectations of the vehicle's propensity to require repair such that the vehicle's actual risk of repair

19  would have met their expectations.  These purchasers would also have suffered no loss of bargain.

20  *Id*. ¶ 24.

21      Moreover, even those consumers who would take repair costs into account would also factor

22  in the *probability* of incurring such costs.  The average-cost-of-repair method ignores this, assuming

23  that all consumers will need a clutch system repair during the time the consumer owns the vehicle and

24  that every consumer would discount the cost of the vehicle at the time of purchase by the average cost

25  of a repair occurring years in the future.  Even the damages methodology considered and ultimately

26  rejected in *Philips* recognized that the probability of repair had to be considered.  *See Philips*, 2016

27  WL 7428810 at *20.

28      From the perspective of an economist, "average cost of repair does <u>not</u> capture the price

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NISSAN NORTH AMERICA, INC.'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION     - 22 -     CASE NO.: 5:16-cv-05591-LHK (SVKx)

difference that the potential class member would have paid had they been aware of the alleged defect or the price premiums that Nissan was able to receive for not disclosing the alleged defect[.]"  Prowse Report ¶ 17 (emphasis added).  The amount of the price discount as to any particular consumer would require at least a consideration of the probability that the defect would occur, the defect rate for technologically similar systems, and the extent to which the defect was viewed as safety, performance, or quality-of-life issue.  Boyles does not take into account any of these factors and, therefore, his calculations provide no basis for determining what the class members would have paid upon full disclosure.

There are other obvious problems in the proposed one-size-fits-all remedy.  It treats lessees exactly like owners, even though lessees have a different expectations concerning product longevity and are not concerned with trade-in value.  *Id.* ¶ 30.  Moreover, there is no rationale for applying a point-of-sale price premium model to consumers such as Nguyen, who asserts that he would not have bought the vehicle at all if he had known of the alleged defect.

## VII.   <u>A CLASS ACTION IS NOT A SUPERIOR FORM OF ADJUDICATION.</u>

Rule 23(b)(3) requires finding *both* that common issues predominate *and* that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The rule set forth four non-exclusive considerations:  (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3).  Courts must consider all four factors.  *Zinser*, 253 F.3d at 1190.

### A.   <u>Individual Determinations Render Class Litigation Inefficient.</u>

A class action must be superior to other "available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Whether the proposed class action is manageable is a key determinant.  The court must consider "the whole range of practical problems that may render the class action format inappropriate for a particular suit."  *Newton v. Merrill Lynch, Pierce Fenner & Smith, Inc.*, 259 F.3d 154, 191 (3d Cir. 2001) (citing *Eisen v. Carlisle & Jac.*, 417 U.S. 156, 164 (1974)).

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NISSAN NORTH AMERICA, INC.'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION                - 23 -               CASE NO.: 5:16-cv-05591-LHK (SVKx)

1    Here the practical problems of trying this suit as a class action are both readily apparent and

2    overwhelming.  None of these determinations may be made through common proof.  Yet all of these

3    and more must be made before the claims of any class member may be fully determined.  Resolution

4    of any "common" issues does not advance the ball toward a fair resolution.

5    Moreover, any attempt to litigate the claims must preserve NNA's rights to assert individual

6    defenses to the claims asserted.  *See Dukes*, 131 S. Ct. at 2561 (rejecting trial plan that denied

7    defendant's right to present individual defenses as a violation of the Rules Enabling Act); *Newton*, 259

8    F.3d at 191-92 (ability of defendant to raise individual issues was factor bearing upon manageability).

9    Strikingly, Plaintiff's motion contains no trial plan for addressing these individual questions

10   and does not even hint at how any common question finding in their proposed class action could

11   proceed to a valid judgment.  Where there are significant issues that must be determined on an

12   individual basis, class litigation does not provide a superior form of adjudication because the goal of

13   reducing the total volume of litigation can no longer be attained.

