Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Karen L. Wallace (SBN 272309)
Karen.Wallace@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HUU NGUYEN, individually, and on behalf of a class of similarly situated individuals,

Plaintiff,

v.

NISSAN NORTH AMERICA, INC., a California corporation,

Defendant.

Case No.: 5:16-cv-05591-LHK (NCx)

The Honorable Lucy H. Koh

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TESTIMONY AND REPORT OF PLAINTIFF'S EXPERT STEVEN B. BOYLES**

Date: July 5, 2018
Time: 1:30 p.m.
Ctrm: 8 – 4th Floor

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 1

A. Mr. Boyles' Qualifications ..... 1

B. Mr. Boyles' Assignment ..... 1

C. Mr. Boyles' Methodology ..... 2

III. ARGUMENT ..... 3

A. The Daubert Standard for Admissibility Focuses on Relevancy and Reliability, Not Factual Issues in Dispute ..... 3

B. NNA's Methodology Complaints Are Appropriate for Cross-Examination, Not a *Daubert* Motion ..... 4

C. The Benefit-Of-The-Bargain Approach Applies Class-Wide ..... 9

IV. CONCLUSION ..... 11

**TABLE OF AUTHORITIES**

**Cases**

*Abaxis, Inc. v. Cepheid*, No. 10-CV-02840-LHK, 2012 WL 2979019, at *3 (N.D. Cal. July 19, 2012) .......... 4

*Apple Inc. v. Superior Court*, No. D072287, 2018 WL 579858, at *9 (Cal. Ct. App. Jan. 29, 2018).......... 7

*ATACS Corps. v. Trans World Communications, Inc.,* 155 F3d 659 (1998).......... 6

*Bresler v. Wilmington Tr. Co*., 855 F.3d 178 (4th Cir.), *cert. denied*, 138 S. Ct. 470, 199 L. Ed. 2d 357 (2017) .......... 7

*Carucel Investments, L.P. v. Novatel Wireless, Inc*., No. 16-CV-118-H-KSC, 2017 WL 1215838, at *7 (S.D. Cal. Apr. 3, 2017) .......... 3

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) .......... 8

*Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579 (1993) .......... passim

*Dow Corning Corp. v. Weather Shield Mfg., Inc*., No. 09-10429, 2011 WL 2490962, at *3 (E.D. Mich. June 22, 2011) .......... 5

*Falco v. Nissan, North America, Inc*., 2016 WL 1327474 (C.D. Cal. Apr. 5, 2016) (petition denied, July 19, 2016).......... 2

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) .......... 4

*Gianitsis v. American Brands, Inc*., 685 F.Supp. 853 (1988).......... 8

*In Re MyFord Touch Consumer Litigation*, 2018 WL 887534, at *30 (N.D. Cal. Feb. 14, 2018).......... 2

*Jones v. ConAgra Foods, Inc*. 2014 WL 2702726, at *19 (N. D. Cal. June 13, 2014).......... 8

*Kearney v. Hyundai Motor Co.,* 2010 WL 9093204 *5 (C.D. Cal. June 4, 2010).......... 2

*Leyva v. Medline Indus., Inc*., 716 F.3d 510 (9th Cir. 2013).......... 12

*LSQ Funding Grp., LC v. EDS Field Servs.*,
879 F.Supp.2d 1320 (M.D. Fla. 2012) ........................................................................ 5

*Murray v. S. Route Mar. SA*,
870 F.3d 915 (9th Cir. 2017)........................................................................................ 3

*Philips v. Ford Motor Co.*,
No. 14-CV-02989, 2016 WL 7428810
(N.D. Cal. Dec. 22, 2016) ............................................................................... 6, 8, 9, 12

*Sargon Enterprises, Inc. v. Univ. of S. Cal.*,
55 Cal. 4th 747 (2012)................................................................................................. 8

*Stout v. Turney*,
22 Cal.3d 718 (1978)................................................................................................... 8

*Waymo LLC v. Uber Tech., Inc.*,
2017 WL 5148390 (N.D. Cal. Nov. 6, 2017)........................................................... 4, 5

## I. INTRODUCTION

Defendant Nissan North America, Inc. ("NNA") has moved to exclude the testimony of Plaintiff's economic expert, Steven B. Boyles, under the authority of *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579 (1993), and its progeny. Boyle's damages opinion is premised on the benefit of the bargain theory. NNA's disagreement with Mr. Boyles' conclusions or with the fact that Boyles did not calculate damages based on NNA's preferred "expected utility" theory are not the proper focus of a *Daubert* inquiry. *See Daubert,* 509 U.S. at 595. NNA's motion should be denied.

