1 | Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Karen L. Wallace (SBN 272309)
Karen.Wallace@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUU NGUYEN, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC., a California corporation,<br><br>Defendant. | Case No.: 5:16-cv-05591-LHK (NCx)<br><br>Hon. Lucy H. Koh<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date:  March 22, 2018<br>Time:  1:30 p.m.<br>Ctrm:  8 – 4th Floor |

**CONTAINS CONFIDENTIAL INFORMATION**
**CONDITIONALLY LODGED UNDER SEAL**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. THE RULE 23(a) REQUIREMENTS ARE SATISIFED ............................................... 1

    A. Common Design Defect ....................................................................................... 1

    B. NNA's Knowledge ............................................................................................... 3

III. THE RULE 23(b) REQUIREMENTS ARE SATISIFED ............................................... 6

    A. Merchantability Can be Proven by Common Evidence ....................................... 6

    B. Causation and Materiality Are Not Individual Issues in this Case ....................... 9

    C. The Limitations Defense is Susceptible to Common Proof ................................. 9

    D. Plaintiff's Damages Model Satisfies the Predominance Requirement and Comcast ............................................................................................................................. 10

        1. Plaintiff's Damages Model Matches His Theory of Liability and Can be Established by Common Proof ............................................................... 11

        2. Plaintiff's Theory is Not Just Simple Arithmetic .................................... 14

        3. Plaintiff's Theory is Benefit of the Bargain, Not Expected Utility ......... 14

        4. A Liability Only Class Can be Certified ................................................. 15

IV. CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

***FEDERAL CASES***

*Arteaga v. Carmax Auto Superstores West Coast, Inc.*, 2014 WL 3505527
   (C.D. Cal. July 11, 2014) .................................................................................................. 7

*Birdsong v. Apple, Inc*., 590 F.3d 955 (9th Cir. 2009) ..................................................... 7

*Borkman v. BMW of N. Am., LLC,* No. CV 16-2225 FMO, 2017 WL 4082420
   (C.D. Cal. Aug. 28, 2017)................................................................................................. 7

*Butler v. Porsche Cars N.A.*, No. 16-CV-2042-LHK, 2017 WL 1398316
   (N.D. Cal. April 19, 2017) ................................................................................................ 3

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)............................................................. 9, 10

*Daniel v. Ford Motor Company*, 806 F. 3d 1217 (9th Cir. 2015) ...................................... 8

*Ehrlich v. BMW of N. Am.*, 801 F. Supp. 2d 908 (C.D. Cal. 2010) ............................... 9, 10

*Falco v. Nissan*, No. 13-CV-00626, 2013 WL 5575065 (C.D. Cal. October 10, 2013)........... 10, 13

*Falk v. Gen. Motors Corp*., 496 F. Supp. 2d 1088 (N.D. Cal. 2007) ................................. 9

*In Re MyFord Touch Consumer Litigation,* No. 13-cv-03072, 2018 WL 887534 at *7 (N. D. Cal.
   Feb. 14, 2018)................................................................................................................ 6, 7

*Johnson v. Harley-Davidson Motor Co., Grp. LLC*, 285 F.R.D. 573 (E.D. Cal. 2012) ................... 3

*Jones v. ConAgra Foods, Inc*. 2014 WL 2702726 (N. D. Cal. June 13, 2014)................................ 13

*Kas v. Mercedes-Benz USA, LLC*, 2011 WL5248299 (C.D. Cal. Oct. 31, 2011) ............................ 8

*Leyva v. Medline Indus., Inc*., 716 F.3d 510 (9th Cir. 2013) ....................................... 10, 14

*Lucas v. Breg, Inc*., 212 F. Supp. 3d 950 (S.D. Cal. 2016) ................................................ 9

*Philips v. Ford Motor Co*., No. 14-CV-02989-LHK, 2016 WL 7428810
   (N.D. Cal. Dec. 22, 2016) .......................................................................................*passim*

*Pulaski & Middleman, LLC v. Google, Inc.,* 802 F.3d 979 (9th Cir. 2015) ................................. 10

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) ........................................... 9

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012)....................................... 12

*Wolin vv. Jaguar Land Rover North America, LLC.*, 617 F.3d 1168 (2010) .................... 7

