Steven Weinmann (SBN 190956)
Steven.Weinmann@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Trisha K. Monesi, (SBN 303512)
Trisha.Monesi@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

*Attorneys for Plaintiff Huu Nguyen*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUU NGUYEN, individually, and on behalf of a class of similarly situated individuals,<br><br>    Plaintiff,<br>    v.<br>NISSAN NORTH AMERICA, INC., a California corporation,<br><br>    Defendant. | Case No.:  5:16-cv-05591-LHK (NCx)<br><br>Hearing Date:    May 14, 2020<br>Hearing Time:    1:30 p.m.<br><br>**PLAINTIFF'S SUPPLEMENTAL POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION**<br><br>District Judge:    Hon. Lucy H. Koh<br>Location:    280 South 1st Street<br>    Courtroom 8, 4th Fl.<br><br>Action Filed:    September 30, 2016 |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. FACTS AND PROCEDURE ............................................................................................... 3

    A. Plaintiff's Theory of Liability ................................................................................. 3

    B. Plaintiff's Damages Model ...................................................................................... 4

    C. Nissan's Mischaracterization of Plaintiff's Damages Model .................................. 4

    D. This Court's Denial of Certification ........................................................................ 5

    E. The Court of Appeals Reverses ............................................................................... 6

III. ARGUMENT ........................................................................................................................ 6

    A. Plaintiff's Damages Model Satisfies Rule 23 (b)(3)'s Predominance Requirement ....................................................................................... 6

    B. *Nguyen* Provides Strong Guidance to District Courts On Predominance and Supports Finding That Rule 23 Is Satisfied Here ......................................................................................................................... 8

IV. CONCLUSION .................................................................................................................. 11

# TABLE OF AUTHORITIES

*CASES*

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ................................................................................5

*Di Donato v. Insys Therapeutics, Inc*., No. CV-16-00302-PHX-NVW, 2019 WL
    4573443 (D. Ariz. Sept. 20, 2019)..............................................................................................9

*Grace v. Apple, Inc*., No. 17-CV-00551-LHK, 2019 WL 3944988
    (N.D. Cal. Aug. 21, 2019) ..........................................................................................................9

*Lambert v. Nutraceutical Corp*., 870 F.3d 1170, rev'd on other grounds, 139
    S.Ct 710) (2019)..........................................................................................................................6

*Maldonado v. Apple, Inc*., No. 3:16-CV-04067-WHO, 2019 WL 4451028
    (N.D. Cal. Sept. 17, 2019) ..........................................................................................................9

*Nguyen v. Nissan N.A., Inc.*, 932 F.3d 811 (9th Cir. 2019)..............................................*passim*

*Philips v. Ford Motor Co*., No. 14-CV-02989-LHK, 2016 WL 7428810
    (N.D. Cal. Dec. 22, 2016)...........................................................................................................3

*Pulaski & Middleman, LLC v. Google, Inc*., 802 F.3d 979 (9th Cir. 2015) .............................5

*Victorino v. FCA US LLC*, 326 F.R.D. 282 (S.D. Cal. 2018), appeal withdrawn,
    No. 18-80076, 2019 WL 7187392 (9th Cir. Nov. 21, 2019)............................................7, 8

*Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168
    (9th Cir. 2010) ....................................................................................................................3, 5, 6

*STATUTES*

Cal. Civ. Code § 1760 ...............................................................................................................6

Cal. Civ. Code § 1794(b).........................................................................................................6

Cal. Civ. Code §§ 1750, *et seq*. (Cal. Cons. Legal Remedies Act (CLRA)) ...........................3

Cal. Civ. Code §§ 1790, *et seq*. (Song-Beverly Consumer Warranty Act
    (Song-Beverly))..........................................................................................................................3

## I. INTRODUCTION

Plaintiff Huu Nguyen ("Plaintiff") in his Motion for Class Certification (ECF No. 62-4) provided compelling evidence supporting certification of a proposed Class of purchasers of Nissan 370Z, Infiniti G37 and G60 models ("Class Vehicles") equipped with manual transmissions.[1] This Court denied certification based solely upon its ruling that Plaintiff's damages model is insufficient to find predominance. The Ninth Circuit Court of Appeals found that, because Plaintiff's specific "benefit of the bargain" damages model does align with his legal theory, predominance under Rule 23(b)(3) has been satisfied. As Plaintiff's motion satisfies the other factors for certification under Rule 23, the Court should certify the Class.

