PAUL J. RIEHLE (SBN 115199)
paul.riehle@faegredrinker.com
MATTHEW J. ADLER (SBN 273147)
matthew.adler@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111-4180
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

E. PAUL CAULEY JR. (*pro hac vice*)
paul.cauley@faegredrinker.com
S. VANCE WITTIE (*pro hac vice*)
vance.wittie@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1717 Main Street, Suite 5400
Dallas, TX 75201
Telephone: (469) 357-2500
Facsimile: (469) 327-0860

Attorneys for Defendant
NISSAN NORTH AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HUU NGUYEN, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC., a California corporation,<br><br>Defendant. | Case No.: 5:16-cv-05591-LHK (SVKx)<br><br>**DEFENDANT NISSAN NORTH AMERICA, INC.'S SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date:          May 14, 2020<br>Time:          1:30 p.m.<br>Ctrm:         8 – 4th Floor<br>Judge:        Hon. Lucy H. Koh<br><br>Complaint Filed:    September 30, 2016<br>Trial Date:              Not Assigned |

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT NNA'S SUPP. OPP. TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
ACTIVE.121986090.06

CASE NO.: 5:16-cv-05591-LHK (SVKx)

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    THE SCOPE OF THIS COURT'S ORDER AND THE COURT OF APPEALS' OPINION...................................................................................................... 2

    A.     This Court's Certification Order Was Focused on Whether a Cost of Repair Model Could be Used Without Showing that a Defective CSC Had No Value. ................................................................................................. 2

    B.     The Court of Appeals' Opinion Was Limited to Whether Plaintiff's Damages Model Was Consistent with Plaintiff's Theory of Loss. ........................ 3

III.   FLAWS IN THE DAMAGES MODEL NOT ADDRESSED BY THE COURT OF APPEALS PRECLUDE PLAINTIFF FROM SATISFYING PREDOMINANCE ............................................................................................ 4

    A.     *Comcast* Review for Predominance Requires Consideration of Three Elements: Theoretical Fit, Factual Congruence and Methodological Reliability. ....................................................................................... 4

    B.     Plaintiff's Damages Model Fails to Satisfy *Comcast* Because It Has No Basis in the Facts of This Case.................................................................. 6

    C.     Plaintiff's Damages Model Fails to Satisfy *Comcast* Because It Lacks a Reliable Methodology.......................................................................... 7

IV.    CERTIFICATION SHOULD BE DENIED FOR REASONS BEYOND THE FAILURE OF THE DAMAGES MODEL ................................................... 10

V.     CONCLUSION................................................................................................. 12

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT NNA'S SUPP. OPP. TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

ACTIVE.121986090.06

- ii -

CASE NO.: 5:16-cv-05591-LHK (SVKx)

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4

*Algarin v. Maybelline, LLC,*
5
    300 F.R.D. 444 (S.D. Cal. 2014) ...................................................................... 8

6

*Bruton v. Gerber Prods. Co.,*
7
    2018 WL 1009257 (N.D. Cal. Feb. 13, 2018) .................................................. 4, 5

*Comcast Corp. v. Behrend,*
8
    569 U.S. 27 (2013) .............................................................................. *passim*

9

*Davidson v. Apple, Inc.,*
10
    2018 WL 2325426 (N.D. Cal. May 18, 2018) ...................................................... 6

11

*Davidson v. Apple, Inc.,*
    2019 WL 2548460 (N.D. Cal. June 20, 2019) ..................................................... 8
12

13

*DiDonato v. Insys Therapeutics, Inc.,*
    333 F.R.D. 427 (D. Ariz. 2019) ..................................................................... 10

14

*Doyle v. Chrysler Group, LLC,*
15
    663 F. App'x 576 (9th Cir. 2016) ...................................................................... 6

16

*Ellis v. Costco Wholesale Corp.,*
    657 F. 3d 970 (9th Cir. 2011) .......................................................................... 5
17

18

*Grace v. Apple Inc.,*
    2019 WL 3944988 (N.D. Cal. Aug. 21, 2019) ..................................................... 5

19

*Krueger v. Wyeth Inc.,*
20
    396 F. Supp. 3d 931 (S.D. Cal. 2019) .............................................................. 5

21

*Leyva v. Medline Indus. Inc.,*
    716 F.3d 510 (9th Cir. 2013) .......................................................................... 4
22

*Makaeff v. Trump Univ., LLC,*
23
    309 F.R.D. 631 (S.D. Cal. 2015) .................................................................... 4

24

*Maldonado v. Apple, Inc.,*
25
    333 F.R.D. 175 (N.D. Cal. 2019) ................................................................... 10

