1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

HUU NGUYEN,

Plaintiff,

v.

NISSAN NORTH AMERICA, INC.,

Defendant.

Case No. 16-CV-05591-LHK

**ORDER DENYING MOTION FOR CLASS CERTIFICATION**

Re: Dkt. No. 63

Plaintiff Huu Nguyen ("Plaintiff") brings the instant suit against Defendant Nissan North America, Inc. ("Nissan") for causes of action arising out of Nissan's allegedly deceptive sale of vehicles containing a defective manual transmission. Plaintiff moves to certify two classes of individuals who purchased vehicles containing the defective transmission. In connection with the motion for class certification, Plaintiff and Nissan each filed a *Daubert* motion to exclude expert evidence. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court DENIES Plaintiff's motion for class certification. As a result, the Court DENIES as moot the *Daubert* motions.

I.      **BACKGROUND**

        A.      **Factual Background**

1

United States District Court
Northern District of California

1   Plaintiff seeks to represent a class of consumers who purchased or leased any Nissan

2   vehicle equipped with the FS6R31A manual transmission.  ECF No. 35 ("FAC") ¶ 1.  These

3   vehicles include the Nissan 350Z, model years 2007–2009; the Nissan 370Z, model years 2009–

4   2015; the Infiniti G35, model years 2007–2008; the Infiniti G37, model years 2008–2014; and the

5   Infiniti Q60 (hereafter, "Class Vehicles").  *Id.*

6   **1.      The Clutch Assembly Defect**

7   The FS6R31A manual transmission in Class Vehicles uses a hydraulic clutch system.  *Id.* ¶

8   8.  In a hydraulic clutch system, when the driver depresses the clutch pedal, "fluid pushes from the

9   clutch master cylinder to the slave cylinder, developing hydraulic pressure and ultimately

10   disconnecting the transmission from the engine via the clutch disc to allow for smooth gear

11   shifts."  *Id.*  The FS6R31A manual transmission utilizes a concentric (or internal) slave cylinder

12   ("CSC"), as opposed to an external slave cylinder.  *Id.*  The CSC is "placed inside the

13   [bellhousing] unit along with the clutch disc, pressure plate, and flywheel."  *Id.*

14   Plaintiff alleges that the FS6R31A manual transmission in Class Vehicles suffers from "a

15   design flaw in the slave cylinder assembly."  *Id.* ¶ 12.  Specifically, Plaintiff alleges that the CSC

16   is composed of materials, including plastic, which do not effectively transfer heat.  Declaration of

17   Michael Stapleford ("Stapleford Decl.") at 7, 19; *see also* Declaration of Karen Wallace ("Wallace

18   Decl."), Ex. 1, Deposition of James Blenkarn ("Blenkarn Dep.") at 77:9–19.  This can lead the

19   clutch system's hydraulic fluid to begin boiling as it circulates through the CSC.  Stapleford Decl.

20   at 6–7, 18.  As the hydraulic fluid boils, air bubbles form and collapse, which causes the fluid

21   pressure to drop suddenly and prevents the CSC from working properly.  Stapleford Decl. at 7;

22   Blenkarn Dep. at 65:15–66:3.  Moreover, as the air bubbles form and collapse, the imploding

23   effect of the liquid can erode solid surfaces and release debris into the hydraulic fluid.  Stapleford

24   Decl. at 7.

25   This alleged design flaw in the Class Vehicles' CSCs causes "the clutch to lose hydraulic

26   pressure and fail to engage/disengage gears."  FAC ¶ 10.  This "causes unsafe conditions,

27   including drivers' inability to shift gears or maneuver the clutch pedal in the Class Vehicles,

28

Case No. 16-CV-05591-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

1    thereby rendering the vehicles unable to accelerate and decelerate, often while the vehicles are

2    already in motion." *Id.*  Plaintiff at times describes this issue using the shorthand of a "sticky

3    clutch."  *See, e.g.*, ECF No. 63 at 7, 9.

### 2.    Nissan's Knowledge of the Defect

5          According to Plaintiff, Nissan "knew or should have known" about the CSC defect

6    "[d]ating back to at least 2008."  *Id.* ¶ 15, 49.  Plaintiff alleges that consumers filed complaints

7    with the National Highway Traffic Safety Administration ("NHTSA") regarding the 2007 Nissan

8    350Z as early as June 2007, and that beginning at least in 2008 Nissan began investigating clutch

9    pedal malfunctions in Class Vehicles.  FAC ¶¶ 51–52 (excerpting consumers' complaints to

10   NHTSA about clutch malfunctions from 2007 onwards); Wallace Decl., Ex. 9 (email exchange

11   suggesting investigation into clutch problems beginning in 2008); *see* Exs. 7–8 (internal reports

12   from 2009 onwards concerning Nissan's investigation clutch problems).

13         Nissan responded to complaints about the Class Vehicles' clutches by exchanging the

14   hydraulic fluid previously used in newly manufactured Class Vehicles to a hydraulic fluid

15   formulated for higher temperatures, and by issuing a series of service bulletins instructing

16   technicians to do the same for previous model years.  Wallace Decl., Exs. 2–3, 14–15 (technical

17   service bulletins); Blenkarn Dep. at 45:9–17; 65:10–14.  The service bulletins required technicians

18   to first verify that the CSC was not leaking, the only other root cause of the clutch problems

19   suggested.  *See* Blenkarn Dep. at 66:8–24; Wallace Decl., Ex. 14 (technical service bulletin).