14        **B.    Individual Actions Represent a Viable Alternative.**

15   Plaintiff relies upon the assertion that the damages recoverable for each plaintiff are too small

16   to justify individual litigation and thus a class action forms the only practical means of adjudicating the

17   claims.  Of course, this factor "by itself is insufficient to overcome the hurdles of predominance and

18   superiority and efficient and fair management of a trial, which Rule 23(b) requires."  *In re LifeUSA*

19   *Holding Inc.*, 242 F.3d 136, 148 n. 13 (3d Cir. 2001).  As demonstrated above, class litigation involves

20   serious manageability issues.

21   Furthermore, the Court must consider the extent to which fee shifting and other provisions

22   make individual litigation viable to enforce the rights of any class members that may have legitimate

23   claims.  The CLRA allows a prevailing claimant to recover attorneys' fees.  *See* Cal. Civ. Code §

24   1780(a).  This provision is specifically designed to encourage litigants with relatively small damages

25   to sue under the Act.  The Court should not presume that a class action is the only means by which the

26   rights of the class members may be vindicated.  Indeed, individual automobile warranty claims are

27   filed and prosecuted every day throughout California.

28   The Song-Beverly Act also "give[s] recourse to the buyer of a new automobile that suffers from

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NISSAN NORTH AMERICA, INC.'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION                    - 24 -              CASE NO.: 5:16-cv-05591-LHK (SVKx)

1  the same defect repeatedly, or is out of service for cumulative repairs for an extended period." *Murillo*

2  *v. Fleetwood Enters. Inc.*, 17 Cal.4th 985, 989-90 (1998).  If the manufacturer is unable to effect a

3  satisfactory repair after a reasonable number of attempts, the manufacturer must replace the vehicle or

4  offer monetary restitution of the purchase price.  Civ. Code § 1793.2(d)(2)(B).  A party prevailing

5  under the statute is entitled to recover attorneys' fees.  Civ. Code § 1794(d).  In sum, there remains

6  viable alternatives short of certification that may be preferable for members of the proposed class.

7  **VIII.   THE COURT SHOULD NOT CERTIFY AN ISSUES CLASS.**

8         Perhaps recognizing the weakness of his damages theory, Plaintiff argues for an issues class

9  under Rule 23(c)(4).  But Plaintiff neglects any analysis regarding how such a limited issues class

10  would move the case towards resolution.  A determination of a classwide defect or that NNA had the

11  requisite knowledge would accomplish little, if an individual determination of the merchantability of

12  each vehicle had to be litigated, or if a determination of reliance had to be made on an individual basis.

13  Plaintiff provides no trial plan or other "roadmap" showing how a partial certification would be useful.

14  Even if damages were the only outstanding issue, the need to probe each purchaser's expectations and

15  pre-purchase knowledge to determine the fact and extent of damages would eliminate any efficiency

16  value to be gained from class certification.

17        The Ninth Circuit has cautioned that "certification of an issues class . . . is appropriate only if

18  it materially advances the litigation as a whole."  *Rahman v. Mott's LLP*, 693 Fed. Appx. 578 (9th Cir.

19  2017).  It is the burden of the proponent of the class to establish how a limited issue class would

20  materially aid in resolving the litigation.  *Id.*  Nguyen has not done so here.

21  **IX.   CONCLUSION.**

22        Plaintiff's class certification motion should be denied.

23  Dated: February 5, 2018                    DRINKER BIDDLE & REATH LLP

24

25                                              By:   */s/ Michael J. Stortz*
                                                     Michael J. Stortz
26                                                   Marshall L. Baker
                                                     E. Paul Cauley, Jr. (*pro hac vice*)
27
                                                Attorneys for Defendant
28                                              NISSAN NORTH AMERICA, INC.

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NISSAN NORTH AMERICA, INC.'S OPPOSITION TO
MOTION FOR CLASS CERTIFICATION                    - 25 -                CASE NO.: 5:16-cv-05591-LHK (SVKx)