## II. BACKGROUND

### A. Mr. Boyles' Qualifications

Mr. Boyles is a Partner in the Forensic and Financial Consulting Services Group in the San Francisco office of Hemming Morse, LLP. Based in California, Hemming Morse handles complex and high-profile assignments that are local, regional, national and international in scope. Mr. Boyles is a Certified Public Accountant (CPA) and maintains a number of other professional designations, including certification in Financial Forensics (CFF) and Accredited in Business Valuation (ABV), both issued by the American Institute of Certified Public Accountants. Mr. Boyles' experience encompasses a range of litigation matters, including investigating and quantifying damages. There is no question here of Mr. Boyles' qualifications.

### B. Mr. Boyles' Assignment

Mr. Boyles was retained by Plaintiff in this case to provide a methodology that the Court could apply class-wide to quantify damages owed by NNA as a result of an alleged defect with the manual transmission in the Class Vehicles. NNA's insinuation that a similar assignment in a different matter has bearing on the admissibility of Mr. Boyles' opinions in this case is spurious at best, as evidenced by NNA's own assertion that the respective reports are markedly different, based on the facts specific to each. (Motion at 2:14-24.) In this case, Mr. Boyles determined that a benefit-of-the-bargain approach was more appropriate and consistent with Plaintiff's theory of liability based on the alleged injury occurring at the point-

of-sale. (Declaration of Steven B. Boyles in support of Plaintiff's Motion for Class Certification, Ex. 1 ("Boyles Report") ¶ 18).) *See also In Re MyFord Touch Consumer Litigation*, 2018 WL 887534, at *30 (N.D. Cal. Feb. 14, 2018) (opining that "Plaintiffs' burden is to offer a measure of the difference in value ''at the time and place of acceptance,'' U.C.C. § 2-714(2), which, by definition, does not require looking at subsequent use.").

**C. Mr. Boyles' Methodology**

In forming his opinions, Mr. Boyles relied in relevant part on NNA's own warranty databases and technical service bulletins. There is no question that Mr. Boyles' opinions are relevant to and probative of the disputed issues in this case. Using the record available, Mr. Boyles provides economic analysis and opinions regarding the measure of recovery for the injury Plaintiff alleges. He concluded that benefit-of-the-bargain is the appropriate measure of damages and can be applied on a class-wide basis. There is nothing methodologically exotic or novel about this; it is what accountants and damages experts do in every case regarding failures to disclose. NNA's concern that Mr. Boyles' analysis is too easy to understand, the implication being that it is therefore not "expert," is not grounds to exclude his opinions or testimony, and NNA can challenge Mr. Boyles' conclusions on cross examination.

Indeed, Judge Pregerson approved of this same methodology and approach in *Falco v. Nissan, North America, Inc*., 2016 WL 1327474 (C.D. Cal. Apr. 5, 2016) (petition denied, July 19, 2016). In *Falco*, the court endorsed a similar damages model that reimbursed class members for injury suffered at point of sale based on "benefit of bargain damages," and "average repair prices," noting that "by receiving restitution in the amount of average repairs, the class would be getting the benefit of their bargain because they would be put in the same position they would have been had the car not been sold with the defective timing chain system – it is the cost necessary to make the vehicles conform to make the value Plaintiffs thought they were getting in the price tendered." *Falco*, 2016 WL 1327474 at *12; *see also Kearney v. Hyundai Motor Co.,* 2010 WL 9093204 *5 (C.D. Cal. June 4, 2010) ("the receipt of a vehicle whose alleged defects reduced the car's value and deprived the consumer of the benefit of the bargain, even when the alleged defects did not later materialize -- i.e., the loss was suffered at

the moment of purchase"); *Daniel v. Ford Motor Co.,* 2016 WL 2899026, at *7 (E.D. Cal. May 18, 2016) ("a reasonable jury could conclude that a consumer would demand that the purchase price of a vehicle with a defect be reduced by the cost of remedying the defect").