*STATE CASES*

*Atkinson v. Elk Corp. of Texas,* 142 Cal. App. 4th 212 (2006) .......................................................... 8

*Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538 (2014) .......................................................... 6

*Donlen v. Ford Motor Co.*, 217 Cal. App. 4th 138 (2013) ................................................................. 8

*Hicks v. Kaufman and Broad Home Corp.*, 89 Cal. App. 4th 908 (2001) ...................................... 12

*Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205 (1991) .......................................... 9

*Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297 (2009) ................................................................ 8

*Stout v. Turney*, 22 Cal. 3d 718 (1978) ............................................................................................ 13

## I. INTRODUCTION

Plaintiff's Motion satisfies all the Rule 23 prerequisites under *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2016 WL 7428810 (N.D. Cal. Dec. 22, 2016), which Defendant Nissan North America, Inc.'s ("NNA") Opposition [Dkt. No. 75-6] significantly ignores. Furthermore, Plaintiff's damages model, based on a theory of benefit of the bargain, satisfies predominance under Rule 23(b)(3). NNA's entire challenge to Plaintiff's damages methodology boils down to the fact that NNA would prefer a damages model based on a theory of expected utility. NNA's preference for a different damages theory is no basis to defeat predominance or deny certification.

## II. THE RULE 23(a) REQUIREMENTS ARE SATISIFED

### A. Common Design Defect

NNA does not challenge numerosity, typicality, adequacy or ascertainability under Rule 23(a). With respect to commonality, NNA contends there is no common design defect because the defect alleged is limited to the materials used to construct the concentric slave cylinder ("CSC").

First, the commonality requirement is satisfied with even a single common question that will generate a common answer. *See Philips*, 2016 WL 7428810, at *7. Plaintiffs have set forth several common questions, including whether the defect exists, whether NNA knew and failed to disclose the clutch pedal problem, whether NNA had a duty to disclose this fact, and whether this fact was material. Mot. at 14. Accordingly, Plaintiff has identified common issues sufficient to meet "the relatively minimal showing required to establish commonality." *Philips,* 2016 WL 7428810, at *7.

Second, NNA mischaracterizes the "defect" that Plaintiff alleges. Plaintiff's defect theory is described by Plaintiff's technical expert, Michael Stapleford. *See* Declaration of Michael Stapleford in support of Plaintiff's Motion for Class Certification, Ex. 1 ("Stapleford Report"). When NNA reconfigured the Class Vehicles' factory-installed clutch system in 2007, moving the CSC into the transmission bell housing, NNA failed to account for heat transfer. In fact, ████████ ████████████████████████████████████ Supplemental Decl. of Karen L. Wallace in Support of Plaintiffs' Motion for Class Certification ("Wallace Supp. Decl."), ¶ 2, Ex. 1, Lewis Depo. at 100:21-101:17 ████████████████████████████████████████████████████ Mr. Stapleford determined that the CSC, which is an aluminum/plastic composite, lacks the properties

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1  necessary to conduct the heat generated from the transmission during normal operation. Mr.
2  Stapleford concluded that the CSC's inability to adequately transfer heat causes the clutch fluid to
3  overheat and reach its boiling point. Stapleford Report at p. 7, ¶11. Because of this defective design,
4  the clutch system overheats, and the clutch fluid circulating throughout boils, generating air that
5  causes catastrophic failure of the clutch pedal. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
6  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
7  ▉▉▉▉▉ *See, e.g.* Wallace Supp. Decl. ¶ 2, Ex. 1, Lewis Depo at 52:3-53:6 ▉▉▉▉▉▉▉
8  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉); *Id.* ¶ 3, Ex. 2, Blenkarn Depo at 65:15-66:3
9  (▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
10 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉).
11 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
12 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉" (*Id.* ¶ 4, Ex. 3 at NNA13023), ▉▉▉▉▉▉▉▉▉▉
13 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (*Id.* at 13026.)
14       NNA cannot refute Mr. Stapleford's conclusion that heat is transferred through the CSC,
15 such that the clutch fluid boils and that catastrophic failure occurs during normal operating
16 conditions, such as driving or parking on inclines. NNA's contention that the CSC is not a heat
17 conductor (Opp. at 4: fn. 5) is itself confirmation of the design flaw that NNA ignored, as NNA
18 freely admits that it failed to "[attribute] any clutch actuation complaints to the material used in the
19 CSC, or to heat conduction properties of the CSC." Opp. at 6. As set forth below, NNA knew ▉▉▉
20 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
21 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.
22       While NNA maintains that Class Vehicles' clutch system has "multiple design
23 configurations" and that the part number for the CSC has changed, Plaintiff's evidence shows that
24 none of the minor modifications to manufacturing processes indicate either a change in the CSC's
25 construction or a change the clutch system's design. *See* Motion at 5 (citing evidence that the same
26 CSC is used in all Class Vehicles); *see also* Wallace Supp. Decl. ¶ 5, Ex. 4 (▉▉▉▉▉▉▉▉▉
27 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉).
28       NNA's reliance on *Johnson v. Harley-Davidson Motor Co., Grp. LLC*, 285 F.R.D. 573, 579