In considering the Court's initial order denying class certification, the Court of Appeals stated: "The central issue before us is whether Plaintiff's proposed damages model—specifically, a benefit-of-the-bargain model as measured by the average cost of replacing the allegedly defective clutch system—satisfies Rule 23(b)(3)'s predominance requirement." *Nguyen v. Nissan N.A., Inc.*, 932 F.3d 811, 816 (9th Cir. 2019). That Circuit panel unanimously agreed that Plaintiff's proposed model did satisfy predominance, the analysis for certification purposes being limited to whether the model is connected to Plaintiff's theory of liability. *Id*. Plaintiff's theory, as the panel clarified, is that Nissan concealed a defect in the clutch system, resulting in the class member "not getting what he bargained for—a transmission 'fit for [its] intended use." *Id*. at 821. The circuit panel then concluded that Plaintiff's "benefit-of-the-bargain damages model aligns with this legal theory." *Id*.

The Court of Appeals' understanding of both Plaintiff's theory and damages model is correct. To put it another way: Plaintiff alleges that, at the point of sale, Nissan *should have disclosed* to purchasers that, due to the plastic-aluminum composite material used in the clutch slave cylinder ("CSC"), the Class Vehicles' hydraulic clutch system was defective and could

---

[1] Nissan 350Z, model years 2007-09; the Nissan 370Z model years 2009-15; the Infiniti G35, model years 2007-08; the Infiniti G37, model years 2008-14; and the Infiniti Q60.

cause a "sticky clutch pedal," creating a safety hazard. Had Nissan done so, that disclosure would have changed the benefit of the bargain for the purchaser, as the purchase price does not capture the existence of the undisclosed defect. Assuming a consumer still wanted to purchase the vehicle, she would be left with several options to ensure that she has the full benefit of her bargain. For example, she could request that Nissan immediately replace the composite CSC with a solid cast-aluminum CSC before she drives it off the lot. Thereafter, that vehicle would be free of the alleged defects and the purchase price would capture the benefit of her bargain.

If that option is unavailable, the most logical way to achieve the benefit of the bargain—a vehicle free of the alleged defect—is to *deduct the cost of replacing* a defective CSC with a non-defective CSC from the purchase price and then have her own mechanic replace the CSC. This idea is at the core of Plaintiff's damages model. Plaintiff's model uses the cost (labor and parts) of replacing a defective CSC with a non-defective CSC as a measure of the amount class members would logically be damaged by at the point of sale due to Nissan's failure to disclose the alleged defect. Stated differently, at the point of sale, class members overpaid for a vehicle that had an undisclosed defect that is not reflected in the purchase price. The amount of overpayment is *the cost of repairing the undisclosed defect*—or approximately $724.

Notably, the appellate panel rejected Nissan's mischaracterization of Plaintiff's theory as a full-refund model simply because the defective part was being replaced. *See Nguyen*, 932 F.3d at 819. After misstating Plaintiff's theory, Nissan further claimed that post-sale factors impacted the damage analysis, such as any use of the defective CMC before malfunction. Using Plaintiff as an example, Nissan argued he drove the vehicle for approximately 26,629 miles before the original CSC malfunctioned. Improperly looking past the point of sale, Nissan claimed his use of the defective CMC needed to be accounted for in the damages model. This Court agreed, and took it one step further, adding that the defective part may have resale or salvage value as well. Thus, this Court ruled that the part must be "valueless" before the cost of replacement could be used as a measure of damages. Based on what this Court

perceived as a faulty damage model, certification was denied.

Reversing the order denying certification due to this misconception of Plaintiff's legal theory, the Ninth Circuit panel went further, specifically finding that "Plaintiff's proposed damages model <u>is consistent</u> with his theory of liability." *Nguyen*, 932 F.3d at 822 (emphasis added). The decision leaves no doubt that Plaintiff's proposed damages model satisfies the predominance requirement under Rule 23(b)(3). This Court should therefore again analyze the Rule 23(a) factors, and Plaintiff's theory of liability under Rule 23(b)(3), and determine that the proposed class should be certified.