26

*Mullins v. Premier Nutrition Corp.,*
    178 F. Supp. 3d 867, 898-99 (N.D. Cal. 2016) .................................................. 4
27

28

*In re MyFord Touch Consumer Litig.,*
    2016 WL 7734558 (N.D. Cal. Sept. 14, 2016) .................................................. 6

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT NNA'S SUPP. OPP. TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
ACTIVE.121986090.06

- iii -

CASE NO.: 5:16-cv-05591-LHK (SVKx)

*Nguyen v. Nissan North America, Inc.*,
　932 F.3d 811 (9th Cir. 2019) .................................................................................. *passim*

*Philips v. Ford Motor Co.*,
　2016 WL 7428810 (N.D. Cal. Dec. 22, 2016) ................................................................ 7, 8

*In re POM Wonderful LLC Mktg. and Sales Practices Litig.*,
　2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ...................................................................... 5

*Pulaski & Middleman, LLC v. Google, Inc.*,
　802 F.3d 979 (9th Cir. 2015) ..............................................................................2, 3, 9, 10

*Victorino v. FCA US LLC*,
　326 F.R.D. 282 (S.D. Cal. 2018) .......................................................................................... 10

*Waymo LLC v. Uber Techs., Inc.*,
　2017 WL 5148390 (N.D. Cal. Nov. 6, 2017) ...................................................................... 10

*Zakaria v. Gerber Products Co.*,
　755 F. App'x 623 (9th Cir. 2018) ...............................................................................5, 6, 8, 9

**STATUTES, RULES & REGULATIONS**

Fed. R. Civ. P. 23........................................................................................................................ 4

Fed. R. Civ. P. 23(b)(3)............................................................................................................... 1

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT NNA'S SUPP. OPP. TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
ACTIVE.121986090.06

- iv -

CASE NO.: 5:16-cv-05591-LHK (SVKx)

1    Defendant Nissan North America, Inc. ("NNA") submits this Supplemental Opposition

2    pursuant to the Court's December 18, 2019 Order (ECF No. 121).

3    **I.    INTRODUCTION**

4         The Court of Appeals' Opinion does not alter the ultimate outcome on Plaintiff's Motion

5    for Certification.  It should be denied for numerous reasons not addressed by the Court of Appeals,

6    including the failure of Plaintiff's expert to present any evidence to tether his calculations to any

7    *facts* in the case and to employ a reliable methodology to tie the cost of repair to a vehicle valuation

8    at the point of sale.  Both are necessary to comply with the Supreme Court's decision in *Comcast*

9    *Corp. v. Behrend*, 569 U.S. 27 (2013).

10        Under *Comcast*, a damages model must meet three criteria to demonstrate predominance:

11   (1) notional alignment between the damages claim and the liability theory; (2) consistency with the

12   facts of the case; and (3) reliability as a metric for assessing damages.  In its initial Opposition to

13   Plaintiff's Motion for Certification ("Opposition") (ECF No. 76), NNA challenged Plaintiff's

14   damages model on all of these grounds.  *Id.* at 18-23.  In *Nguyen v. Nissan North America, Inc.*,

15   932 F.3d 811 (9th Cir. 2019), the Court of Appeals reversed this Court's Order Denying

16   Certification (ECF No. 97) ("Order") because it believed this Court had "mischaracterized

17   Plaintiff's theory as being centered on performance issues," and focused "on potential post-

18   purchase value."  *Id.* at 819-20.  Based on this view, the Court of Appeals held that Plaintiff's

19   proposed model aligned with Plaintiff's theory of liability—the first of the criteria above—and

20   remanded for further proceedings.  *Id.* at 814 ("Plaintiff's proposed damages model is consistent

21   with his theory of liability.").  The Court of Appeals' Opinion did not address NNA's other

22   challenges to the model.[1]

23        Both of the two remaining *Comcast* factors preclude certification of the putative class.

24   Plaintiff's expert offered no evidence to satisfy either factor.  He offered no expert opinion at all

25   that repair cost was a proxy for value.  He just "assumed" that cost of repair could be a proxy for

26   _____

27   [1] Plaintiff's assertion that the Court of Appeals "has already found that Plaintiff's damages model
     satisfies predominance under Rule 23(b)(3)" is therefore incorrect.  In fact, NNA's Motion to

28   Exclude Report of Steven Boyles (ECF No. 81) was pending and had not been ruled upon at the
     time the Order Denying Certification was issued.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT NNA'S SUPP. OPP. TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION          - 1 -          CASE NO.: 5:16-cv-05591-LHK (SVKx)
ACTIVE.121986090.06

1   the benefit of the bargain.  He did not tether his calculation of the cost of a repair to any actual *facts*

2   concerning the preferences, valuations, or expectations of the putative class.  And he employed no

3   methodology to evaluate whether repair cost could be a proxy in this case.