20   Plaintiff alleges that this confirmed for Nissan that the problem was heat-related.  Mot. at 10; *see*

21   Blenkarn Dep. at 65:10–18 (testifying the hydraulic fluid was changed "[f]or better temperature

22   characteristics" because there was "an issue with DOT 3 [the previous hydraulic fluid] boiling").

23         Plaintiff therefore alleges that "Nissan knew about and concealed the Clutch Assembly

24   Defect present in every Class Vehicle" from Plaintiff and other class members "at the time of sale,

25   lease, and repair and thereafter."  FAC ¶ 24.  "[I]nstead of repairing the defects in the Manual

26   Transmission, Nissan either refused to acknowledge [the defects'] existence or performed repairs

27   that simply masked the defects."  *Id.*

28

3

### 3.     Plaintiff Huu Nguyen

Plaintiff is a California citizen.  *Id.* ¶ 27.  On January 20, 2012, Plaintiff purchased a new 2012 Nissan 370Z vehicle from Stevens Creek Nissan in Santa Clara County, as a college graduation present for his son, Michael Nguyen ("Michael").  *Id.* ¶ 28; Declaration of Michael J. Stortz ("Stortz Decl."), Ex. A, Deposition of Huu Nguyen ("Nguyen Dep.") at 20:7–21:22.  On March 25, 2014, Michael was driving the 370Z on the freeway when the clutch pedal lost pressure and did not return from its depressed position.  *See* Stortz Decl., Ex. B., Deposition of Michael Nguyen ("Michael Dep.") at 28:2–4; 28:20–29:11, 29:5–14.  Michael then took the 370Z to a Nissan dealership, which replaced the CSC at no charge because the vehicle was still under warranty.  *Id.* at 29:22–30:2, 35:22–36:7.  On February 6, 2016, Michael experienced a similar problem.  FAC ¶ 33.  At this point, the 370Z was no longer under warranty.  Michael Dep. at 43:24–45:11.  Michael therefore took the vehicle to Imperial Motor Sports, where the CSC was replaced at a cost of $721.75. FAC ¶ 33.

### B.     Procedural History

#### 1.     Initial Case History

Plaintiff filed a class action complaint against Nissan on September 30, 2016.  ECF No. 1. Plaintiff's original complaint sought to represent all persons in the United States who purchased or leased a 2009–2016 Nissan 370Z.  ECF No. 1, at ¶ 1.  Plaintiff alleged five causes of action against Nissan: (1) violations of California's Consumers Legal Remedies Act ("CLRA"); (2) Violations of California's Unfair Competition Law ("UCL"); (3) Breach of Implied Warranty pursuant to the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"); (4) Breach of Implied Warranty pursuant to the Magnuson-Moss Warranty Act ("Magnusson-Moss Act"); and (5) Unjust Enrichment.  *See* ECF No. 1.

On December 14, 2016, Nissan filed a motion to dismiss, which argued Plaintiff's equitable relief claims should be dismissed because Plaintiff had adequate remedies at law.  ECF No. 19 at 7.  On January 25, 2017, the parties stipulated to allow Plaintiff to file an amended complaint.  ECF No. 32.  The Court granted the parties' stipulation that same day, and the Court

1   denied as moot Nissan's motion to dismiss the original complaint. ECF No. 33.

2       On February 1, 2017, Plaintiff filed the First Amended Complaint ("FAC").  *See* FAC. In

3   the FAC, Plaintiff added the following vehicles to the proposed class: 2007–2009 Nissan 350Z,

4   2007–2008 Infiniti G35, the 2008–2014 Infiniti G37, and the Infiniti Q60.  Plaintiff's FAC also

5   added allegations in support of Plaintiff's claims for equitable relief.  *See id.* at 66–78. Plaintiff's

6   FAC alleged the same five causes of action against Nissan that Plaintiff alleged in the original

7   complaint.

8       On February 22, 2017, Nissan moved to dismiss the FAC's equitable claims.  ECF No. 36.

9   On April 11, 2017, the Court granted Nissan's motion to dismiss the FAC's equitable claims. ECF

10  No. 41.  Specifically, the Court dismissed Plaintiff's UCL claim, Plaintiff's unjust enrichment

11  claim, and Plaintiff's claim for injunctive relief under the CLRA.  *Id.* at 9–10. Thus, Plaintiff was

12  left with damages claims based on Plaintiff's causes of action under the CLRA, the Song-Beverly

13  Act, and the Magnusson-Moss Act. *See id.*

14      On December 15, 2017, Plaintiff filed the instant motion for class certification.[1]  ECF No.

15  63 ("Mot.").  Plaintiff seeks to certify the following proposed classes:

16  • **Class:** All individuals in California who purchased or leased, from an authorized Nissan

17     dealer, a new Nissan vehicle equipped with a FS6R31A manual transmission.

18  • **CLRA Sub-Class:** All members of the Class who are "consumers" within the meaning of

19     California Civil Code § 1761(d).

20  *Id.* at 13.[2] On February 5, 2018, Nissan filed its opposition. ECF No. 76 ("Opp."). On March 2,

21  2018, Plaintiff filed his reply. ECF No. 85 ("Reply").

22      On April 9, 2018, the Court denied Plaintiff's motion for class certification.  ECF No. 97.

23

24  [1] Plaintiffs' motion for class certification contains a notice of motion that was filed and paginated
    separately from the memorandum of points and authorities in support of the motion.  Civil Local

25  Rule 7-2(b) provides that the notice of motion and points and authorities should be contained in
    one document with the same pagination. See Civ. Loc. R. 7-2(b).