## III.   ARGUMENT

### A.   The Daubert Standard for Admissibility Focuses on Relevancy and Reliability, Not Factual Issues in Dispute

NNA's summary of the *Daubert* standard is correct as far as it goes, but omits some important qualifications.

First, the Supreme Court decided *Daubert* in the context of toxic tort litigation, where the most pressing policy concern was arguably that juries would be misled by novel, untested theories. *See Daubert*, 509 U.S. at 595-97 (new standard will prevent "befuddled juries"); *Murray v. S. Route Mar. SA,* 870 F.3d 915, 923 (9th Cir. 2017) (*Daubert* guards against "junk science"). In contrast, Mr. Boyles' opinions in this case rest on a benefit-of-the-bargain theory, which is an accepted measure of damages. (*See, e.g*., BENEFIT-OF-THE-BARGAIN RULE, Black's Law Dictionary (10th ed. 2014).)

Second, to the extent that NNA's motion is based on objections to the factual foundation of Mr. Boyles' opinions, including NNA's argument that his data set – much of which was provided by NNA – is flawed, NNA's argument fails.  Nothing in *Daubert* or its progeny changed the fundamental rule that "the factual basis of an expert's opinion goes to its credibility, not admissibility." *Carucel Investments, L.P. v. Novatel Wireless, Inc*., No. 16-CV-118-H-KSC, 2017 WL 1215838, at *7 (S.D. Cal. Apr. 3, 2017) (citations omitted). Indeed, rather than requiring that the expert base his conclusions on his own independent research, the expert need only show that the proffered testimony is based on other objective, verifiable evidence that the testimony is based on 'scientifically valid principles.'" *Daubert v. Merrell Dow Pharm., Inc*., 43 F.3d 1311, 1317–18 (9th Cir. 1995); *see also Doyle v. Chrysler Grp. LLC*, No. SACV 13-00620 JVS, 2015 WL 353993, at *6 (C.D. Cal. Jan. 21, 2015) ("Expert testimony may be based upon an analysis of testing performed by others.")

In this case, Mr. Boyles utilized the opinions and conclusions of Plaintiff's technical

expert, Michael Stapleford; and both Mr. Boyles and Mr. Stapleford relied heavily on evidence produced by NNA. To discredit Mr. Boyles, NNA would necessarily have to assert that its own data is not valid under this standard.

**B. NNA's Methodology Complaints Are Appropriate for Cross-Examination, Not a *Daubert* Motion**

*Daubert* is about the admissibility of an expert's testimony, not the weight that testimony should carry with the trier of fact. Indeed, the expert may simply be made aware of the Rule 702(b) "facts or data" upon which he bases his expert opinion, as long as the conclusions are reasonable extrapolations. *See, e.g. Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Trained experts commonly extrapolate from existing data."); *Carucel Investments,* 2017 WL 1215838 at *3 ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.") (citation omitted). Furthermore, "[t]he test for reliability of expert testimony is flexible and depends on the particular circumstances of the case." *Carucel Investments,* 2017 WL 1215838 at *3 (citation omitted).

NNA argues that the applicability of the benefit-of-the-bargain approach adopted by Mr. Boyles is a legal question outside Mr. Boyles' purview. (Motion at 7:4-8.) NNA relies for this proposition on *Abaxis, Inc. v. Cepheid*, No. 10-CV-02840-LHK, 2012 WL 2979019, at *3 (N.D. Cal. July 19, 2012), yet fails to show how the measure of damages that Mr. Boyles' determined was appropriate is a "purely legal matter" rendering it inadmissible. *Id*. If this interpretation were correct, the rebuttal opinions of NNA's economic expert would be similarly inadmissible, as he advocates for the application of expected utility as the measure of damages in this case. (Dkt. No. 76-8, Declaration of Stephen D. Prowse in support of Nissan North America, Inc.'s Opposition to Plaintiff's Motion for Class Certification, Ex. A ¶¶ 18, 23.)