(E.D. Cal. 2012), is thus misplaced, as NNA proffers no credible evidence of "multiple design configurations" to refute Plaintiff's allegation that the CSC's design is the same or substantially similar in all the Class Vehicles. Further, contrary to *Butler v. Porsche Cars N.A.*, No. 16-CV-2042-LHK, 2017 WL 1398316, at *7 (N.D. Cal. April 19, 2017), where this Court found the plaintiff failed to "clearly articulate what, precisely, is defective about the wiring harness's design," Plaintiff here fully articulates the defect and proffers evidence demonstrating a specific defect in the design of the clutch system's CSC that makes it unreasonably susceptible to overheating. *See* Stapleford Report. In addition, by appearing to disclaim responsibility for the design of the clutch system, intimating that Nissan Motor Co., Ltd. is at fault, (Opp. at 4), NNA concedes the design is at issue and confirms its own integral role in evaluating performance concerns and developing countermeasures. Opp. at 5.

NNA contends the clutch pedal malfunctions at issue are likely the result ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Opp. at 6. To the contrary, two of NNA's own engineers testified that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Wallace Supp. Decl. ¶ 3, Ex. 2, Blenkarn Depo at 74:18-25 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓); Wallace Supp. Decl. ¶ 2, Ex. 1, Lewis Depo. at 81:5-10 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓) In any event, as this Court noted with respect to predominance "[t]he Court need not decide at this stage which party is correct." *Philips,* 2016 WL 7428810, at *14 (citation omitted). "The Court needs only to consider Plaintiffs' theory of the case and the type of evidence that Plaintiffs will use to prove this theory. Plaintiffs allegation that Class Vehicles suffered from a single design defect . . . whether this allegation is true can be proven on a common basis. Thus, [defendant's] argument that there was common defect does not defeat predominance…" *Id*. Here, as in *Philips*, NNA's bald assertion that there is no common defect does not defeat commonality or predominance.

**B.   NNA's Knowledge**

The Class's implied warranty claim does not require pre-sale knowledge by NNA. With respect to the CLRA claim, NNA contends its knowledge varied over the class period, precluding a finding that Plaintiff's allegations are susceptible to generalized proof. NNA is incorrect. The Class

1  as currently defined ("all individuals in California who purchased or leased, from an authorized
2  Nissan dealer, a new Nissan vehicle equipped with a FS6R31A manual transmission") begins with
3  model year 2007 vehicles. Plaintiff can prove through common evidence that, before NNA began
4  selling the model-year 2007 vehicles and continuing through the class period, ▮▮▮▮▮▮
5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiff's evidence shows that ▮▮▮▮▮▮▮▮▮▮
7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Motion at 6-8.

9       Moreover, Plaintiff's expert found, based on reviewing NNA's documents, that NNA had the
10 opportunity to identify, investigate and remediate heat concerns when, in 2007, it re-designed the
11 clutch system and moved the slave cylinder into the bell housing, but failed to do such investigation,
12 despite early and consistent complaints of the "sticky" clutch pedal. *See* Motion at 6. Accordingly,
13 the CLRA claim, which includes vehicles starting with the 2007 model-year, can be certified.

14       At a minimum, the CLRA claim should be certified with respect to 2010-and-later model-
15 year vehicles, as it undeniable that by 2009, NNA knew specifically that heat in the Clutch System
16 could cause increasing loss of clutch pressure. *See* Motion at 7 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)(
18 NNA0012987).