## II.   FACTS AND PROCEDURE

### A.   Plaintiff's Theory of Liability

On December 15, 2017, Plaintiff filed his motion for class certification on two causes of action, the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, and the California Song-Beverly Consumer Warranty Act ("Song-Beverly"), Cal. Civ. Code §§ 1790, *et seq.* (ECF No. 62-4 ("Mot.")). Plaintiff's theory was, and is, that Nissan failed to disclose that the Class Vehicles were equipped with a composite concentric slave cylinder ("CSC") made of metal and plastic that Nissan knew was defective because it was unable to withstand the heat generated during normal operation. (*Id.*) Under Plaintiff's theory, the harm was at the point of sale, making his claim valid "regardless of the manifestation of the defect." (*Id.* at 16 [citing to *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1174 (9th Cir. 2010)].) This theory was supported by his liability expert Michael Stapleford, who found that in all models of the Class Vehicles, the subject CSC was designed in such a way that it did not transfer heat effectively and caused the clutch to malfunction. (ECF No. 62-12 ("Stapleford Decl.") ¶¶ 43-48.) To cure the defect, Mr. Stapleford opined that the CSC would have to be redesigned such that the composite CSC be omitted in favor of a solid cast-aluminum CSC in all Class Vehicles, regardless of whether the defect had caused any performance problems—yet. (*Id.* at ¶ 57.)

To satisfy Rule 23(b)(3), Plaintiff relied on this Court's class certification ruling in *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2016 WL 7428810 (N.D. Cal. Dec. 22,

2016). (Mot. 1.) Specifically, the motion followed this Court's finding that "in order to determine whether Rule 23(b)(3)'s predominance requirement is met, the Court needs only to consider Plaintiffs' theory of the case and the type of evidence that Plaintiffs will use to prove this theory." (*Id*. at 2 [citing *Philips*, at *14].) Thus, in moving for certification, Plaintiff argued that all Class Vehicles were equipped with the same defective part and, therefore, his case was similar to *Wolin* and the question of whether the defect actually existed could be proven on a common basis. (*Id*. [citing *Phillips*, at *14; and *Wolin*, at 1174].)

### B. Plaintiff's Damages Model

Since liability was amenable to common proof of the existence of the defect, the only issue under Rule 23(b)(3) this Court needed to resolve was whether Plaintiff's theory of liability matched his damages model. (*See* ECF No. 97 ("Order") 8.) Nissan's concealment of the CSC defect meant that putative class members never received, at the point of sale, the benefit of the bargain—that is, a vehicle free of the alleged defect. Plaintiff's damages expert, Steven B. Boyles, found that, based on a benefit-of-the-bargain theory, the damage each class member suffered was equal to how much it would cost the class member to replace the defective CMC and thus eliminate the defect. (ECF. No. 62-14 ("Boyles Decl.") ¶¶ 18, 28.) Specifically, his model calculated the cost to replace the defective CMC with a solid cast-aluminum CMC based on objective data regarding parts and labor. (*Id*.) This amount was $723.95 per Class Vehicle. (*Id*. at 10.) Plaintiff's benefit-of-the-bargain model applied basic economic principles to common, class-wide evidence, which uniformly measures the economic harm Plaintiff alleges was caused by Nissan's misconduct at the point of sale. (*Id*.) Thus, Plaintiff's damages model uniformly measured the economic harm caused by the failure to disclose the defect at the time of purchase without any individual inquiry into consumers' subjective valuation of the defect. (*Id*. at 13.)

### C. Nissan's Mischaracterization of Plaintiff's Damages Model

In response, Nissan argued through its expert Stephen D. Prowse that the model failed to take into account individualized damage considerations, such as the "proposed class member's expectations regarding the likelihood of repairs and the cost of those repairs,

proposed class member's preferences regarding different vehicle features, whether the proposed class member was aware of the defect, the probability that the defect will occur, the incident rate for a technologically similar system in a vehicle, and whether the alleged defect is perceived by the proposed class members as a safety, performance, or quality of life issue." (ECF No. 76-8 ("Prowse Decl.") 117-18.) Nissan's expert concluded that the model "fails to take into account the highly individualized nature of a vehicle transaction that depends on a particular buyer's expectations and preferences, a particular seller's expectations and preferences and the nature of the transaction itself." (*Id*. at 121.)