4       Plaintiff's failure to meet those requirements—along with the numerous other deficiencies

5   highlighted in NNA's Opposition and summarized in part IV—demonstrate why certification

6   remains improper.

7   **II.    THE SCOPE OF THIS COURT'S ORDER AND THE COURT OF APPEALS'**
        **OPINION**
8
        **A.    This Court's Certification Order Was Focused on Whether a Cost of Repair**
9            **Model Could be Used Without Showing that a Defective CSC Had No Value.**

10      This Court's Order focused on a particular aspect of Plaintiff's damages theory and its

11  relation to the average-cost-of-repair calculation made by Plaintiff's accountant, Stephen Boyles.

12  This Court acknowledged that, under the benefit-of-the-bargain theory, damages are "the difference

13  between the value Nissan represented and the value the class members received, measured at the

14  time of purchase."  Order, p. 9, citing *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979,

15  989 (9th Cir. 2015).  This Court's criticism of Plaintiff's model centered on the failure of the

16  average-cost-of-repair model to account for the value of the clutch slave cylinder ("CSC") that class

17  members received at the time of purchase.  The Court reasoned that an average-cost-of-repair could

18  satisfy the benefit-of-the-bargain measure only where consumers would have viewed the allegedly

19  defective part was valueless.  If the class members derived value from the part, the average-cost-

20  of-repair model would inappropriately compensate the class, giving them the benefit of the bargain

21  *and* the value of the allegedly defective part.  *Id.*

22      This Court determined that Boyles's model, despite its label as benefit-of-the-bargain,

23  suffered from the same flaw as many of the models rejected in cases where the claimants sought a

24  full refund of the purchase price.  "It presumes purchasers would deem the defective CSC valueless.

25  Absent any justification for this assumption, the benefit-of-the-bargain damages model fails to

26  'measure only those damages attributable to' Plaintiff's theory of liability because it would award

27  damages equal to the value of the non-defective CSC (the benefit of the bargain) without deducting

28

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT NNA'S SUPP. OPP. TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
ACTIVE.121986090.06

- 2 -

CASE NO.: 5:16-cv-05591-LHK (SVKx)

1    the value of the defective CSC." *Id.* at 12.  Consequently, the model did not satisfy *Comcast.*

2         **B.    The Court of Appeals' Opinion Was Limited to Whether Plaintiff's Damages Model Was Consistent with Plaintiff's Theory of Loss.**

3

4         In reversing, Court of Appeals focused in on a particular statement by this Court in its order

5    denying certification:

6         Under the proposed benefit of the bargain model, damages are the difference
      between the value Nissan represented and the value the class members received,
7         measure at the time of purchase.  However, the difference between the value
      represented and the value received only equals the cost to replace the defective CSC
8         *if* consumers would have deemed the defective part valueless.

9    *Nguyen*, 932 F.3d at 814 (quoting from Order, p. 9).  It reversed because it read the Order as

10   focusing "on potential post-purchase value" relying in large part on the above statement and this

11   Court's discussion of post-purchase value received by Plaintiff.[2]  *Id.*

12        The Court of Appeals held that "plaintiff's proposed damages model is consistent with his

13   theory of liability."  *Nguyen*, 932 F.3d at 814.  It first explained that both of Plaintiff's claims

14   (violation of the CLRA and breach of implied warranty) permit recovery under a benefit-of-the-

15   bargain damages theory.  *Id.* at 817-18.  The Court then turned to Plaintiff's model to ascertain

16   whether his description of it aligned with the benefit-of-the-bargain paradigm.   The Court

17   concluded that it did, because "under [Plaintiff's] theory, the *defect* exists – and must be remedied

18   – whether or not the *symptoms* have manifested yet."  *Id.* at 819.  Put differently, the Court held

19   that Plaintiff's theory sought to measure the difference between a consumer's expectations at the

20   point of sale and the value of what the consumer actually received at the point of sale.[3]

21

22   [2] NNA believes the Court of Appeals misunderstood this Court's reference to evidence of post-sale
     performance given that this Court made clear that benefit of the bargain damages were assessed at
23   the time of sale.  The reference to post-sale value was merely a rhetorical illustration of the fallacy
     of Boyles's unsupported "assumption."  The evidence in the record of Plaintiff's experience with
24   his vehicle, demonstrating that the allegedly defective clutch had some inherent value, in context,
     merely explained how thoroughly misguided Plaintiff's naked assumption was.  Regardless, the
25   fact remains that Boyles only made an assumption and rendered no opinion on value.