26  [2] Plaintiff excludes from the class and subclass "1) Defendant, any entity or division in which
    Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and

27  successors; 2) the Judge to whom this case is assigned and the Judge's staff; and 3) those persons
    who have suffered personal injuries as a result of the facts alleged herein." Mot. at 13 n.5.

28

1    The Court reasoned that Plaintiff's damages model failed to satisfy the requirements set forth by

2    the United States Supreme Court in *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013), and, as

3    such, that Plaintiff had not established predominance of common questions of law or fact, as

4    required for class certification pursuant to Federal Rule of Civil Procedure 23(b)(3).  *Id.* at 12–13.

5    The Court also held that Plaintiff had failed to substantiate Plaintiff's request, in the alternative,

6    for certification under Federal Rule of Civil Procedure 23(c)(4) for class treatment on the limited

7    issue of liability.  *Id.* at 13–14.

### 2.    Ninth Circuit Appeal

9        On April 23, 2018, Plaintiff petitioned the Ninth Circuit for review of the Court's order

10   denying class certification, *see* ECF No. 101-1, which the Ninth Circuit granted on July 20, 2018,

11   ECF No. 107.  The Court stayed the case pending appeal to the Ninth Circuit.  ECF No. 103.

12       On July 26, 2019, the Ninth Circuit reversed.  ECF No. 114.  Specifically, the Ninth

13   Circuit found that "Plaintiff's theory of liability—that Nissan's manufacture and concealment of a

14   defective clutch system injured class members at the time of sale—is consistent with his proposed

15   recovery based on benefit of the bargain."  *Id.* at 22.  As a result, the Ninth Circuit disagreed with

16   the Court's denial of class certification on the basis of predominance and remanded to this Court.

17   *Id.*  The Ninth Circuit's decision did not consider any other requirements for class certification but

18   was instead limited to the damages model issue that was dispositive in the Court's April 9, 2018,

19   order denying class certification.  *See id.*

20       The Ninth Circuit's mandate issued on September 13, 2019.

### 3.  Pending Motions

22       On remand, the Court lifted the stay and ordered the parties to complete their briefing in

23   connection with class certification.  ECF No. 121.  Specifically, the Court allowed the parties to

24   file supplemental briefs to discuss the effect of the Ninth Circuit's opinion, as well as "any

25   intervening caselaw since the parties first briefed class certification."  *Id.* at 1.

26       Thus, in addition to the original briefing for Plaintiff's motion for class certification, ECF

27   Nos. 63, 76, 85, the Court has received supplemental briefs from the parties.  On January 30,

28

6

United States District Court
Northern District of California

1     2020, Plaintiff filed an opening supplemental brief in support of class certification.  ECF No. 126.

2     On March 5, 2020, Nissan filed an answering supplemental brief opposing class certification.

3     ECF No. 130.  On March 26, 2020, Plaintiff filed a supplemental reply.

4         Both parties have also now fully briefed *Daubert* motions to exclude each other's experts.

5     Specifically, on February 14, 2018, Nissan filed a motion to exclude the report of Plaintiff's

6     expert, Steven Boyles.  ECF No. 81.  On February 28, 2020, Plaintiff filed an opposition.  ECF

7     No. 83.  On March 7, 2018, Nissan filed a reply.  ECF No. 91.

8         Similarly, on March 29, 2018, Plaintiff filed a motion to exclude the report of Nissan's

9     expert, Dr. Stephen D. Prowse.  ECF No. 95.  On February 10, 2020, Nissan filed an opposition.

10    ECF No. 128.  On March 2, 2020, Plaintiff filed a reply.  ECF No. 129.

11        On April 10, 2020, the parties filed a stipulation requesting that the Court postpone

12    resolution of the class certification motion and *Daubert* motions because of the parties' difficulties

13    with completing mediation during the COVID-19 pandemic.  ECF No. 132.  The Court granted

14    the parties' request.  ECF No. 133.  The parties were unable to resolve their case in mediation.

15    ECF No. 135.

16   **II.**      **LEGAL STANDARD**

17        Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. Rule 23

18    does not set forth a mere pleading standard.  To obtain class certification, plaintiffs bear the

19    burden of showing that they have met each of the four requirements of Rule 23(a) and at least one

20    subsection of Rule 23(b).  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by*

21    273 F.3d 1266 (9th Cir. 2001).  "A party seeking class certification must affirmatively

22    demonstrate . . . compliance with the Rule[.]"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350

23    (2011).

24        Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so

25    numerous that joinder of all members is impracticable; (2) there are questions of law or fact

26    common to the class; (3) the claims or defenses of the representative parties are typical of the

27    claims or defenses of the class; and (4) the representative parties will fairly and adequately protect

28

Case No. 16-CV-05591-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

the interests of the class." Fed. R. Civ. P. 23(a).  That is, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation to maintain a class action. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

If all four prerequisites of Rule 23(a) are satisfied, the Court must also find that the plaintiff "satisf[ies] through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  The Court can certify a Rule 23(b)(1) class when plaintiffs make a showing that there would be a risk of substantial prejudice or inconsistent adjudications if there were separate adjudications. Fed. R. Civ. P. 23(b)(1).  The Court can certify a Rule 23(b)(2) class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  Finally, the Court can certify a Rule 23(b)(3) class if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim[.]"  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Dukes*, 564 U.S. at 351); *see also Mazza*, 666 F.3d at 588 ("Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." (quoting *Zinser*, 253 F.3d at 1186)). This "rigorous" analysis applies to both Rule 23(a) and Rule 23(b) factors. *Comcast*, 569 U.S. at 34 (stating that Congress included "addition[al] . . . procedural safeguards for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class members (e.g., an opportunity to opt out)" and that a court has a "duty to take a 'close look' at whether common questions predominate over individual ones").

Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1194–95.  "Merits questions may be considered to

8

Case No. 16-CV-05591-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1  the extent—but only to the extent—that they are relevant to determining whether the Rule 23

2  prerequisites for class certification are satisfied." *Id.* at 1195.  If a court concludes that the moving

3  party has met its burden of proof, then the court has broad discretion to certify the class.  *Zinser*,

4  253 F.3d at 1186.

5  ### III.   DISCUSSION

6  In the instant case, Plaintiff asserts three remaining claims: one claim based on the CLRA,

7  and two claims based on breach of implied warranties pursuant to the Song-Beverly Act and the

8  Magnusson-Moss Act, respectively.  Plaintiff seeks to represent a class that includes purchasers or

9  lessees of vehicle models spanning from year 2007 to 2015.  *See* FAC ¶ 1.  However, Plaintiff

10  initially purchased the 2012 Nissan 370Z on January 20, 2012.  FAC ¶ 28.  As the Court further

11  explains below, Plaintiff's claims accrued over four years before the filing of the instant case on

12  September 30, 2016, ECF No. 1, which renders all three claims untimely on their face, unless an

13  exception applies.

14  Courts have discussed statute of limitations issues with respect to both typicality, Fed. R.

15  Civ. P. 23(a)(3), as well as predominance, Fed. R. Civ. P. 23(b)(3).  *Compare Taafua v. Quantum*

16  *Glob. Techs., LLC*, No. 18-CV-06602-VKD, 2020 WL 95639, at *8 (N.D. Cal. Jan. 8, 2020)

17  (holding that statute of limitations defense rendered putative class representative's claims

18  atypical*), with Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 308–13 (N.D. Cal.

19  2016) (holding that common proof of fraudulent concealment in that case could be sufficient to

20  prevent predominance of any individual statute of limitations issue).  In the instant case, the Court

21  finds that the statute of limitations issue identified by Nissan, Opp'n at 16–18, demonstrates that

22  Plaintiff is unable to meet his burden to show typicality, and the Court thus addresses Nissan's

23  statute of limitations arguments with respect to typicality.  *See Amgen*, 133 S. Ct. at 1195

24  (explaining that a court may consider questions relating to the merits to the extent that "they are

25  relevant to determining whether the Rule 23 prerequisites for class certification are satisfied").  A

26  significant number of putative class members will not face this statute of limitations defense, and

27  the Court thus finds Plaintiff cannot properly represent the proposed class.

28
Case No. 16-CV-05591-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

1    Below, the Court first addresses the timeliness of Plaintiff's claims before explaining why

2    the lack of timeliness renders Plaintiff's claims atypical for purposes of class certification.

3    Because the Court finds that Plaintiff fails to satisfy the typicality requirement of Rule 23(a), the

4    Court does not address the other Rule 23 requirements for class certification.

5    **A. Plaintiff's Claims Are Untimely On Their Face.**

6    Nissan timely raised the statute of limitations as an affirmative defense in their June 14,

7    2017 answer to the operative complaint, ECF No. 48 at 18, and briefed the issue in opposition to

8    Plaintiff's motion for class certification on February 5, 2018, Opp'n at 16–18.  Nissan argues that

9    Plaintiff's remaining claims, which allege violations of (1) the Song-Beverly Act, (2) the Moss-

10   Magnusson Act, and (3) the CLRA, are untimely.  Opp'n at 16–18.  Specifically, Nissan claims

11   that Plaintiff's claims under the Song-Beverly Act and the Magnusson-Moss Act for breach of

12   implied warranties are untimely because they are subject to a four-year statute of limitations,

13   which began when tender of delivery was made.  *Id.* at 17 (citing Cal. Comm. Code § 2725).

14   Nissan also argues that the statute of limitations for Plaintiff's CLRA claim is three years and

15   begins to run as of the "commission of the alleged unlawful act or practice," which in this case

16   was also on the date of tender of delivery of the vehicle.  *Id.* at 17 (citing Cal. Civ. Code § 1783).

17   Plaintiff filed the instant case over four years after he purchased the vehicle.  *See* FAC ¶ 28, and

18   thus Plaintiff's claims are untimely on their face unless an exception applies.

19   On reply, Plaintiff argues that Plaintiff's claims are in fact timely by raising two exceptions

20   to the statutes of limitations.  Reply at 9–10.  First, Plaintiff discusses California's "future

21   performance" exception to the statute of limitations for warranty claims, which would apply only

22   to the implied warranties claims that Plaintiff asserts pursuant to the Song-Beverly Act and the

23   Magnusson-Moss Act (the "implied warranties claims").  *Id.*  Second, Plaintiff mentions in

24   passing the delayed discovery exception to the statute of limitations, which would apply only to

25   Plaintiff's CLRA claim.[3]  *See id.*  As a matter of law, the Court disagrees with Plaintiff that either

26

27   [3] The delayed discovery doctrine does not apply to implied warranty claims.  *See Mandani v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-07287-HSG, 2020 WL 3961975, at *3 (N.D. Cal. July

28

Case No. 16-CV-05591-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

*United States District Court*
*Northern District of California*

of these exceptions apply.  The Court first discusses the implied warranties claims before turning to the CLRA claim.