NNA objects further to the damages model Mr. Boyles' proposes, arguing that the "['formula'] is no more than a mathematical equation to calculate any repair (i.e., hours x labor rate + parts cost), and can be ascertained by reviewing any repair invoice," such that no expertise is required. (Motion at 7:12-16.) In support of its position, NNA relies on *Waymo*

*LLC v. Uber Tech., Inc*., 2017 WL 5148390 (N.D. Cal. Nov. 6, 2017), for the proposition that "grade-school arithmetic" fails to meet the *Daubert* standard of admissibility. Yet, as NNA notes in its parenthetical, the expert testimony in that case was excluded in large part because it "simply adopted the opinions of others." The court in *Waymo* found the expert's report inadmissible not because the calculations were too simplistic but because the expert's conclusions regarding a complex theory of incremental future profits were based on "cherry-picking" the data he liked and "toss[ing] aside the part he disliked." *Id.* at *4. As the court noted, "[t]he rub is that the evidence [the expert] relied on can speak for itself, and his only contribution would be to pile on a misleading façade of expertise." *Id*. at *5. The court found that the proffered analysis was "nothing more than lawyer argument dressed up as expert opinion" and excluded it. *Id*. In contrast, here Mr. Boyles assessed Plaintiff's theory of liability in order to determine the theory of damages appropriate to measure class-wide recovery based on a clear evidentiary record, much of which came from NNA. As NNA's own arguments demonstrate, neither the underlying economic principles nor the evidence regarding damages is easily interpreted. The evidence does not speak for itself, and Mr. Boyles derived the applicable methodology independently, based on his demonstrated expertise.

NNA's reliance on *LSQ Funding Grp., LC v. EDS Field Servs*., 879 F.Supp.2d 1320, 1336 (M.D. Fla. 2012), is similarly misplaced because the court's problem was the converse of that in *Waymo*, in that the expert's calculations were based on nothing more than three undisputed figures, such that the average lay person would be able to perform the calculations regarding damages without assistance or explanation. *Id*. Here, as discussed above, NNA disputes its *own* figures, and any damages calculation using them clearly requires explanation.

Mr. Boyles explained clearly that the facts he assumed are supported by the records that were available to him at the time he made his conclusions. *See e.g., Dow Corning Corp. v. Weather Shield Mfg., Inc*., No. 09-10429, 2011 WL 2490962, at *3 (E.D. Mich. June 22, 2011) ("An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record.") As Mr. Boyles noted, the benefit-of-the-bargain approach he proffers is "an appropriate remedy of damage susceptible of measurement across the entire

class." (Boyles Report ¶ 18).) The formula he proposes "will quantify the value that the Class Members have overpaid for the Class Vehicles as a result of the Clutch Assembly Defect." (*Id.* ¶ 24.) He offers a sample calculation to support this conclusion based on a clear evidentiary record regarding costs associated with the injury Plaintiff alleges. (*Id.* ¶ 25.)

NNA seriously mischaracterizes Mr. Boyles' methodology by making the conclusory and unsupported assertion that Mr. Boyles "consulted Black's Law Dictionary to determine that the 'benefit of the bargain model' would be an 'appropriate remedy of damages susceptible to measurement of the entire class.'" (Motion at 3:17-20.) NNA also states erroneously that "damages under [Mr. Boyles'] formula are meant to identify the amount necessary to put the aftermarket CSC part specified by Stapleford into every class vehicle." (Motion at 4:18-21.) Finally, NNA insists that this Court's opinion in *Philips v. Ford Motor Co.*, No. 14-CV-02989, 2016 WL 7428810 (N.D. Cal. Dec. 22, 2016) limits Plaintiff's damages model to the theory of expected utility, which is the theory on which the damages expert in that case relied. (Motion at 3:6-9.) *Cf. ATACS Corps. v. Trans World Communications, Inc.,* 155 F3d 659, 669 (1998) (opining that "[t]he preferred basis of contract damages seeks to protect an injured party's 'expectation interest' – that is, the interest in having the benefit of the bargain – and accordingly awards damages designed to place the aggrieved in as good a position as would have occurred had the contract been performed.") (citation omitted).