19       NNA's change to DOT 4 brake fluid in the Class Vehicles to prevent fluid boiling is further
20 evidence of NNA's awareness by 2009 that the clutch system was prone to overheating, which could
21 prevent shifting while driving. As early as 2008, NNA was aware ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Motion at 9. In
23 2008, NNA's proprietary GT-R R35 Special DOT 4 Brake Fluid was introduced to the US market.
24 DOT 4 was designed with a higher boiling point exclusive for NNA's GT-R. The GT-R sedan, a re-
25 brand of the Skyline, available in Japan since 1993, was introduced to the US market in 2008.[1] NNA
26 certainly had the benefit of years of research and development for its DOT 4 fluid, which was

---

[1] *See, e.g.*, Nissan USA, "From Skyline to GT-R," Nissan Blog (Feb. 13, 2017), *available at* https://www.nissanusa.com/blog/nissan-skyline. The R35 was introduced in Japan in 2001 and renamed the GT-R for American markets.

1  ultimately adopted for use in the Class Vehicles in 2012 to address the "sticky" clutch pedal. *See*
2  Motion at 9. Indeed, NNA engineer Bryan Lewis confirmed that ██████████████████
3  ████████████████████████████████████████████████████████████████████
4  ██████████████████████████████████████ Wallace Supp. Decl. ¶ 2, Ex. 1,
5  Lewis Depo at 52:3-53:12. ████████████████████████████████████
6  ████████████████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████████████████
8  ████████████████████████ Wallace Suppl. Decl., ¶ 7, Ex. 6 at NNA0007841. *Accord*
9  *Philips*, 2016 WL 7428810, at *17 (finding it reasonable to infer that defendant's conclusions
10 regarding the defect after the class period "were pr[ec]eded by an accretion of knowledge").
11         NNA provides no support for its position that, for the CLRA claims to be certified, Plaintiffs
12 must prove NNA knew that the CSC's design, as described by Plaintiff's expert, ultimately turned
13 out to be the root cause of the boiling clutch fluid that caused the pedal to stick to the floor. Indeed,
14 such an argument would be disingenuous, as NNA has continued to deny that the clutch system is
15 defective at all or that there is any cause other than driver error for the "sticky" clutch pedal. For
16 purposes of class certification, all Plaintiff must show is that NNA knew, before the Class period,
17 that boiling clutch fluid would cause the clutch pedal to lose pressure without warning, which is a
18 material fact that NNA freely admits it failed to disclose. NNA also mischaracterizes Mr.
19 Stapleford's deposition testimony, asserting incorrectly that he confirmed NNA's lack of knowledge
20 before 2012. Opp. at 9. What Mr. Stapleford did testify to is that he believes NNA is on its way to
21 confirming his theory of the defect's ultimate root cause and its remedy. Wallace Supp. Decl. ¶ 6,
22 Ex. 5, Stapleford Depo. at 75:1-76:12. Stapleford was not asked, nor did he offer any opinion,
23 regarding when NNA first knew that the clutch system in the Class Vehicles was unreasonably prone
24 to overheating.
25         In short, the loss of pressure in the clutch pedal, causing it to stay down after being depressed
26 to shift gears, is an abnormal condition and a manifestation of the defective design of the clutch
27 system. Plaintiff's common evidence identifies the defect with particularity and is sufficient at the
28 class certification stage to show that NNA knew by 2009, if not as early as 2007, about clutch pedal

defined period of time." *Lucas*, 212 F. Supp. 3d at 961. NNA confirms its New Vehicle Limited Warranty warrants the Class Vehicles "for a specific and defined period of time." (Opp. at 5:2-7.)

*Ehrlich v. BMW of N. America*, 801 F. Supp. 2d 908 (C.D. Cal. 2010) ("*Ehrlich*") is instructive. In *Ehrlich*, relying on *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 215-217 (1991), the court rejected defendant's contention that plaintiffs' implied warranty claim was barred by the four-year limitations period that began from purchase date. *Ehrlich* at 923-925 (quoting *Krieger*, 234 Cal. App. 3d at 215-217) ("BMW's argument fails because it ignores the existence of the 4–year/50,000-mile express warranty, which is a warranty that 'explicitly extends to future performance of the goods.' That warranty tolled the statute of limitations until Plaintiff reasonably knew that his MINI would not perform as it should, which did not occur until his windshield cracked and BMW would not replace it.")