### D. This Court's Denial of Certification

This Court agreed with Nissan. *See Nguyen*, 932 F.3d at 816. In doing so, this Court deemed Plaintiff's theory of damages "problematic." (Order 9:11-12.) Specifically, this Court opined that "the difference between value represented and value received only equals the cost to replace the defective CSC if consumers would have deemed the defective part valueless." (*Id*. at 15:14-16.) Accordingly, this Court denied certification because the model "errs in assuming that all consumers would discount the amount they would be willing to pay for the vehicle by the full replacement cost of a CSC even though the consumer received some value from the defective CSC." (*Id*. at 10:6-9.) In other words, this Court accepted Nissan's argument that post-sale considerations should be relevant to the analysis, observing thatconsumers also "derived value from the defective CSC—be it by selling it, repurposing it, or simply driving a ways before replacing it." (*Id*. at 9:24-27.) Thus, by looking <u>past the point of sale</u> and focusing on potential post-purchase value considerations, this Court concluded the damage model resulted in an overpayment because "the class member will have received the full benefit of the bargain and the monetary value of the defective part." (*Id*.) As such, this Court found the damages model failed the standard set forth in *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (a damages model "must measure only those damages attributable to" the plaintiff's theory of liability) and denied certification solely on those grounds.[2]

---

[2] This Court did not analyze any other Rule 23 class certification factors.

### E. The Court of Appeals Reverses

The Ninth Circuit reversed, finding that Nissan "mischaracterized Plaintiff's theory as being centered on performance issues, rather than the defective system itself." *Nguyen*, 932 F.3d at 819. The Court of Appeals found that Nissan's arguments regarding the need to factor in failure rate and any value received by the consumer for the use of the defective part, were "not accurate" because "Plaintiff's theory is that the defect was inherent in each of the Class Vehicles at the time of purchase, regardless of when and if the defect manifested." *Id*. Moreover, the court rejected the focus on "potential post-purchase value" as being inconsistent with Ninth Circuit precedent set forth in *Wolin* and *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015). *Id*. at 821-22. The denial of class certification was accordingly reversed and the case remanded. *Id*. at 822.

## III. ARGUMENT

### A. Plaintiff's Damages Model Satisfies Rule 23 (b)(3)'s Predominance Requirement

The Ninth Circuit's decision specifically and unambiguously held that the specific damages model and measure of damages proffered by Plaintiff in this case—"a benefit-of-the-bargain model as measured by the average cost of replacing the allegedly defective clutch system"—satisfied the requirement that it align with the theory of liability. The first step the Ninth Circuit took in the Rule 23(b)(3) inquiry was to consider "Plaintiff's causes of action in order to determine whether they permit recovery based on the benefit of the bargain." *Nguyen*, 932 F.3d at 817. Considering that the CLRA "shall be liberally construed and applied to promote its underlying purposes" and that "[c]lass wide damages calculations under the ... CLRA are particularly forgiving," the panel was "satisfied that Plaintiff's proposed benefit-of-the-bargain measure of damages is both cognizable under the CLRA and a reasonable basis of computation." *Id*. (quoting Cal. Civ. Code § 1760; *Lambert v. Nutraceutical Corp*., 870 F.3d 1170, 1183, rev'd on other grounds, 139 S.Ct 710) (2019). As for the Song-Beverly claim, "Plaintiff's damages model is similarly cognizable" because "[t]he measure of the buyer's damages in an action ... shall include the rights of replacement or reimbursement." *Id*.

(quoting Cal. Civ. Code § 1794(b).) Thus, there is no dispute that the benefit-of-the-bargain model is available for Plaintiff's causes of action.