26   [3] The Court of Appeals also faulted the Order for supposedly focusing on "potential post-purchase
     value" rather than value evaluated at the time of sale as required by *Pulaski*.  *Id.* at 820.  Despite
27   the extended discussion in the Opinion, the basic idea that, under the CLRA at least, a claimant
     could recover value differential damages measured at the point of sale has not been disputed in this
28   case.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT NNA'S SUPP. OPP. TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION               - 3 -              CASE NO.: 5:16-cv-05591-LHK (SVKx)
ACTIVE.121986090.06

Having concluded that this Court "mischaracterized Plaintiff's theory as being centered on performance issues" and focused "on potential post-purchase value," the Court of Appeals set aside denial of certification and remanded the case for further proceedings. *Id*. at 819-20, 822.

### III.  FLAWS IN THE DAMAGES MODEL NOT ADDRESSED BY THE COURT OF APPEALS PRECLUDE PLAINTIFF FROM SATISFYING PREDOMINANCE

#### A.  *Comcast* Review for Predominance Requires Consideration of Three Elements: Theoretical Fit, Factual Congruence and Methodological Reliability.

A damages model needs three characteristics to meet the requirement of the Supreme Court's *Comcast* decision on predominance:   (1) theoretical consistency between Plaintiff's liability theory and the method for computing damages if that theory of liability is accepted by the trier of fact;[4] (2) an affirmative showing that the damages model is consistent not just with Plaintiff's *theory* of the case but is reasonable in light of the *actual facts* of the case before the court;[5] and (3) reliability of the proposed model as a metric for assessing damages.[6]  The sole issue determined by the Court of Appeals was notional consistency.

***Factual Congruence***.   Rule 23 requires a *valid*, *evidence-based* damages model—one supported by evidentiary proof, not mere theories, allegations, or speculation—and the Supreme Court has emphasized that scrutiny of the model must be "rigorous." *Comcast*, 569 U.S. at 33-34. A damages model must not only *purport* to measure damages consistent with Plaintiff's theory, it must do so in a reliable way that is consistent with the factual background of the case and the requirements of the applicable state substantive law.

For example, a full refund model is *potentially* congruent with the benefit-of-the-bargain measure of damages, but only under a certain set of facts—where the product acquired has no value. Where the facts permit an inference that a product attained had no value to consumers at the time of purchase, a refund of the purchase price may serve as a basis for calculating damages under applicable law. *See Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 639 (S.D. Cal. 2015); *Mullins*

---

[4] *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

[5] *Comcast*, 569 U.S. at 35.

[6] *Bruton v. Gerber Prods. Co.*, 2018 WL 1009257, at *11 (N.D. Cal. Feb. 13, 2018) (rejecting regression model that lacked a reliable means of comparing the product with and without the challenged label statements and failed to account for independent variables).

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT NNA'S SUPP. OPP. TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
ACTIVE.121986090.06

- 4 -

CASE NO.: 5:16-cv-05591-LHK (SVKx)

*v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867,898-99 (N.D. Cal. 2016).  But, it depends on the facts presented.  Where the claimant fails to show that the product had no value, courts have rejected the model.  *See Krueger v. Wyeth Inc.*, 396 F. Supp. 3d 931, 948-50 (S.D. Cal. 2019), *Bruton v. Gerber Prods. Co.*, 2018 WL 1009257, at *9 (N.D. Cal. Feb. 13, 2018); *In re POM Wonderful LLC Mktg. and Sales Practices Litig.*, 2014 WL 1225184, at *2 (C.D. Cal. Mar. 25, 2014).

In some cases it may be appropriate for benefit of the bargain to be measured indirectly.  For instance, in *Grace v. Apple Inc.*, 2019 WL 3944988, at *12 (N.D. Cal. Aug. 21, 2019), this Court cited *Nguyen* for the proposition that a plaintiff need not directly measure benefit of the bargain damages to advance a suitable restitution model.  But the expert in *Grace* used an actual real-world event—the difference in the resale price of the phones in question after the failure of the FaceTime feature—as a justifiable proxy for difference in value.  By contrast, Boyles offered nothing to support that his proposed proxy bears any relation to the real-world behavior of markets.

***Reliability.***  The methodology used to derive the alleged classwide damages also must be reasonably reliable.  See *Ellis v. Costco Wholesale Corp.*, 657 F. 3d 970, 982 (9th Cir. 2011) (*Daubert* evidentiary requirements apply at the class certification stage).  Where, as here, damages are based on the theory that non-disclosure of the alleged defect permitted the defendant to charge a price premium to all purchasers, the means of measuring that premium must accurately reflect the market forces that comprise the product's price.