### 1.  Implied Warranties Claims

Plaintiff rests the entire substance of Plaintiff's statute of limitations argument on the assumption that the existence of an express warranty tolls Plaintiff's claims, which the Court will refer to as a "future performance" exception.  Reply at 9–10 (citing *Krieger v. Nick Alexander Imp., Inc.*, 234 Cal. App. 3d 205, 215–217 (1991)).  In California, implied warranty claims are subject to a four-year statute of limitations.  Cal. Comm. Code § 2725.  Plaintiff's argument relies on an erroneous interpretation of that statute, which defines the cause of action for breach of warranty as accruing "when tender of delivery is made," unless "a warranty explicitly extends to future performance."  *See id*.  Put another way, when an express warranty contemplates future performance (such as repair of a defect), California law provides that breach of such an express warranty may occur after tender, such as when future performance (such as the repair) is deficient. *See id.*  However, as Plaintiff notes, some courts have gone further by holding that the existence of any *express* warranty also tolls an *implied* warranty claim.  Reply at 10 (citing *Ehrlich v. BMW of N. Am.*, 801 F. Supp. 2d 908 (C.D. Cal. 2010)).

This Court has repeatedly rejected Plaintiff's argument that the future performance exception may rescue an untimely implied warranty claim.  In *Yetter v. Ford Motor Co.*, 428 F. Supp. 3d 210, 221–22 (N.D. Cal. 2019), the Court explained that "the California Court of Appeal has interpreted and applied the future performance exception almost exclusively in the express warranty context."  *Yetter*, 428 F. Supp. 3d at 222.  The Court relied upon the California Court of Appeal's reasoning that "[b]ecause an implied warranty is one that arises by operation of law rather than by an express agreement of the parties, courts have consistently held it is not a warranty that explicitly extends to future performance of the goods."  *Id.* (quoting *Cardinal Health*

---

13, 2020) ("[T]he Northern District of California has repeatedly found the 'delayed discovery rule' inapplicable to implied warranty claims.") (quoting *Garcia v. Ford Motor Co.*, No. 19-cv-00385-JAM-AC, 2019 WL 3297354, at *2–3 (E.D. Cal. July 23, 2019)).

Case No. 16-CV-05591-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

*301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 130 (2008)).  Similarly, in *Philips*, the Court explicitly held that the "future performance exception only applies to the breach of an express warranty.  It does not allow the breach of an express warranty to toll the statute of limitations 'to an altogether separate claim,' such as an implied warranty claim."  *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2016 WL 1745948, at *13 (N.D. Cal. May 3, 2016).

Other courts have done the same.  For example, in *Mandani v. Volkswagen Grp. of Am., Inc.*, United States District Judge Haywood S. Gilliam recently granted a defendant's motion for reconsideration on this exact ground, thereby dismissing the plaintiff's breach of implied warranty claim as time-barred.  No. 17-CV-07287-HSG, 2020 WL 3961975, at *3 (N.D. Cal. July 13, 2020).  Judge Gilliam explained that "the California Court of Appeal has emphasized that the future performance exception 'must be narrowly construed,' as it 'applies only when the seller has expressly agreed to warrant its product for a specific and defined period of time.'"  *Id.*  The plaintiff's claim was "a breach of implied warranty claim, not one for breach of express warranty, and thus [the warranty] does not explicitly extend to future performance."  *Id.*  Thus, because the implied warranty claim accrued at the time of purchase, the claim had been filed beyond the four-year statute of limitations.  *Id.*

Plaintiff relies primarily on *Ehrlich*, a case from the Central District of California, to argue otherwise.  Reply at 10 (discussing *Ehrlich*, 801 F. Supp. 2d at 924–25).  In *Ehrlich*, a court held with no analysis that the defendant's "4-year/ 50,000 mile express warranty . . . tolled the statute of limitations."  801 F. Supp. 2d at 924–25.  To support that conclusion, the court merely provided a citation to a single California Court of Appeal decision, *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 215–17 (1991).  However, as explained in numerous cases—including other district courts as well as this Court—"'nothing' in *Krieger* 'supports tolling the statute of limitations on an implied warranty claim for the duration of an express warranty.'"  *Philips*, 2016 WL 1745948, at *13 (quoting *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1100 (N.D. Cal. 2014)); *see also Durkee v. Ford Motor Co.*, No. C 14-0617 PJH, 2014 WL 7336672, *5 (N.D. Cal. Dec. 24, 2014) ("An implied warranty is not a warranty that explicitly extends to the future

United States District Court
Northern District of California

performance of goods."); *Johnson v. Ford Motor Company*, No. 3:13-6529, 2015 WL 7571841, *4 (S.D. W. Va. Nov. 24, 2015) ("Courts have consistently held an implied warranty is not a warranty that explicitly extends to future performance of goods.") (alterations omitted).  The Court agrees that no California Court of Appeal precedent supports the tolling of the statute of limitations in this manner.

Moreover, within this district, courts have explicitly rejected this holding from *Ehrlich*. *See, e.g.*, *Baranco v. Ford Motor Co.*, No. 17-cv-03580-EMC, 294 F. Supp. 3d 950, 961 (N.D. Cal. 2018) ("Although one court has permitted such cross-tolling, *Ehrlich* . . . , it appears to be an outlier."); *Valencia v. Volkswagen Grp. of Am. Inc.*, No. 15-cv-00887-HSG, 119 F. Supp. 3d 1130, 1139 (N.D. Cal. 2015) ("The Court respectfully disagrees with the reasoning of *Ehrlich* . . . ."), *abrogated on other grounds*, *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1223 (9th Cir. 2015); *MacDonald*, No. 3:13-cv-02988-JST, 37 F. Supp. 3d at 1101 ("The Court finds the reasoning in *Ehrlich* to be unpersuasive.").