NNA's arguments boil down to its misunderstanding of the economic principle on which Mr. Boyles based his analysis, and, consequently, mistake weight for admissibility. In this case, Mr. Boyles is an active CPA engaged professionally in the business of forensic accounting. His job was "to provide a methodology, common to the Class, that the Court could apply to individual Class Members in quantifying damages owed by [NNA] as a result of an alleged defect with the manual transmission in the [Class Vehicles]." (Boyles Report ¶ 7.) Based on Plaintiff's theory of liability and the data he was provided, including pricing and costs determined by NNA, Mr. Boyles concluded that the correct measure of recovery was benefit-of-the-bargain: "[a]s the Class Vehicles were not ultimately defect free, the value the

consumer obtained from purchasing (or leasing) the vehicle was not what they had bargained for." (*Id.* ¶ 14).) Mr. Boyles explained, therefore, that "a reasonably simple and straight forward approach to make Class Members whole is to compensate them for the cost of repairing the Clutch Assembly Defect." (*Id.* ¶ 15.) This cost, according to the benefit-of-the-bargain approach, assigns to the defect that existed at point of sale "the value that the Class Member bargained for but did not receive." (*Id.* ¶ 19.)

NNA states emphatically that Mr. Boyles' conclusions are "not the proper subject of opinion testimony," (Motion at 7:2-4), but fails to explain how they are either unreliable or irrelevant under *Daubert*. For example, NNA avers that the mathematical equation and sample calculation Mr. Boyles provides are not "the proper subject of expert testimony" because no expertise is required to perform the arithmetic. (Motion, *supra*, at 7:12-16.) However, Mr. Boyles stated explicitly that the formula he proposes "provides a measure of the difference in value of a Class Vehicles [sic] *without* the defect as compared to a Class Vehicles *with* the defect." (Boyles Report ¶ 28.) Mr. Boyles explained thoroughly this economic principle and its application to the facts of Plaintiff's case, concluding that "Plaintiff has brought their claim to obtain restitution of the value that they bargained for but did not receive as a result of the Clutch Assembly Defect (i.e., that value of the vehicle they received, with defect, versus the value of the vehicle they bargained for, without defect)." (*Id.* ¶ 14.) The rationale underlying the proposed formula clearly reflects Mr. Boyles' expertise in forensic accounting, which is most certainly a "proper subject of opinion testimony" under *Daubert*. *See, e.g., Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 200 (4th Cir.), *cert. denied*, 138 S. Ct. 470, 199 L. Ed. 2d 357 (2017) ("Reasoned assumptions and estimates about factors such as [costs] are permitted in a breach of contract case involving expectation damages, and may be attacked by a defendant through cross-examination or through the presentation of contrary evidence.") NNA's preference for a different theory does not render Mr. Boyles' opinions inadmissible. *See, e.g., Apple Inc. v. Superior Court*, No. D072287, 2018 WL 579858, at *9 (Cal. Ct. App. Jan. 29, 2018) (The standard for expert opinion evidence "is broad enough to permit testimony that is the product of competing principles or methods in the same field of expertise.") (internal

quotations and citation omitted); *Sargon Enterprises, Inc. v. Univ. of S. Cal*., 55 Cal. 4th 747, 772 (2012) ("The trial court's gatekeeping role does not involve choosing between competing expert opinions.")

NNA's own argument demonstrates the differences between the approach it advocates based on expected utility and the approach taken by Mr. Boyles based on benefit-of-the-bargain. Plaintiff's theory of damages posits the difference in price between a vehicle with a defective clutch system and a vehicle with a defect-free clutch system. Nissan's own data has assigned a cost to that difference, which Plaintiff's expert has isolated as variables to provide a model that identifies damages stemming from Nissan's wrongdoing and is susceptible of measurement across the entire class. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433-34 (2013). This measure is a form of restitution based in part on class-wide reliance on Nissan's omissions. *See, e.g., Jones v. ConAgra Foods, Inc*. 2014 WL 2702726, at *19 (N. D. Cal. June 13, 2014) (finding that the difference "between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution.") (citations omitted); *Stout v. Turney*, 22 Cal.3d 718, 725 (1978) (explaining that the benefit-of-the-bargain measure "awards the difference in value between what the plaintiff actually received and what he was fraudulently led to believe he would receive….[and] contemplates an award even when the property received has a value equal to what was given for it").