Similarly, here, Defendant's warranty extends to future performance, and Plaintiffs sufficiently allege tolling of the statute of limitations based on their inability to discover the alleged defect and NNA's continued concealment of the defect. *See Ehrlich*, 801 F. Supp. 2d at 925 ("The statute of limitations for Plaintiff's breach of implied warranty claim thus began running in March 2008, when he first discovered that BMW would not repair his defective windshield.") In fact, to this day NNA continues to conceal the defect. Thus, Plaintiffs' claims are timely. *See also Falco v. Nissan*, No. 13-CV-00626, 2013 WL 5575065 (C.D. Cal. October 10, 2013) (NNA asserts that the above rules mean that an implied warranty brought more than five years from the date of delivery is time barred: Since the implied warranty lasts only one year, NNA argues, a claim must be brought within four years of the expiration of the one-year period, or five years from the date of sale. This argument, fails, however because under California law, NNA's five-year warranty had the effect of tolling the statute of limitations

### D. Plaintiff's Damages Model Satisfies the Predominance Requirement and *Comcast*

None of NNA's challenges to damages suffice to defeat predominance or deny certification.

1. **Plaintiff's Damages Model Matches His Theory of Liability and Can be Established by Common Proof**

As this Court has noted, plaintiffs have the burden to offer a damages model showing that "damages are susceptible of measurement across the entire class for purpose of Rule 23(b)(3)" and that such a damages model "must measure only those damages attributable to" plaintiffs' theory of liability. *Philips,* 2016 WL 7428810, at *19 (*citing Comcast Corp. v. Behrend*, 133 S.Ct.1426, 1433 (2013)); *see also Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability"). Plaintiff's damages model satisfies this standard.

Damages are measured at the time of sale. *Pulaski & Middleman, LLC v. Google, Inc.,* 802 F.3d 979, 989 (9th Cir. 2015). Plaintiff's theory of liability is that, because of NNA's omissions of material fact (with respect to the CLRA claim), and because Nissan sold them unmerchantable vehicles (with respect to the implied warranty claim), Plaintiff and the Classes overpaid for their Class Vehicles at the time of sale or lease. To measure the amount of the overpayment, Plaintiff's economics expert, Steven B. Boyles, uses the benefit of the bargain approach, which is an accepted measure of damages. As Mr. Boyles explains, the benefit of the bargain methodology, as applied to this case, seeks to recover the difference in value between the defect-free vehicles that Class Members expected and the vehicles they received, which had an unsafe defectively designed clutch system. The value Mr. Boyles assigned to this difference is the projected cost to replace the composite CSC with one that is solid cast-aluminum, the remedy proposed by Plaintiff's technical expert, Michael Stapleford. Declaration of Steven B. Boyles in Support of Plaintiff's Motion for Class Certification [Dkt. 62-13], Ex. 1, ¶¶ 18 & 28 ("Boyles Report.") Mr. Stapleford determined further that the cure he proffers can be implemented using an all aluminum CSC, already in production by NNA's supplier, which can be adapted for use in the Class Vehicles. The "average cost of repair" on which Mr. Boyles bases his damages model is a restitutionary measure that serves as a proxy for overpayment at the point of sale in the amount necessary to make the Class Vehicles conform to the bargain that Plaintiff and the Class expected. *See* Boyles Report ¶ 14. Plaintiff's damages model, which matches exactly his theory of liability, can thus measure the uniform

economic harm to the Class caused by NNA's breaches at the time of purchase or lease.

Under Plaintiff's model, the formula Mr. Boyles proffers utilizes the average cost of repair for the clutch pedal malfunctions at issue determined by NNA, based on NNA's data, including warranty data, and Mr. Stapleford's proposed remedy. Mr. Stapleford relied on NNA's repair procedure to determine the number of labor hours necessary to replace the defective CSC with a comparable, all-aluminum CSC. *See* Stapleford Rpt. at 3. NNA does not challenge this data's reliability. Using NNA's objective data to measure class-wide recovery makes individualized inquiry regarding consumer perception or preferences or individual transaction negotiations unnecessary.