Next, the Ninth Circuit analyzed whether Plaintiff's damage model flowed from his theory of liability. *Nguyen*, 932 F.3d at 819. In doing so, the Ninth Circuit analyzed Plaintiff's specific average cost of repair metric as proffered by Plaintiff's expert, noting that "the central issue before us is whether Plaintiff's proposed damages model—specifically, a benefit-of-the-bargain model *as measured by the average cost of replacing the allegedly defective clutch system*—satisfies Rule 23(b)(3)'s predominance requirement. In its analysis, the Ninth Circuit considered arguments that Plaintiff's expert's average cost of repairs measure of damages failed to account for residual value of the defective CSC or the benefit that defective CSC provided by Plaintiff simply driving the vehicle before replacing the CSC. *Id.* at 816. Rejecting those concerns, however, the court noted that "under [Plaintiff's] theory, the defect exists—and must be remedied—whether or not the symptoms have manifested yet." *Id.* at 819. The court further held that "Plaintiff's legal theory is not based on the performance of the allegedly defective clutch system, but instead the system itself, which he claims is defective." *Id*. "This characterization is crucial," it held, but was lost on Nissan, which argued that the "model assumed that 100% of the vehicles would manifest a clutch assembly defect, and none of them would malfunction but for the design flaw." *Id*. But this is incorrect. Rather, "Plaintiff's theory is that the defect was inherent in each of the Class Vehicles at the time of purchase, regardless of when and if the defect manifested." *Id*. Thus, as argued in the original motion for certification, "Plaintiff's theory is consistent with our opinion in [*Wolin*], in which [the Ninth Circuit] concluded that '[t]he district court erred when it concluded, without discussion, that certification is inappropriate because [the plaintiffs] did not prove that the defect manifested in a majority of the class's vehicles.'" *Id.* (quoting *Wolin*, 617 F.3d at 1173). This has been Plaintiff's position all along. (*See* Mot. 16.)

It is important to remember that "[w]hether his proposed calculation of the replacement cost is accurate, whether the clutch was actually defective, and whether Nissan knew of the alleged defect are merits inquiries unrelated to class certification." *Nguyen*, 932

F.3d at 821. "For now, it is sufficient that Plaintiff has demonstrated the nexus between his legal theory—that Nissan violated California law by selling vehicles with a defective clutch system that was not reflected in the sale price—and his damages model—the average cost of repair." *Id*. "Plaintiff's theory of liability—that Nissan's manufacture and concealment of a defective clutch system injured class members at the time of sale—is consistent with his proposed recovery based on the benefit of the bargain." *Id*. at 822.

Because the Ninth Circuit panel has already found that Plaintiff's damages model satisfies predominance under Rule 23(b)(3), this inquiry is not before this Court on remand. Rather, this Court should analyze Rule 23(a) and Plaintiff's theory of liability under Rule 23(b)(3) (but not the basis for his damages theory) and determine whether the proposed class should be certified.

### B. The Ninth Circuits' Opinion On Predominance in *Nguyen* Has Been Followed By District Courts And This Further Supports A Finding That Rule 23 Is Satisfied Here

The precedential decision in *Nguyen* not only controls here, its reasoning is already guiding district courts in this Circuit regarding how to properly apply predominance under Rule 23(b)(3) to the plaintiff's proposed damages models. These cases further support Plaintiff's motion for class certification.

*Victorino v. FCA US LLC*, 326 F.R.D. 282 (S.D. Cal. 2018), appeal withdrawn, No. 18-80076, 2019 WL 7187392 (9th Cir. Nov. 21, 2019), is directly on point.[3] The plaintiff in *Victorino* filed a class action against Defendant FCA based on defects in Dodge Dart vehicles equipped with a defective hose that leaked plasticizers and caused the clutch to fail and stick to the floor. *Id*. at 288. Like in *Nguyen*, the plaintiff alleged that the defect was present at the point of sale. *Id*. at 304. Mr. Victorino also relied on Mr. Boyles who opined that the "Clutch Defect can be cured and class members can be made whole and receive the value they bargained for at the point of sale" by calculating damages "in the amount of the cost necessary

---

[3] Capstone Law, APC also represents the Class in *Victorino*.

to cure the Clutch Defect" as measured by the cost of replacement. *Id*. In other words, Mr. Boyles used the exact same benefit-of-the-bargain model as he did in this case.