In *Zakaria v. Gerber Products Co.*, 755 F. App'x 623 (9th Cir. 2018), the Ninth Circuit held the district court did not abuse its discretion in decertifying a class because the conjoint analysis plaintiff relied upon did not accurately reflect market realities even after the district court had determined that the damages theory matched the plaintiffs' theory of liability:

> Under California consumer protection laws, plaintiffs can measure classwide damages using methods that evaluate what a consumer would have been willing to pay for the product had it been labeled accurately.  Such methods must, however, reflect supply-side considerations and market place realities that would affect product pricing.  Accordingly, the district court's subsequent holding that Dr. Howlett's conjoint analysis was inadequate for measuring classwide damages was not illogical, implausible or without support on the record.  Dr. Howlett's conjoint analysis did not reflect market realities and prices for infant formula products.  Dr. Howlett's conjoint analysis showed only how much consumers subjectively valued the 1st and only Seal, not what had occurred to the actual market price of Good Start Gentle with or without the label.  Thus, regardless of whether consumers were

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT NNA'S SUPP. OPP. TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
ACTIVE.121986090.06

- 5 -

CASE NO.: 5:16-cv-05591-LHK (SVKx)

1
2
willing to pay a higher price for the labeled product, the expert's opinion did not contain any evidence that such higher price was actually paid; hence no evidence of restitution or actual damages was proffered.

3
*Id.* at 624-25.

4
5
6
7
8
9
10
Likewise, in *Doyle v. Chrysler Group, LLC*, 663 F. App'x 576 (9th Cir. 2016), the Court of Appeals reversed a certification order where the claimant failed to present a reliable model to measure the "partial reimbursement" due to class members who purchased an allegedly defective replacement "window regulator."   *Id.* at 579.   The problem in *Doyle* was not that partial reimbursement was theoretically inconsistent with plaintiffs' theory; indeed, it was consistent, but that "Doyle has not offered a model for determining what percentage of the purchase price the reimbursement should be." *Id.*

11
12
13
14
15
16
17
18
19
20
21
In *Davidson v. Apple, Inc.*, 2018 WL 2325426 (N.D. Cal. May 18, 2018), this Court denied certification where plaintiffs sought to use conjoint analysis to establish that an alleged touchscreen defect in certain cellphones caused the plaintiffs to overpay for the phones.   The challenged analysis assumed that all purchasers would experience the defect where the evidence showed that only about 5.6% of the phones.   *Id.* at *22.   In addition, the analysis related to a generic defect in phones rather than one affecting the touchscreen.   *Id.* at *23.   The problem with the conjoint analysis in *Davidson* was not that it was inconsistent with the plaintiffs' theory of the damages sustained by the class. The problem was that *Comcast* requires more: the damages model must provide a plausible measure of actual loss.   If it does not, the model does not comport with the requirement that the model measure only those damages recoverable by the class members.   *Id.* at *21 (citing *In re MyFord Touch Consumer Litig.*, 2016 WL 7734558, at *15 (N.D. Cal. Sept. 14, 2016)).

22
23
**B.**     **Plaintiff's Damages Model Fails to Satisfy *Comcast* Because It Has No Basis in the Facts of This Case.**

24
25
26
27
NNA's attack on the Plaintiff's model was far broader than the grounds considered by the Court of Appeals.   NNA also attacked the factual basis of Plaintiff's proposal to use average-cost-of-repair as a way of measuring the alleged loss-of-bargain.   NNA showed that Boyles did nothing more than calculate the average cost of a hypothetical "repair."[7]   He did not offer an opinion backed

28
_____
[7] While Boyles and, subsequently, the parties have sometimes referred to the "average-cost-of-

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT NNA'S SUPP. OPP. TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION     - 6 -     CASE NO.: 5:16-CV-05591-LHK (SVKx)

ACTIVE.121986090.06

with evidence that the average cost of this so-called "repair" properly measured the value of the subject vehicles with and without a disclosure of the alleged defect. Nor did he perform a regression analysis or consumer survey or proffer any other method for estimating the difference in value at point of sale. In fact, he applied no economic principles or econometric tools at all. He simply made an "assumption" that average repair cost would proxy for the difference in value between a vehicle with and without the disclosure of the alleged defect.

A model lacking a connection to the actual facts of the case is, by definition, insufficient. *Philips v. Ford Motor Co.*, 2016 WL 7428810, at *21 (N.D. Cal. Dec. 22, 2016) (rejecting damages model where the proffered expert had no factual support for the base assumption that prospective consumers would assign zero value to allegedly defective entertainment system), *aff'd*, 726 F. App'x 608 (9th Cir. 2018); *see also* Order, p. 10 ("Boyles nowhere states that this is his premise, or justifies making such an assumption—the issue is simply not addressed."). Boyles's is such a model, and certification should be denied accordingly.