Thus, as this Court has repeatedly held, California's future performance exception to the statute of limitations does not apply to implied warranty claims and thus cannot excuse Plaintiff's delayed filing of those claims.  Accordingly, the Court finds that Plaintiff's implied warranties claims under the Song-Beverly Act and the Magnusson-Moss Act are untimely on their face.

### 2.  CLRA Claim

As to Plaintiff's sole remaining claim, the CLRA claim, Nissan explained in its opposition to class certification, the "statute of limitations for a CLRA claim is three years," and the limitations period "begin[s] to run from the date of the commission of the alleged unlawful act or practice," which in this case is the date of purchase.  Opp'n at 17 (citing Cal. Civ. Code § 1783, *and Asghari v. Volkswagen Group of Am., Inc.*, 42 F. Supp. 3d 1306, 1319 (C.D. Cal. 2013)).  The Court finds that the CLRA claim is untimely on its face because (1) Plaintiff fails to meet his burden to establish the delayed discovery exception to the statute of limitations, and in any event, (2) Plaintiff abandoned that exception by failing to argue that it applied in his reply brief.

First, Plaintiff does not meet the requirements to raise this exception to the statute of

Case No. 16-CV-05591-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

limitations.  As the Ninth Circuit has long explained, "[t]he party seeking the benefit of the avoidance of the statute of limitations carries the burden of proof to establish the elements, . . . [and] all presumptions are against him since his claim to exemption is against the current of the law and is founded on exceptions." *NLRB v. Don Burgess Constr. Corp.*, 596 F.2d 378, 383 n.2 (9th Cir. 1979) (citation omitted).  Thus, for the delayed discovery exception to apply, "[t]he burden is on the plaintiff to show diligence . . . ." *Id; see also Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406–07 (9th Cir. 1995) ("[As to the] 'discovery rule,' . . . [a]ll parties agree that the burden is on [the plaintiff] to plead and prove the facts necessary to toll the limitations period once it is established that it would have otherwise commenced.").  To meet this burden and invoke the delayed discovery exception, "[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *See E-Fab, Inc. v. Accountants, Inc. Services*, 153 Cal. App. 4th 1308, 1319 (2007) (internal quotations and citation omitted).

Yet, in the FAC, Plaintiff never alleged the elements of delayed discovery.  For example, Plaintiff does not allege the time and manner of his discovery.  Nor does Plaintiff show reasonable diligence by explaining why he was unable to have made earlier discovery.[4]  "California law makes clear that a plaintiff must allege specific facts establishing the applicability of the discovery-rule exception." *Cal. Sansome Co.*, 55 F.3d at 1407 (citing *CAMSI IV v. Hunter Technology Corp.*, 282 Cal. Rptr. 80, 86–87 (Ct. App. 1991)).  Plaintiff has clearly failed to meet

---

[4] In fact, the FAC suggests that Plaintiff may have been on inquiry notice soon after purchasing the vehicle.  For example, Plaintiff alleges that he experienced symptoms of the clutch defect "[s]ince purchasing his Nissan 370Z," on January 20, 2012.  FAC ¶ 28, 32.  Plaintiff also spends over twenty pages of the FAC quoting numerous safety complaints to the NHTSA and online posts documented the clutch issue, dating back to at least 2007, five years before Plaintiff purchased his Nissan in 2012. *Id.* ¶¶ 51–53.  These allegations suggest that Plaintiff may have been on inquiry notice of the clutch issue soon after purchasing the vehicle, which would render the delayed discovery exception inapplicable. See *Ries v. Arizona Beverages USA, LLC*, 287 F.R.D. 523, 534 (N.D. Cal. 2012) (citing *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988) ("[T]he statute runs once [a plaintiff] is put on inquiry notice: when the circumstances would lead a reasonable person to suspect wrongdoing.").

Case No. 16-CV-05591-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

his burden in establishing that this exception applies.

Second, even if Plaintiff had met the requirements to invoke the delayed discovery exception to the statute of limitations, Plaintiff abandoned it by failing to argue it on reply. Defendant discussed the statute of limitations issue with the CLRA claim in detail.  Opp'n at 17–18.  Plaintiff entirely failed to respond to this argument in the reply brief.  *See* Reply at 9–10. Instead, as discussed above, Plaintiff dedicates nearly the entire section to addressing the "future performance" exception, which is a statutory exception that applies only to the statute of limitations for warranty claims.  *See id.*  In passing, Plaintiff conclusorily states without further argument that Plaintiff "sufficiently allege[s] tolling of the statute of limitations based on [his] inability to discover the alleged defect and NNA's continued concealment of the defect."  *Id.* at 10.  In this passing reference, Plaintiff does not provide any discussion or case law to support application of the delayed discovery exception to Plaintiff's CLRA claim.  *See* Reply at 10.  Nor does Plaintiff's one sentence elaborate any further on any of the elements of delayed discovery, all of which Plaintiff failed to plead in the FAC.  *See id.*  "Issues raised in a brief which are not supported by argument are deemed abandoned."  *Acosta-Huerta v. Estell*e, 7 F.3d 139, 144 (9th Cir. 1992), *as amended* (Oct. 8, 1993) (quoting *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988)).  The Court thus deems any argument that the CLRA claim is timely to have been abandoned.