By contrast, "utility theory," or "expected utility theory," is a theory of consumer behavior that contemplates subjective risk aversion and other market factors. (Motion at 8:2-6.) Based in tort law, utility theory seeks to remedy strict liability measured by the extent to which the product at issue is unreasonably dangerous to the consumer whose use causes harm. *See, e.g., Gianitsis v. American Brands, Inc*., 685 F.Supp. 853, 856 (1988) ("Once a claimant has alleged a defect giving rise to a product liability action, it must further be established that the product is unreasonably dangerous"). While it may be used to measure damages for claims based in contract law, the utility theory measures consumers' subjective "expected value," not the objective value Mr. Boyles assigned to the difference between the defect-free clutch system Class Members expected and the defective clutch system they received. *See, e.g., Philips*,

2016 WL 7428810 at *20 ("[Defendant] agrees that calculating damages based on expected utility and disutility because of safety concerns and risk aversion is economically sound.").

As illustrated above, NNA relies heavily on *Philips*, which is inapposite because Plaintiff here is relying on a different damages theory. In *Philips*, the plaintiffs' proposed damages model "offers the total price of a new EPAS system as the only measure of damages," which "assumes that 'the average reasonable consumer would ascribe $0 value to the defective [EPAS] system'" and rests on the perceived "disutility" of the subject component and concomitant "risk aversion." *Id.* at *20. In the instant matter, Plaintiff's theory of harm is not that NNA "forced class members to accept a risk they did not bargain for," *Id.*, but rather that Class Members, including Plaintiff, uniformly overpaid for their Class Vehicles by the amount it would cost to cure the alleged defect. (Boyles Report ¶ 19.) Accordingly, where utility theory based on risk aversion requires an analysis of use after purchase to show that the product is unreasonably dangerous, damages based on the benefit-of-the bargain approach proposed by Mr. Boyles are limited to value at point-of-sale. (*Id.* ¶ 18.)

NNA also insists that Mr. Boyles should have contemplated actual out-of-pocket expenses but fails to acknowledge that this measure is inconsistent with Plaintiff's theory that injury occurred at point-of-sale in the amount of overpayment proposed by Mr. Boyles, which was calculated based on the costs provided by NNA to approximate a defect-free vehicle. (Motion at 9:2-8.) NNA again fails to comprehend the economic principle on which Mr. Boyles' formula is based. A benefit-of-the-bargain approach seeks to "make [Class Members] whole" in the amount of "a payment measured by the cost necessary to fully cure the Clutch Assembly Defect." (Boyles Report ¶ 19.) Mr. Boyles measured that cost at the time of sale based on what *NNA* would pay to cure the design defect.

**C. The Benefit-Of-The-Bargain Approach Applies Class-Wide**

Finally, much of NNA's argument is based on variations it has identified regarding individual transactions costs, including the difference between purchase and lease. For example, NNA asserts that "Boyles has not determined the price at which any of these vehicles were purchased or leased, and has done no investigation as to the market value for any of these

vehicles at any point in time." (Motion at 3:14-16.) As Mr. Boyles explains, Plaintiff's theory assumes that the defect is the same or substantially similar in all the Class Vehicles. (Boyles Report ¶ 13.) Plaintiff's theory of damages assumes, therefore, that every Class Member overpaid for the same defect, the value of which is assigned based on NNA's costs to repair (and thus approximate a defect-free vehicle). (Boyles Report ¶ 15.) Because the value assigned to overpayment at point-of-sale does not change, individual transaction negotiations are irrelevant because - irrespective of the price actually negotiated - every Class Member overpaid by the exact same amount. NNA's contention that vehicles purchased or leased in earlier years require individualized inquiry fails for the same reasons; the cost to cure the defect now is the same for all Class Vehicles and provides a measure of recovery applicable to the Class as a whole. (*Id.* ¶ 7.)

Mr. Boyles stated expressly that the formula he proposes to measure the uniform recovery for the Class is based on a limited set of repairs required to cure the defect Plaintiff alleges. (*Id.* ¶¶ 22-23.) The sample calculation he provided and to which NNA objects offers an amount that Mr. Boyles considers reasonable in relation to the actual costs Plaintiff incurred to repair his vehicle. (*Id.* ¶ 25.) And contrary to NNA's assertion that Mr. Boyles was not "provided data as to the aftermarket part Mr. Stapleford proposes," (Motion at 10:22-23), the damages model Mr. Boyles proposes relies on data regarding the comparable part NNA's supplier makes for competitor Hyundai at considerably less cost than the aftermarket part currently available.[1] (Boyles Report ¶ 27, fn. 11.)