NNA intentionally mischaracterizes Mr. Boyles's analysis, averring that it is premised on a theoretical bargain for "a vehicle without defects." (Opp. at 21). As Mr. Boyles explained, the measure of recovery that he determined was appropriate for class wide damages presupposes the existence of a latent design defect in the Class Vehicles' clutch system. As discussed above, the "defect" to which the approach refers is a specific, unreasonably dangerous design defect that causes the Class Vehicles to fail to shift while driving—*not* every conceivable defect, as NNA would have the Court believe. NNA's attempt to create a need for individualized inquiries regarding consumers' expectations should be rejected. The damages model Mr. Boyles proffers, based on the benefit of the bargain theory, restores Plaintiff and the Class to the position they would have had if the Class Vehicles had conformed to their expectation that the clutch system did not have an unsafe design defect, rather than speculating as to what Class Members would have done had NNA disclosed the information, which method NNA advocates. Finally, NNA's assertion that Mr. Boyles' damages model effectively compensates Class Members by average cost of repair as "a means of insulating the class members from the expense of repairs not covered by the warranty," (Opp. at 22), merely reflects NNA's wilful misapprehension of both Mr. Boyles' analysis and the appropriate standard for damages.

NNA cites *Hicks v. Kaufman and Broad Home Corp.*, 89 Cal. App. 4th 908, 923 (2001) for the proposition that the benefit of consumers' bargain can only be measured after the defect has manifested. The single sentence, which is dicta, is taken out of context, however, and contradicts the prevailing standard under *Comcast*, which requires only that Plaintiff's damages model measure

those damages attributable his theory of liability. *See, e.g., Philips*, at *19. As discussed, Plaintiff alleges that he and the Class were injured at the point of sale by upon overpaying for their Class Vehicles. NNA also cites *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012), for the proposition that "[a]verage cost of repair is also a legally improper measure of damages because it is not linked to the defendants' allegedly unlawful conduct." Opp. at 21:23-36. This argument is similarly unavailing, as NNA again misstates the holding. In *Wilson*, the court found that "the cost to repair the product…did not give rise to a duty to disclose," not that it failed as a measure of recovery. *Id*. Indeed, NNA's objection to the average cost of repairs as a measure relies almost exclusively on its own expert's confusing rebuttal and preference for expected utility as the proper methodology and ignores the substance of Mr. Boyles' report. Opp. at 22:28-23:8.

NNA also rejects Mr. Boyles' model on the grounds that "the 'natural' measure of damages attendant to his factual theory [is] the actual out of pocket expenses of purchasers who had to pay for repairs to their vehicles." Opp. at 10. NNA offers no support for this position. And to the contrary, under Plaintiff's benefit of the bargain theory, it is irrelevant whether the design defect manifested post-purchase or whether Class Members incurred costs for clutch system repairs; Plaintiff's theory of liability is that Class Members were injured by NNA's misconduct at the point of sale. The amount necessary to compensate for losing the benefit of their bargain is the cost to cure the defectively designed clutch system, which should be determined by the cost to *NNA* to cure. The out of pocket measure that NNA would prefer, therefore, is inconsistent with Plaintiff's theory. While Plaintiff agrees that NNA should reimburse Class Members for costs incurred to repair clutch malfunctions (and Plaintiff would attempt to have NNA pay those costs at settlement), out of pocket costs are not the proper measure of damages under Plaintiff's theory. For similar reasons, NNA is wrong in contending that lessees should be compensated differently from owners. Opp. at 23. The injury alleged was common to all purchasers and lessees at the *point of sale* based on their uniform overpayment for the common design defect at the time of purchase or lease.

As Plaintiff notes in his Motion at 11, Plaintiff's articulation of the benefit of the bargain theory has been endorsed by other courts, most recently in *Falco v. Nissan*, *North America, Inc.*, 2016 WL 1327474 (C.D. Cal. Apr. 5, 2016 at *12 ("by receiving restitution in the amount of average

repairs, the class would be getting the benefit of their bargain because they would be put in the same position they would have been had the car not been sold with the defective timing chain system – it is the cost necessary to make the vehicles conform to make the value Plaintiffs thought they were getting in the price tendered.").