The *Victorino* court agreed that a benefit-of-the-bargain model would be an appropriate measure of damages but, relying on the prior order denying class certification here, the court found that providing damages equal to the cost to replace the defective parts would actually constitute a "full refund of the purchase price of the component parts" and, therefore, it "fails to correspond to Plaintiff's theory of liability because a full refund is not available for this cause of action." *Victorino*, 326 F.R.D. at 305. The court found that "while Plaintiff has set forth a damages model, benefit of the bargain, that is consistent with his theory of liability, in application, he applies a full refund model which does not comport to damages under a breach of the implied warranty requiring an assessment of the 'difference in the value represented and the value actually received.'" *Id*. Accordingly, the court concluded that "predominance has not been met on the issue of damages" and denied certification.[4]

Victorino petitioned for permission to appeal under Rule 23(f) and his petition was held in abeyance pending the disposition of *Nguyen* because the Rule 23(b)(3) issue was identical. *See Victorino v. FCA US LLC*, No. 16CV1617-GPC(JLB), 2019 WL 5268670, at *1 (S.D. Cal. Oct. 17, 2019). After *Nguyen* was decided, Victorino withdrew his appeal and the district court, "[a]fter a careful review of the briefs, supporting documentation, and the applicable law, [granted] Plaintiff's renewed motion for class certification." *Id*. The *Victorino* court found that the analysis of damages under 23(b)(3) was similar to *Nguyen*. *Id*. at *7. The court agreed that "*Nguyen* can be read to stand for the proposition that damages for cost of repair/replacement of defective vehicle components fits generally with an implied warranty

---

[4] It should be noted that, unlike the order denying certification in this case, the *Victorino* court provided a detailed analysis of all certification requirements under Rule 23 and found that numerosity, commonality, typicality, adequacy, and predominance on the issue of liability were all met. *See Victorino*, 326 F.R.D. at 292-301. The court denied certification on predominance of class definition as being overbroad, which could have been amended, and predominance of damages. *Id*. at 302-306. After *Nguyen* was decided, the court also found that class treatment was the superior method for efficiently adjudicating the controversy. *Victorino v. FCA US LLC*, 2019 WL 5268670, at *8 (S.D. Cal. Oct. 17, 2019).

Page 9                                    5:16-CV-05591-LHK (NCx)
PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPP. OF CLASS CERTIFICATION

1  liability theory that is based on a vehicle being equipped with a defective component at the
2  point of sale." *Id*. "Therefore, under the ruling in *Nguyen*, the Court concludes that Plaintiff
3  has presented a benefit of the bargain damages model that is consistent with his theory that all
4  Class Vehicles were equipped with a defective reservoir hose at the time of sale." *Id*. "Thus,
5  the Court concludes that Plaintiff's theory of liability comports with his damages model."
6  *Victorino* provides this Court with a complete roadmap for granting certification.

7        Other courts that have cited *Nguyen* are in accord. This District explained *Nguyen* in a
8  series of parentheticals as "finding a sufficient nexus between a benefit-of-the-bargain theory
9  of liability and a model based on the average cost of replacing the allegedly defective system
10  in the car" and that "plaintiffs' damages model was tied to their theory of liability, namely that
11  'the allegedly defective clutch itself [was] the injury, regardless of whether the faulty clutch
12  caused performance issues.'" *Maldonado v. Apple, Inc*., No. 3:16-CV-04067-WHO, 2019 WL
13  4451028, at *11 (N.D. Cal. Sept. 17, 2019). In another case, this Court also found that *Nguyen*
14  "underscores that a plaintiff need not directly measure benefit of the bargain damages to
15  advance a suitable restitution damages model under California law." *Grace v. Apple, Inc*., No.
16  17-CV-00551-LHK, 2019 WL 3944988, at *12 (N.D. Cal. Aug. 21, 2019). The District of
17  Arizona read *Nguyen* the same way and concluded that when the "defect existed in each of the
18  class vehicles at the time of purchase and required remedy regardless of whether class
19  members had experienced performance problems caused by the defect" then "the appropriate
20  measure of damages was the benefit of the bargain and could be applied classwide." *Di*
21  *Donato v. Insys Therapeutics, Inc*., No. CV-16-00302-PHX-NVW, 2019 WL 4573443, at *15
22  (D. Ariz. Sept. 20, 2019).