### C.     Plaintiff's Damages Model Fails to Satisfy *Comcast* Because It Lacks a Reliable Methodology.

Boyles's model likewise lacks the reliable methodology that *Comcast* demands. Indeed, he utilizes no discernible methodology for assigning his chosen valuation (average cost of repair) to *all* members of the putative class, regardless of the different circumstances of particular classes of purchasers that may have altered their point-of-sale expectations and valuations.

For example, clutches in manual transmission vehicles are well-understood to be wear parts that need to be replaced at some point.[8] A purchaser who, at the time of purchase, expected to engage in long-distance, high-speed driving might have expected or valued a longer lifespan on his clutch assembly differently than the proverbial Sunday driver who expected to use the car for short trips requiring frequent shifts, both of whom may have valued their clutch assembly different than

---

repair," the hypothetical repair does not exist in the real world. That is, there are no all-aluminum CSCs designed by Nissan for the vehicles at issue; the "repair" requires first that the CSC be re-designed.

[8] ECF No. 76-3, p. 9 (Stapleford Deposition, pp. 43-44).

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT NNA'S SUPP. OPP. TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
ACTIVE.121986090.06

- 7 -

CASE NO.: 5:16-cv-05591-LHK (SVKx)

a very aggressive driver or one in a hilly city (say, San Francisco).  Or all of these drivers (and the other groups of drivers that one can imagine) might value the disputed clutch assembly exactly the same.  We simply do not know—and that is the ultimate point:  Mr. Boyles conducted no assessment to ascertain consumer expectations nor did he even propose a methodology for doing so—much less a model that takes into account *both* consumer expectations and various supply-side factors that would be necessary to create a rational, reasonable mechanism for gauging the likely purchase price for one of the Class Vehicles in a world where the supposed defect was fully disclosed at the point of sale.  Instead, he simply assumes that the amount of the discount of a knowledgeable consumer would be the average repair amount without providing any empirical support or economics theory to support his claim.  *See Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 459-61 (S.D. Cal. 2014) (denying certification, stating "Plaintiffs' theory does not even attempt to isolate the amount attributed solely to the alleged misrepresentation.").

As *Zakaria* demonstrates, an economic damages model purporting to show how omitted information would have affected the price of a product must provide some assessment of how real world markets would react to the information.  Consequently, a damages model that purports to assess the value of a product to a consumer at the time of purchase certainly must assess how much a fully informed purchaser would pay (e.g., one who knew the odds the malfunction would ever occur,[9] the mileage at which it would be expected to occur if it does at all, whether it could be expected to occur with normal driving or only with a very aggressive racing style, likelihood that it will be covered under warranty, etc.).  *Davidson v. Apple, Inc.*, 2019 WL 2548460, at *14 (N.D. Cal. June 20, 2019) (proposed models failed to account for fact that defect manifests in only 5-6% of products, might be covered by warranty, etc.); *Philips*, 2016 WL 7428810, at *21 (model failed to account for 1% failure rate).  NNA's expert also explained that even consumers who took repair costs into account would factor in the *probability* of incurring such costs.[10]  Imputing knowledge of the *expected* performance of the clutch system to such a purchaser is not only consistent with

---

[9] Boyles's analysis showed only a small percentage of vehicles (4%) experienced a heat-related clutch problem.  ECF No. 76-6, pp. 3-4 (Boyles Deposition, pp. 16-20).

[10] ECF No. 76-8 (Prowse Report) ¶¶ 18, 22.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT NNA'S SUPP. OPP. TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
ACTIVE.121986090.06

- 8 -

CASE NO.: 5:16-cv-05591-LHK (SVKx)

*Pulaski*, it is mandated by it.  Boyles did none of this and just assumed the average cost of repair model was appropriate.[11]

NNA presented evidence that real-world consumers vary in their expectations of vehicle performance, especially with respect to expected repairs and that the extent to which consumers would respond to omitted information depends on numerous factors.  *See* Expert Report of Stephen D. Prowse, ECF No. 76-8.  Taking just one example, the average cost of repair model—without offering any explanation or justification—treats lessees identically to owners even though lessees have entirely different expectations regarding product longevity and have no concern for trade-in value.  NNA Cert. Opp. pp. 22-23.  Moreover, some consumers likely had information about clutch issues before purchasing their vehicles.  NNA Cert. Opp. p. 22.  These knowledgeable consumers had already "priced in" the alleged defect and were not damaged by the omission.