In sum, although the Court does not opine on the merits of Plaintiff's claim, Plaintiff has not articulated any exception to the applicable statutes of limitations that would render his facially untimely claims timely.  The Court thus proceeds to address whether the Court may nonetheless certify the proposed class despite their untimeliness.  *See, e.g.*, *Deirmenjian v. Deutsche Bank, A.G.*, No. CV 06-00774 MMM (RCx), 2010 WL 11505699 (C.D. Cal. May 13, 2010) (finding that "none [of the class representatives are] entitled to the benefit of the delayed discovery rule" and that the typicality requirement was not satisfied because the class representatives' claims were thus time-barred).

15

United States District Court
Northern District of California

**B.  Plaintiff Fails to Establish Typicality in Light of the Statute of Limitations Issues.**

As explained above, the Court finds that Plaintiff's claims, as pleaded in the First Amended Complaint, are untimely.  In light of Ninth Circuit precedent, as well as numerous other decisions by courts within this district, the Court finds that the statute of limitations issue precludes the Court's certification of a class.

Under the "permissive standards" of Rule 23(a)(3), "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998), *overruled on other grounds by Dukes,* 564 U.S. at 347; *see also Staton v. Boeing Inc.*, 327 F.3d 938, 957 (9th Cir. 2003).  "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).  The purpose of the typicality requirement is to assure that the interests of the named representative align with the interests of the class.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984–85 (9th Cir. 2011).

With those interests in mind, the Ninth Circuit has held that a putative class representative does not satisfy typicality if she is "subject to unique defenses which threaten to become the focus of the litigation."  *Hanon*, 976 F.2d at 508 (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990), *abrogated by Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 198 L. Ed. 2d 132 (2017)); *see also Blair v. RMC Lonestar*, 29 F.3d 630 (9th Cir. 1994) ("If Blair and Robinson's claims were subject to unique defenses, class certification should not have been granted because their claims would have failed the typicality requirement.")  The Ninth Circuit reasoned that where "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it," class certification should not be granted.  *Hanon*, 976 F.2d at 508.

Numerous courts within the Ninth Circuit have applied *Hanon* to hold that statutes of

16

Case No. 16-CV-05591-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

limitations issues can preclude a finding of typicality. For example, in *Plascencia v. Lending 1st Mortgage*, United States District Judge Claudia Wilken declined to certify a class where the putative class representative's Truth in Lending Act ("TILA") claim appeared on its face to be outside of the statute of limitations and was therefore "dependent on an exception to the statute of limitations." 259 F.R.D. 437, 444 (N.D. Cal. 2009). Judge Wilken explained that, even though the plaintiffs argued that their claims should be equitably tolled "because they did not have reasonable opportunity to discover" the alleged violations, "the statute of limitations issue has been, and will continue to be, a major issue" in the case. *Id.* Moreover, "whether any of these class members' claims are subject to equitable tolling will depend on an individualized factual inquiry . . . inappropriate in the liability phase of a class action." *Id.* at 445. Thus, although the plaintiff's other claims were not subject to any statute of limitations issue and were therefore typical of the putative class, Judge Wilken denied class certification of the TILA claim on grounds of typicality.

Other district courts have done the same. For example, in *Taafua v. Quantum Glob. Techs., LLC*, a court found that the plaintiff's claim was not typical where a substantial proportion of the proposed class would not be subject to the same statute of limitations defense. No. 18-CV-06602-VKD, 2020 WL 95639, at *8 (N.D. Cal. Jan. 8, 2020). In *Vizzi v. Mitsubishi Motors N. Am., Inc.*, a court similarly held that class certification was inappropriate where the lead plaintiffs were subject to a statute of limitations defense, and the class was not represented by any plaintiff who was not subject to that defense. No. SACV 08-00650-JVS (RNBx), 2010 WL 11515266, at *3 (C.D. Cal. Feb. 22, 2010).

In *Quezada v. Loan Ctr. of California, Inc.*, a court found that the lead plaintiff was atypical because the "extremely broad" class definition "guarantee[d] that some class members will have statute of limitations issues that will need to be resolved, while others will not." No. CIV 2:08-00177 WBS KJM, 2009 WL 5113506, at *7 (E.D. Cal. Dec. 18, 2009); *see also Vizzi*, 2010 WL 11515266, at *2 (collecting cases).

*Vizzi* is particularly analogous to the instant case. There, the plaintiffs brought suit

17

Case No. 16-CV-05591-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

alleging a manufacturing defect with the defendant's automobiles with model years from 2000 to 2008. *Id.* at *1. As here, the plaintiffs asserted claims for breach of the implied warranty of merchantability and for violation of the CLRA. *Id.* However, the plaintiffs purchased a 2001 vehicle and a 2003 vehicle, respectively, but the suit was not filed until 2008. *Id.* The court observed that the lead plaintiff's claims were likely "subject to a statute of limitations defense unique to his claim and the claims of a subclass, while other class members do not face the same difficulty." *Id.* at *2. Moreover, although the lead plaintiff pled fraudulent concealment in the complaint "as a way to toll the applicable statutes of limitation," the court found that proving the fraudulent concealment exception to the statute of limitations would "represent[] a significant hurdle for [the lead plaintiffs] to overcome in order to maintain a viable claim, . . . [whereas] class members whose claims are within the statute of limitations do not face this difficulty." *Id.* Moreover, unlike in other Ninth Circuit cases, there was not a "broad cross-section of claimants[] representing the interests of all the potential subclasses." *Id.* (citing *Hanlon*, 150 F.3d at 1021). As a result, the court found that the current representatives were not typical of the class and held that class certification would be inappropriate. *Id.*