Finally, NNA contends that Mr. Boyles "believes, erroneously, that [those purchasers who were aware of a potential clutch issue on or before the time of purchasing or leasing the vehicle] are excluded from Plaintiff's proposed class definition." (Motion at 5:27-6:1.) As Mr. Boyles explained, his task was to determine a theory of damages that was consistent with Plaintiff's theory of liability, which rests on NNA's failing to disclose information about the

---

[1] The aftermarket part referenced by Mr. Stapleford and sold by ZSpeed is currently available for $325.00. *See* http://www.zspeedperformance.com/ZSpeed-Performance-HD-Concentric-Clutch-Slave-Cylinder-CSC-zsp2006.htm.

allegedly defective clutch system in the Class Vehicles; a purchaser made aware of the defect by NNA would necessarily be excluded from that definition. Consistent with NNA's own argument, in fact, the parameters of the proposed class definition are arguably a "purely legal matter" outside the purview of Mr. Boyles' expertise.

## IV. CONCLUSION

The crux of NNA's challenge to Mr. Boyles' damages model is that NNA seeks to graft an expected utility analysis on to a benefit of the bargain theory and/or to replace Plaintiff's benefit of the bargain theory entirely with NNA's own preferred theory based on expected utility. NNA unambiguously states that "Boyles has not attempted to measure class members' expected utility," and NNA attacks him because "he did not attempt to assess the expected utility to class members associated with the risks of the alleged defect" and because "he did not attempt to measure, through customer survey data or empirical studies, how customers value the clutch assembly with and without the allegedly defective CSC." Motion at 1, 3, 8.

NNA expressly conflates a theory of expected utility with the benefit of the bargain approach adopted by Plaintiff. Based on expected utility theory, NNA's perceives the "bargain" to be the bargain or purchase price that each individual Class Member would have negotiated with NNA had he/she known about the defect. Under Plaintiff's articulation of the benefit of the bargain, Plaintiff bargained for a vehicle free of a specific undisclosed design defect. The benefit of that bargain can be determined based on the average the cost to cure the defect as determined by NNA's own data.

Predictably, NNA seeks to preclude Boyles' opinion and advocates for an expected utility theory because NNA's preferred model raises individual issues. Contrary to Plaintiff's benefit of the bargain approach, which focuses on the cost to *NNA* to repair, NNA's expected utility model focuses entirely on the *consumer's* purchasing expectations and what consumers would be willing to pay for a product based on their perceptions of how likely the product is to be defective. Plaintiff's benefit of the bargain theory focuses on an objective valuation based on NNA's own costs to repair, regardless of a consumer's individual preferences.

In short, all of NNA's criticisms, including NNA's contention that Mr. Boyles' analysis

is not a correct application of the benefit of the bargain theory, flow from NNA's assumption that Plaintiff's should have done an expected utility analysis. However, Plaintiff's measure of damages fits *Plaintiff's* theory of liability that Plaintiff and the Class were injured at the time of sale and that the amount of that injury can be valued based on NNA's cost to repair the defect.

Bottom line, the parties disagree about the proper approach to calculating damages. While this Court in *Philips* acknowledged that "expected utility" can be a viable damages theory when properly supported, expected utility is not the only acceptable damages theory (as further confirmed by the *Falco* court). At class certification, this Court does not need to determine which party's damages model is right, only that Plaintiff propose a "valid method for calculating class wide damages at the class certification stage" (*Leyva v. Medline Indus., Inc*., 716 F.3d 510, 514 (9th Cir. 2013) and that Plaintiff's theory matches his theory of liability and can be established by common proof, which it does. Plaintiff's benefit of the bargain model satisfies that standard and provides a model that can measure damages across the entire class.

NNA offers a confusing blend of misleading and inaccurate assertions and contentions in support of its motion to exclude Mr. Boyles' report based on its fundamental misunderstanding of Plaintiff's theory of liability and, consequently, Mr. Boyles' damages analysis. Mr. Boyles' report is both reliable and relevant under *Daubert*, and NNA's motion should be denied.

Dated: February 28, 2018

Respectfully submitted,

Capstone Law APC

By: */ S / Jordan L. Lurie*

Jordan L. Lurie
Tarek H. Zohdy
Cody R. Padgett
Karen L. Wallace

*Attorneys for Plaintiff*