### 2. Plaintiff's Theory is Not Just Simple Arithmetic

NNA's contention that Mr. Boyle's damages theory is "little more than arithmetic" (Opp. at 19) is inaccurate and overly reductive. Mr. Boyles relied on his expertise in forensic accounting to assess Plaintiff's theory in order to determine the appropriate measure of recovery and methodology, which he applied to the facts on the record. Plaintiff's theory of damages thus posits the difference in price between the defect-free vehicle Class Members expected and the vehicle they received with a defectively designed and unsafe clutch system. As noted, NNA's own data has assigned a cost to that difference, which Mr. Boyles isolated as variables, consistent with the remedy proffered by Mr. Stapleford, to provide a model that identifies damages stemming from NNA's wrongdoing and is susceptible of measurement across the entire class. This measure is a form of restitution based in part on class-wide reliance on NNA's omissions. *See, e.g., Jones v. ConAgra Foods, Inc*. 2014 WL 2702726, at *19 (N. D. Cal. June 13, 2014) (finding that the difference "between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution.") (citations omitted); *Stout v. Turney*, 22 Cal. 3d 718, 725 (1978) (explaining that the benefit-of-the-bargain measure "awards the difference in value between what the plaintiff actually received and what he was fraudulently led to believe he would receive…. [and] contemplates an award even when the property received has a value equal to what was given for it"). The fact that his analysis is so readily comprehensible that NNA considers is nothing more than basic and "remedial" arithmetic, (Opp. at 19), speaks to Mr. Boyles' expertise and ability to explain economic theory in a clear, concise way.

### 3. Plaintiff's Theory is Benefit of the Bargain, Not Expected Utility

NNA conflates a theory of expected utility with the benefit of the bargain approach adopted by Plaintiff, using utility theory to argue that Plaintiff must the determine the value of each Class Member's "bargain" based on what each would have negotiated individually had NNA disclosed information about the defect. Under Plaintiff's theory, every Class Member made the same bargain

for a vehicle free of the defectively designed clutch system at issue. The benefit of that bargain that every Class Member lost due to NNA's omission is the cost to cure the defect, which can be measured by the average the cost to repair as determined by NNA. Predictably, NNA advocates for an expected utility theory *because* it implicates individual issues. Contrary to Plaintiff's benefit of the bargain approach, which focuses on the cost to *NNA* to cure the undisclosed defect, NNA's utility theory focuses on consumers' expectations *for a vehicle with a defect*. The parties simply disagree about the proper methodology for calculating damages. At class certification, this Court does not need to determine which party's damages model is right, only that Plaintiff propose a "valid method for calculating class wide damages at the class certification stage," (*Leyva*, 716 F.3d at 514), that matches his theory of liability and can be established by common proof. Plaintiff's benefit of the bargain model satisfies that standard and provides a model that can measure class wide damages.

### 4. A Liability Only Class Can be Certified

Because all the issues for establishing liability can be determined based on common proof, certification is the superior method for resolving this action. Further, if, for any reason, Plaintiff's damages model is rejected or the predominance requirement is not deemed satisfied, the Class should be certified for liability purposes only under Rule 23(c)(4), especially if the Rule 23(a) requirements are satisfied. An adjudication as to the common issues, such as existence of defect, materiality, and duty to disclose would assist Class Members in their individual claims and obviate the need for multiple trials on the same issues. The goal would be to establish all the common issues and then allow each individual class member to prove liability and damages on an individual basis, either by trial or through another mechanism to be determined by the parties and approved by the Court. This would certainly be more efficient than multiple trials to resolve the same issues.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) certify the Class as defined as to the implied warranty claim; (2) certify the Class as defined as to the CLRA claim or, in the alternative, certify the CLRA claim with respect to Class Vehicles beginning with the 2010 model-year; (3) appoint the named Plaintiff as class representative; and (4) appoint Plaintiff's counsel as Class Counsel. If for any reason certification is denied, Plaintiff requests leave to amend.

|  |  |
|---|---|
| Dated: March 2, 2018 | Respectfully submitted, |
|  | Capstone Law APC |
|  |  |
|  | By: /s/ Jordan L. Lurie |
|  |      Jordan L. Lurie |
|  |      Tarek H. Zohdy |
|  |      Cody R. Padgett |
|  |      Karen L. Wallace |
|  |  |
|  | Attorneys for Plaintiff |