23        These cases following the Ninth Circuit's opinion on this matter support a finding of
24  Rule 23(b)(3) predominance based on Plaintiff's proposed benefit-of-the-bargain damages
25  model, measured at the point of sale. These cases also support Plaintiff's argument that he has
26  satisfied the Rule 23(a) factors and that common liability issues predominate over individual
27  issues under Rule 23(b)(3).
28

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court find Plaintiff's damages model meets the predominance requirement under Rule 23(b)(3), certify this action for class treatment, appoint Plaintiff as class representative, and appoint Plaintiff's counsel as Class Counsel.

Dated:  January 30, 2020

Respectfully submitted,

Capstone Law APC

By: /s/ Steven Weinmann
Steven Weinmann
Tarek H. Zohdy
Cody R. Padgett
Trisha K. Monesi

Attorneys for Plaintiff Huu Nguyen

Page 11   5:16-CV-05591-LHK (NCx)
PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPP. OF CLASS CERTIFICATION

# PROOF OF SERVICE

I am employed in the State of California, County of Los Angeles. I am over the age of 18 and not a party to the within suit; my business address is 1875 Century Park East, Suite 1000, Los Angeles, California 90067.

On January 30, 2020, I served the document described as: **PLAINTIFF'S SUPPLEMENTAL POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION** on the interested parties in this action by sending on the interested parties in this action by sending [ ] the original [or] [✓] a true copy thereof [✓] to interested parties as follows [or] [ ] as stated on the attached service list:

**PLEASE SEE ATTACHED SERVICE LIST**

☐ **BY MAIL** (ENCLOSED IN A SEALED ENVELOPE): I deposited the envelope(s) for mailing in the ordinary course of business at Los Angeles, California. I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. Under that practice, sealed envelopes are deposited with the U.S. Postal Service that same day in the ordinary course of business with postage thereon fully prepaid at Los Angeles, California.

☒ **BY E-MAIL**: I hereby certify that this document was served from Los Angeles, California, by e-mail delivery on the parties listed herein at their most recent known e-mail address or e-mail of record in this action.

☒ **VIA CM/ECF**: I hereby certify that this document was served via the USDC CM/ECF on the parties Notice of this filing was served by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. I certify that the parties or their counsel are registered as ECF filers and that they will be served by the CM/ECF system.

☐ **BY PERSONAL SERVICE**: I caused to be delivered by messenger such envelope(s) by hand to the office of the addressee(s).

☐ **BY OVERNIGHT DELIVERY**: I am "readily familiar" with this firm's practice of collection and processing correspondence for overnight delivery. Under that practice, overnight packages are enclosed in a sealed envelope with a packing slip attached thereto fully prepaid. The packages are picked up by the carrier at our offices or delivered by our office to a designated collection site.

☒ (**FEDERAL**) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

☐ (**STATE**) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct

Executed this 30th of January 2020 at Los Angeles, California.

/s/ Maria Olmos
Maria Olmos

**SERVICE LIST**

Matthew J. Adler
Matthew.adler@dbr.com
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, California 94105-2235
Telephone: 415-591-7500
Facsimile:   415-591-7510
Facsimile: 213.250.7900

Attorneys for Defendant Nissan North America, Inc.

Zoe K. Wilhelm
Zoe.wilhelm@dbr.com
Adam J. Thurston
Adam.thurston@dbr.com
Drinker Briddle & Reath LLP
1800 Century Park East, Suite 1500
Los Angeles, CA 90067-1517
Telephone:  (310) 203-4000
Facsimile:   (310) 229-1285

Attorneys for Defendant Nissan North America, Inc.

E. Paul Cauley
Paul.cauley@dbr.com
Drinker Briddle & Reath LLP
1717 Main Street, Suite 5400
Dallas, texas 75201-7367
Telephone:  (469) 357-2500
Facsimile:   (469) 327-0860

Attorneys for Defendant Nissan North America, Inc.