And of course, Boyles did nothing to evaluate the supply side of the price equation.  Even assuming that Boyles's analysis accurately depicted how disclosure of the alleged defect would have affected *consumers' perceptions* regarding an appropriate purchase price for one of the Class Vehicles, it does nothing to quantify whether and to what extent NNA would have been willing to sell vehicles at that price and how NNA's reaction would have affected the actual purchase price of a Class Vehicle in the "but for" world.  Simply put, Plaintiff's average-repair-cost model does not meet the requirements set forth by the Ninth Circuit in *Zakaria*, discussed above.

NNA also showed that Boyles's opinion regarding the actual cost of the repair was unreliable.  From only two invoices (provided from Plaintiff's counsel) and NNA warranty repair records (that Boyles admitted did not represent the aftermarket part replacement that Plaintiff's liability expert advocated), Boyles purported to perform a calculation that would provide valid class damages for 34,000 vehicles of seven different model types spanning a period from 2007 to the present.  ECF No. 81 at pp. 9-10.  Boyles provided no rationale for assuming that repair costs would

---

[11] While some cases may exist where the average-cost-of-repair provides an appropriate proxy for the loss of bargain—where the product does not work without the repair, for instance—this does not mean that average-cost-for-repair is a universal damages model applicable to any claim that allows benefit-of-the-bargain damages.  Certainly, the Court of Appeals made no such holding in its opinion.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT NNA'S SUPP. OPP. TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION                   - 9 -                CASE NO.: 5:16-cv-05591-LHK (SVKx)

ACTIVE.121986090.06

1    remain constant over the entire period or would not vary by model or, critically, that his calculation

2    had any relation to the replacement remedy that Plaintiff asserts is necessary to restore the bargain.

3        The reliability of the Boyles analysis was not addressed by the Court of Appeals.  Moreover,

4    nothing in the Opinion undermines NNA's reliability criticisms of the Boyles calculation as a

5    damages model.  NNA and its expert have assumed that the economic loss is measured at the point

6    of sale as *Pulaski* requires.  The evidence in the record and the prevailing law confirm that the

7    Boyles calculation is inadequate for a classwide damages model that complies with *Comcast* or

8    even that the model meets common standards for methodological reliability used by the Ninth

9    Circuit.  Indeed, NNA's *Daubert* challenge to Plaintiff's expert should be granted on that basis.[12]

10       Plaintiff refers to a number of district court opinions that have cited to the Court of Appeals'

11   Opinion in this case.  Some of the cases merely refer to uncontroversial general statements in the

12   Opinion such as "individualized damages issues do not alone defeat certification."  *See DiDonato*

13   *v. Insys Therapeutics, Inc.*, 333 F.R.D. 427, 446 (D. Ariz. 2019).  Others focused entirely on the

14   theoretical fit between the damages model and the claimant's theory of loss.  *See e.g. Maldonado*

15   *v. Apple, Inc.*, 333 F.R.D. 175, 191-92 (N.D. Cal. 2019).  None of the cases suggest that theoretical

16   "fit" alone is sufficient under *Comcast* or that indictments of a damages model based on lack of

17   factual basis or methodological soundness are somehow irrelevant.[13]

18   **IV.   CERTIFICATION SHOULD BE DENIED FOR REASONS BEYOND THE**
19         **FAILURE OF THE DAMAGES MODEL**

20       NNA's Opposition (ECF No. 76) was not limited to attacking Plaintiff's damages model.

21   There are numerous other grounds on which certification should be denied, including the following:

22   • The question of defect is not a common classwide issue because the proposed class did not

23       purchase the same vehicle (class included sports car and sedans, some use racing fluid and

24       others do not) and even within the same model not all vehicles had the same CSC given

---

[12] In its Motion to Exclude Boyles's opinion (ECF No. 81), NNA showed that the simplistic arithmetic of the Boyles model is not even a proper subject of expert testimony.  *Id.* p. 7, *citing, inter alia, Waymo LLC v. Uber Techs., Inc.*, 2017 WL 5148390, at *6 (N.D. Cal. Nov. 6, 2017).

[13] Plaintiff cites an opinion from another district court, *Victorino v. FCA US LLC*, 326 F.R.D. 282 (S.D. Cal. 2018), but there was no detailed discussion of the issues presented by NNA here.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT NNA'S SUPP. OPP. TO PLAINTIFF'S          - 10 -          CASE NO.: 5:16-CV-05591-LHK (SVKx)
MOTION FOR CLASS CERTIFICATION

ACTIVE.121986090.06

1    manufacturing process changes made over the years.  The trier of fact could determine that

2    the CSC, as designed, is appropriate for use in some vehicles or appropriate for use with the

3    racing clutch fluid used in some models.[14]  *See* Opposition at 5:9-6:8, 7:16-8:21

4    •    Plaintiff has not shown that NNA's knowledge of the alleged defect is common to the class.