So too here. As in the cases cited above, the Court acknowledges that Plaintiff's claims will be typical at least in some respects, in that Plaintiff's claims and the putative class's claims arise from the same alleged defective clutch design. However, Plaintiff purchased his vehicle over four-and-a-half years before commencing the instant suit, which, based on the allegations in the complaint, bring his remaining claims outside of the respective three- and four-year statutes of limitations. And, unlike in *Vizzi*, Plaintiff did not even plead any theory of fraudulent concealment in the complaint to attempt to toll Plaintiff's claims. *See Vizzi*, 2010 WL 11515266, at *2. By contrast, Nissan did in fact assert the statute of limitations as an affirmative defense in Nissan's Answer, ECF No. 48 at 18, and briefed the issue in opposition to class certification. Opp'n at 16–18. The Court finds that overcoming the statute of limitations will "represent[] a significant hurdle for [Plaintiff] to overcome in order to maintain a viable claim, . . . [whereas] class members whose claims are within the statute of limitations do not face this difficulty." *Vizzi*,

Case No. 16-CV-05591-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION

2010 WL 11515266, at \*2.  As with the Ninth Circuit's decision in *Hanon*, "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it," and class certification should not be granted.  *Hanon*, 976 F.2d at 508.

Moreover, that some other class members may also be subject to the statute of limitations does not change the result in this case.  By definition, a number of Plaintiff's proposed class will include individuals not subject to the statute of limitations.  Specifically, the proposed class includes purchasers or lessees of vehicle models spanning from year 2007 to 2015.  FAC ¶ 1. Because the case was filed on September 30, 2016, it would be impossible for purchasers or lessees of some later model cars (such as a 2015 model) to be subject to a three- or four-year statute of limitations.  Because Plaintiff opted to define the class so broadly, the proposed class would by definition include some individuals, like Plaintiff, whose claims are time-barred, as well as individuals with later model cars whose claims cannot be time-barred.  This case is thus distinguishable from other cases where "all class members, including the named class representative" are equally susceptible to the statute of limitations defense.  *See Schofield v. Delta Air Lines, Inc.*, No. 18-CV-00382-EMC, 2019 WL 955288, at \*4 (N.D. Cal. Feb. 27, 2019).

There are no other named plaintiffs in this case, and thus there is no other class representative who could represent the individuals for whom the statute of limitations will not be an issue.  *Compare Vizzi*, 2010 WL 11515266, at \*2 (finding that lead plaintiffs were not typical due to statute of limitations)*, with Hanlon*, 150 F.3d at 1021 (finding that lead plaintiffs were typical because they comprised a "broad cross-section of claimants[] representing the interests of all the potential subclasses."); *see also Deirmenjian*, 2010 WL 11505699, at \*25 (denying class certification on the basis of typicality because "none of the proposed class representatives appears to have a viable claim" in light of the statute of limitations).

Despite Plaintiff having the burden to demonstrate that Plaintiff is typical of the proposed class, *see Zinser*, 253 F.3d at 1186, Plaintiff entirely fails to explain to the Court how many members of the proposed class would be subject to the statute of limitations, nor to explain why the statute of limitations would not defeat typicality.  Instead, Plaintiff rested his entire statute of

19

United States District Court
Northern District of California

limitations argument on the incorrect view that the existence of an express warranty would toll Plaintiff's claims, an argument that is legally erroneous and that the Court already rejected above.

In sum, the Court finds Plaintiff is "subject to unique defenses which threaten to become the focus of the litigation." *Hanon*, 976 F.2d at 508. This statute of limitations issue is potentially dispositive as to the only putative class representative. Although Nissan is correct that "the existence of a statute of limitations issue mandates the denial of certification per se," Opp'n at 18, the unique facts of this case demonstrate that Plaintiff, who is the only named representative, cannot satisfy typicality. "The Court cannot disregard the possibility that the potential weakness of [Plaintiff's] claims [may result] in a lower settlement for the class as a whole" or in a litigation strategy that otherwise penalizes class members who are not subject to the same defense. *See Taafua*, 2020 WL 95639, at *8 (N.D. Cal. Jan. 8, 2020). The Court follows ample precedent by the Ninth Circuit and other district courts within the Circuit to conclude that Plaintiff has not met his burden of proof to demonstrate that his claims are typical of the putative class. Accordingly, class certification is not appropriate, and the Court thus DENIES Plaintiff's motion for class certification. Relatedly, as the pending *Daubert* motions reach only class damages issues that the Court need not consider because class certification is inappropriate, the Court also DENIES those motions as moot.

## IV.    CONCLUSION

In sum, the Court finds that Plaintiff has failed to satisfy the typicality requirement of Rule 23(a)(3) with respect to either the class or the CLRA sub-class. Accordingly, the Court DENIES Plaintiff's motion for class certification. ECF No. 63. The Court DENIES as moot the related *Daubert* motions to exclude expert evidence. ECF Nos. 81, 95.

**IT IS SO ORDERED.**

Dated: September 13, 2020

LUCY H. KOH
United States District Judge

Case No. 16-CV-05591-LHK
ORDER DENYING MOTION FOR CLASS CERTIFICATION