5    Knowledge could only be a common issue if Plaintiff presented evidence of NNA's

6    knowledge of the defect before the first class vehicle was sold in 2007, but even Plaintiff's

7    expert concedes there is no evidence of knowledge of a heat issue before 2012.[15]  *See*

8    Opposition at 8:23-10:2.

9    •    With regard to predominance, NNA explained that the implied warranty claim would

10    require an individual determination of whether the vehicle of each class member was fit for

11    the ordinary purpose of providing transportation.  *See* Opposition at 11:18-14:15.

12    •    The CLRA claim raises a host of individual issues beyond the lack of a valid classwide

13    defect and knowledge determination.  Notably, causation and materiality would have to be

14    determined on an individual basis, particularly in view of the evidence that some class

15    members likely had pre-purchase knowledge of clutch issues, the vast majority of the

16    putative class have never and will never experience a clutch-to-the-floor issue, and there is

17    no evidence of any actual accidents that have ever been attributed to the clutch in the 14

18    years since the class vehicles were introduced.  *See* Opposition at 15:1-16:23.

19    •    Predominance is also undermined by NNA's limitations defense, applicable to many of the

20    class members where the class period reaches back to the 2007 model year, which was

21    introduced in 2006.  Class members purchased their vehicles as long ago as 2006—10 years

22    before this suit was filed.  As the statute of limitations under the CLRA is three years,

23

24    [14] The Court of Appeals noted that "whether the clutch was actually defective, and whether
     Nissan knew of the alleged defect are merits inquiries . . . ." 932 F.3d at 821.  The issue raised
25    here for the predominance analysis is not whether the CSC is defective, but whether under the
     facts Plaintiff has shown that the question must be answered the same for all class members.  If,
26    as here, it may not, then defect cannot be a common issue that predominates.

27    [15] Likewise, the question is not whether NNA had knowledge, which would be a merits issue.
     The question is whether Plaintiff has demonstrated that knowledge is a common issue that
28    predominates but their own evidence clearly shows that it cannot be.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT NNA'S SUPP. OPP. TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION
ACTIVE.121986090.06

- 11 -

CASE NO.: 5:16-cv-05591-LHK (SVKx)

1    resolution of the defense as to that claim will require an inquiry into whether each putative

2    class member had "inquiry notice" of the clutch issue.  The issues of time and manner of

3    discovery, as well as the inability to have made the discovery earlier, are necessarily

4    individual issues.  *See* Opposition at 16:24-18:24.

5    •   NNA also demonstrated that the Plaintiff's proposed class would lead to impermissible

6        claims splitting.  Plaintiff proposes to limit the proposed class to a point-of-sale remedial

7        measure, which would lead to a bar of claims for out-of-pocket loss by those class members

8        who could show demonstrable injury.  This issue raises the specter of intra-class conflict

9        and indicates that Plaintiff is not an adequate representative for the entire class.  *See*

10       Opposition at 10:3-11:8.

11   •   Given all of these issues, it is also significant that Plaintiff never presented any trial plan,

12       including a proposed charge, showing how this case can proceed as a class trial that can

13       resolve issues for the entire class in one stroke without any common issues being

14       overwhelmed by individual issues.

15   •   The numerous individual issues pose such substantial manageability problems such that a

16       class action cannot be regarded as a superior form of adjudication, especially in light of the

17       special features of California law that make individual litigation viable in automotive cases.

18   **V.    CONCLUSION**

19       For the foregoing reasons, as well as those set forth in NNA's Opposition to Plaintiff's

20   Motion for Class Certification and NNA's motion to exclude Plaintiff's expert Boyles, the Court

21   should deny Plaintiff's Motion for Class Certification.

22   Dated:  March 5, 2020                      FAEGRE DRINKER BIDDLE & REATH LLP

24                                              By: /s/ Paul J. Riehle
25                                                  Paul J. Riehle
                                                    E. Paul Cauley Jr. (*pro hac vice*)
                                                    S. Vance Wittie (*pro hac vice*)
26                                                  Matthew J. Adler

27                                              Attorneys for Defendant
                                                NISSAN NORTH AMERICA, INC.
28

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT NNA'S SUPP. OPP. TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
ACTIVE.121986090.06    - 12 -    CASE NO.: 5:16-cv-05591-LHK (SVKx)